UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH CARE FOR ALL, WISCONSIN CITIZEN ACTION, UNITED SENIOR ACTION OF INDIANA, JUDITH C. MEREDITH, MICHELLE MADOFF, ROSE LOHMAN and CAVALIER HOMES, INC., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PFIZER INC., PHARMACIA CORP., and G.D. SEARLE & CO., <br><br> Defendants. | Civil Action No. 05-10707-DPW |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CLAIMS OF THE INDIVIDUAL PLAINTIFFS**

Defendants Pfizer Inc., Pharmacia Corp., and G.D. Searle LLC ("Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the claims in the April 8, 2005 Complaint ("Complaint" or "Compl.") alleged on behalf of Plaintiffs Judith C. Meredith, Michelle Madoff, and Rose Lohman (collectively "Plaintiffs") for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

**PRELIMINARY STATEMENT**

Plaintiffs bring this putative class action on behalf of a class of persons and entities who allegedly have "paid for the drug Celebrex," a prescription non-steroidal anti-inflammatory drug.[1]

---

[1] Plaintiffs elsewhere claim to bring this action as putative representatives of "[a]ll persons in the United States who, since 1999, have paid for some or all of the purchase price for Celebrex either on their own behalf or on behalf of someone else who ingested this drug." (Compl. ¶ 161.)

BOS1500190.1

(Compl. ¶ 1). Plaintiffs do not claim they or any putative class member suffered any personal injury from the use of Celebrex; indeed, Plaintiffs specifically *exclude* from the class "those who assert personal injury claims." (Id.) Rather, in the absence of any allegations of actual harm or lack of efficacy, Plaintiffs seek damages for purported "overpayment made on purchases of Celebrex resulting from Defendants' illegal scheme." (Id. ¶ 11). According to the Complaint, but for alleged misrepresentations and omissions by Defendants concerning the efficacy and risks of Celebrex, putative class members would have paid less for Celebrex. (Id. ¶¶ 9, 204).

The Complaint contains four counts: (1) for violation of 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) for violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 or, in the alternative; (3) for violation of the consumer protection statutes of all fifty states; and (4) for unjust enrichment. Each claim lacks merit and should be dismissed.[2]

Plaintiffs' First Claim for Relief – under the federal RICO statute – fails because Plaintiffs do not properly allege, as they must, that the alleged RICO violations proximately caused them any injury. The RICO claim also fails because Plaintiffs have not pleaded their claim in accordance with the particularity requirements of Fed. R. Civ. P. 9(b), which applies to RICO claims based upon predicate acts of mail or wire fraud. Among other things, the Complaint does not contain any allegation as to where or when a specific plaintiff ever saw or heard any particular advertisement at issue.

Plaintiffs' Second Claim for Relief – under the New Jersey Consumer Fraud Act – should be dismissed because Plaintiffs' price inflation theory of damages has been unequivocally rejected by state and federal courts in New Jersey. See Heindel v. Pfizer Inc., No. Civ.A. 02-3348, 2004 WL

---

[2] Defendants also have moved to dismiss the claims of organizational plaintiffs Health Care for All, Wisconsin Citizen Action, and United Senior Action of Indiana on the grounds set forth in the Defendants' Memorandum of Law in Support of their Motion to Dismiss the Claims of the Organizational Plaintiffs.

1398024, at *15 n.7 (D.N.J. June 7, 2004); N.J. Citizen Action v. Schering- Plough Corp., 367 N.J. Super. 8, 15, 842 A.2d 174, 178 (App. Div. 2003).

Plaintiffs' Third Claim for Relief – for violations of the consumer fraud states *of all fifty states* – is plainly overbroad in the absence of individual plaintiffs from those jurisdictions. Further, Plaintiffs have not pleaded a viable claim under the consumer fraud statutes of the jurisdictions where individual plaintiffs do reside – Massachusetts and Arizona. In Massachusetts, there is no individual plaintiff that has sent the required notice letter in advance of bringing suit. This failure is a jurisdictional defect mandating dismissal of the claim. The Massachusetts 93A consumer fraud claim also is deficient because the Complaint lacks any allegation that the advertisements at issue proximately caused any injury to Plaintiffs. The consumer fraud claim under Arizona law lacks merit because the Arizona statute requires that a plaintiff rely upon the alleged deceptive statements. No such allegations appear in the Complaint.

Finally, Plaintiffs' Fourth Claim for Relief – for unjust enrichment – also must be dismissed because Plaintiffs' Complaint fails to plead adequately that Defendants' alleged enrichment was unjust.

## STATEMENT OF FACTS

### A.   The Parties

Plaintiff Health Care for All ("HCFA") is a "consumer health advocacy organization" located in Boston, Massachusetts. (Compl. ¶ 12). Plaintiff Wisconsin Citizen Action ("WCA") is a "consumer health advocacy organization" located in Wisconsin. (Id. ¶ 13). Plaintiff United Senior Action of Indiana ("USAI") (USAI, together with HCFA and WCA, the "Organizational Plaintiffs") is a "consumer health advocacy organization" located in Indiana. (Id. ¶ 14.)

The Complaint also names three individual plaintiffs: Judith C. Meredith ("Meredith"), Michelle Madoff ("Madoff"), and Rose Lohman ("Lohman") (together, the "Individual Plaintiffs").

Meredith is a resident of Massachusetts. (Id. ¶ 15). The Complaint alleges that Meredith "began taking Celebrex after seeing the advertisements and asked her doctor to prescribe it for her." (Compl. ¶ 15.) Besides failing to identify any advertisement she viewed, Meredith fails to allege that she asked her doctor to prescribe Celebrex *as a consequence* of any statement by Defendants. According to the Complaint, Meredith "has paid co-payment amounts to purchase Celebrex through her prescription drug coverage plan provided through her husband's employer." (Id.)

Madoff is a resident of Arizona, who "took Celebrex and has made out-of-pocket payments for Celebrex." (Id. ¶ 16). The Complaint does not allege that Madoff saw or heard or was otherwise influenced by any advertisement for Celebrex.

The Complaint does not indicate where Lohman resides. According to the Complaint, Lohman "has paid for Celebrex and has been injured as a result." (Id. ¶ 17). The Complaint does not allege that Lohman saw or heard or was otherwise influenced by any advertisement for Celebrex.

Defendant Pharmacia is a Delaware corporation with its principal place of business in New Jersey. (Id. ¶ 20). Defendant Pfizer is a Delaware corporation with its principal place of business in New York. (Id. ¶ 21). Defendant Searle was a Delaware corporation with its principal place of business in Illinois (Id. ¶ 22), but has been converted to a limited liability company; Pharmacia is its sole member.[3]

### B.     The Allegations

The Organizational Plaintiffs and Individual Plaintiffs (together, the "Plaintiffs") allege that Defendants marketed and sold Celebrex. (E.g., id. ¶¶ 20-23). Celebrex is a non-steroidal anti-inflammatory drug that selectively inhibits cyclo-oxygenase 2 ("COX-2"), which is inducible and expressed at sites of inflammation, while sparing cyclo-oxygenase 1 ("COX-1"), which is associated

---

[3] Although the Complaint references "G.D. Searle & Co.," that entity was converted to a limited liability company named "G.D. Searle LLC" on December 31, 2000. In April 2000, Pharmacia & Upjohn, Inc. merged with Monsanto Co., the parent of G.D. Searle & Co.

with gastroprotection (Id. ¶ 3). In addition to Celebrex, other COX-2 inhibitors included Vioxx. (Id. ¶ 4).

Plaintiffs allege that Defendants marketed, advertised, and promoted Celebrex to consumers and doctors in an "unlawful" manner, including through the "suppression of data showing the cardiovascular risks," "the manipulation of data" to improve the drug's gastrointestinal safety profile, and the distribution of other "false promotional materials." (Id. ¶ 5). Plaintiffs contend that the alleged conduct resulted in "[b]illions of dollars" being "wasted" by Plaintiffs and members of the purported class, who "have paid a premium price for a drug that is not a premium or superior product." (Id. ¶ 9). No plaintiff alleges that Celebrex caused any personal injury or that Celebrex failed to provide pain relief.

## ARGUMENT

### I.   THE INDIVIDUAL PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED.

Section 1962(c) of the RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs though a pattern of racketeering activity . . . ." See 18 U.S.C. § 1962(c). The First Circuit has recognized that "[c]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly." Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991).

To state a claim under Section 1962(c), a plaintiff must allege "four elements": the defendant's "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003) (*quoting* Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985)). Additionally, RICO authorizes private plaintiffs to sue for damages only where they have been injured "by reason of" the

alleged RICO violation.  See 18 U.S.C. § 1964(c).  Thus, "[t]o have standing under a RICO claim, plaintiffs must show 'some direct relation between the injury asserted and the injurious conduct alleged.'"  George Lussier Enters., Inc. v. Subaru of New England, Inc., 393 F.3d 36, 51 (1st Cir. 2004) (*quoting* Holmes v. Secs. Inv. Prot. Corp., 503 U.S. 258, 259, 112 S. Ct. 1311, 1313 (1992)).  In other words, plaintiffs must allege that their purported injuries were proximately caused by one or more of defendants' alleged predicate acts.  Camelio v. Am. Fed'n, 137 F.3d 666, 670 (1st Cir. 1998).

### A.   Plaintiffs Fail to Allege Proximate Cause.

Plaintiffs fail to adequately plead that their purported injuries were incurred "by reason of" the alleged RICO violation.  Because Celebrex is a prescription drug, the decision to purchase the drug necessarily begins with a choice by a physician to prescribe the drug.  See generally Lareau v. Page, 840 F. Supp. 920, 931-933 (D. Mass. 1993), aff'd, 39 F.3d 384 (1st Cir. 1994).  However, the Complaint contains no factual allegations to establish that any particular physician's decision to prescribe Celebrex to putative class members – a necessary precursor to a putative class member's payment for the drug – was caused by Defendants' alleged misrepresentations.  Under these circumstances, Plaintiffs have failed to adequately allege that their alleged injuries were proximately caused by Defendants' purported RICO violations.  See, e.g., Camelio, 137 F.3d at 670.[4]

### B.   The Complaint's Allegations of "Racketeering Activity" Do Not Satisfy Rule 9(b).

Even if the Complaint adequately pleaded proximate causation – and it does not – Plaintiffs' First Claim For Relief would still be deficient because it fails to allege that any Defendant committed acts of "racketeering activity" with the particularity required by Fed. R. Civ. P. 9(b).  RICO defines

---

[4]   Nor can Plaintiffs rely upon a "fraud on the market" theory of price inflation to establish proximate causation, as such a theory has been held inapplicable to the prescription drug market.  See infra Part II, pp. 9-10.  For example, in N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13, 842 A.2d 174, 176 (App. Div. 2003), a New Jersey appellate court rejected such a price inflation theory to prove causation under a state consumer fraud statute that did not require reliance as an element of proof.

"racketeering activity" to include the commission of "any act which is indictable" under enumerated criminal laws, which includes the federal statutes prohibiting mail and wire fraud. 18 U.S.C.A. § 1961(1). To plead a violation of mail or wire fraud, a plaintiff must show that defendants: (1) "engaged in a scheme to defraud," (2) "with the specific intent to defraud," and (3) that defendants "used the United States mails and/or the interstate wires in furtherance of the scheme." McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 790 (1st Cir. 1990).

Allegations of mail or wire fraud must comply with Rule 9(b). Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997). Such compliance requires the "pleader . . . [to] state the time, place, and content of the alleged mail and wire communications perpetrating that fraud." Id. Rule 9(b)'s particularity requirement serves "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a strike suit; and (3) to safeguard defendants from frivolous charges which might damage their reputations." Cutler v. Fed. Deposit Ins. Co., 781 F. Supp. 816, 818 (D. Me. 1992) (internal citation omitted).

Thus, Rule 9(b) requires, among other things, that "[w]here a plaintiff claims that multiple defendants committed mail fraud, she must make particularized allegations against each individual defendant." White v. Union Leader Corp., No. Civ. 00-122-B, 2001 WL 821527, at *4 (D.N.H. July 13, 2001). Rule 9(b) requirements are not satisfied by vague allegations that simply lump multiple defendants together without specifically attributing allegedly fraudulent conduct to any of them. See, e.g., id.; Rhone v. Energy N., Inc., 790 F. Supp. 353, 359-60 (D. Mass. 1991) (dismissing for failure to comply with Rule 9(b) where plaintiff failed to specify "the acts committed by each defendant").

Here, the Complaint does not comply with Rule 9(b). First, it does not plead that *each* defendant committed mail or wire fraud with the requisite specificity. Rather, Plaintiffs make vague allegations of alleged misrepresentations dating as far back as 1999 that simply are attributed to "Defendants" as a group. (See, e.g., Compl. ¶¶ 91, 93, 103, 184.) Without attributing the purported

- 7 -

misrepresentations to particular Defendants, Plaintiffs' allegations cannot give notice to each of the defendants of the specific wrongdoing alleged against it as required by Rule 9(b). See Cutler, 78 F. Supp. at 818 (Rule 9(b) serves to put defendants on notice). Furthermore, while Plaintiffs provide some content for a few of the allegedly deceptive advertisements (Compl. ¶¶ 110, 129, 132), they fail to allege, as they must, where the advertisements ran. See Hernandez v. Ballesteros, 333 F. Supp. 2d 6, 11-12 (D. P.R. 2004) (dismissing complaint for lack of particularity where plaintiff alleged "the content of the communications" but "[did] not state the time or place of the wire communication").

Accordingly, Plaintiffs fail to allege that any Defendant engaged in "racketeering activity" – mail or wire fraud – and Plaintiffs' First Claim For Relief must be dismissed.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER NEW JERSEY'S CONSUMER FRAUD ACT.

Plaintiffs' Second Claim For Relief under the New Jersey Consumer Fraud Action also must be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs' claim fails because the Complaint does not properly allege "a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." N.J. Citizen Action, 367 N.J. Super. at 12-13, 842 A.2d at 176 (*citing* Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454, 464 (1994)). To establish this causal nexus, Plaintiffs must show their "actual receipt and consideration of" the alleged misstatements. Kaufman v. i-Stat Corp., 165 N.J. 94, 109, 754 A.2d 1188, 1195 (2000) (common law fraud).

Here, other than Meredith, the Individual Plaintiffs do not allege actual receipt of any alleged misrepresentations regarding Celebrex. And none of the Plaintiffs alleges that they considered Defendants' advertisements. Rather, the Complaint alleges that the "cumulative effect of Defendants' conduct directed at physicians and consumers was to artificially create demand for Celebrex at an artificially inflated price." (Compl. ¶ 203.) Accordingly, Plaintiffs' claim under the NJCFA must be dismissed. See, e.g., N.J. Citizen Action, 367 N.J. Super at 15, 842 A.2d at 178.

Further, Plaintiffs' effort to advance a "price inflation" theory under the NJCFA has already been rejected by a federal district court in New Jersey. See Heindel, No. Civ.A. 02-3348, 2004 WL 1398024, at *15 n.7 (D.N.J. June 7, 2004). In Heindel, plaintiffs (also represented by Hagens Berman, Plaintiffs' counsel here) were individuals who were prescribed – and took – Celebrex and Vioxx (another COX-2 inhibitor drug). Plaintiffs brought an action for violation of the New Jersey Consumer Fraud Act and for breach of implied warranty of merchantability, seeking recovery of "economic damages caused by the payment of allegedly inflated prices for Defendants' products," id. at *13, which they allegedly sustained as a result of defendants' "unconscionable marketing conduct". Id. at *2. As in this case, plaintiffs in Heindel alleged that defendants knew that COX-2 inhibitors posed health risks but nonetheless made a decision to promote the drugs while failing to disclose such purported risks. See id. at *3. On a motion for summary judgment, the federal district court in New Jersey held that plaintiff's theory was deficient under a state consumer protection law that required reliance (Pennsylvania), and then explained that plaintiffs' claims also would fail to satisfy the causation requirement under the New Jersey consumer fraud statute (which did not require a showing of reliance). See id. at *15, n.7. Indeed, allowing a plaintiff to rely on a price inflation theory would

> virtually eliminate the requirement that there be a connection between the misdeed complained of and the loss suffered. Adopting plaintiff's theory … would therefore fundamentally alter the concept of causation in the CFA context … [and] the relationship between the alleged misstatement and the ascertainable loss suffered would become so attenuated that it would effectively disappear.

Id. (*quoting* N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 15, 842 A.2d 174, 178 (App. Div. 2003)). The NJCFA claim in this Complaint likewise should be dismissed. See generally N.J. Citizen Action, 367 N.J. Super. at 15, 842 A.2d at 178 (price inflation theory has "no place as a part of the proofs required of plaintiffs in the CFA context … ."); Heindel, 2004 WL 1398024, at *14.

### III. PLAINTIFFS' ALTERNATIVE CLAIM UNDER THE STATUTES OF ALL FIFTY STATES LACKS MERIT.

As an alternative to its claim for relief under the New Jersey consumer fraud act, Plaintiffs "[a]lternatively" allege a blunderbuss claim for violation the consumer fraud statutes of *all fifty states* – even though the Individual Plaintiffs reside in Massachusetts and Arizona.[5] (Compl. ¶¶ 209-212). In any event, because there are no individual plaintiffs identified from states other than Massachusetts and Arizona, the Court should only consider the Massachusetts and Arizona consumer fraud act claims.  See, e.g., Fitzgerald v. Chrysler Corp., No. 96 C 0021, 1996 WL 473456, at *7 (N.D. Ill. Aug. 16, 1996), aff'd, 116 F.3d 225 (7th Cir. 1997) (considering only consumer fraud statute of state in which plaintiff resided, explaining that plaintiff's pleading of consumer fraud statutes from all 50 states and District of Columbia was "overinclusive").

#### A. The Complaint Fails to State a Claim Under the Massachusetts Consumer Fraud Act.

As a threshold matter, the Court does not have jurisdiction over the section 93A claim of Meredith, the only resident of Massachusetts. Under Massachusetts law,

> [a]t least thirty days prior to filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.

M.G.L. ch. 93A, § 9(3).  The demand letter requirement is a jurisdictional prerequisite to bringing suit under M.G.L. ch. 93A, and failure to comply with it requires dismissal of the suit.  See Spring v. Geriatric Auth. of Holyoke, 475 N.E.2d 727, 736, 394 Mass. 274, 289 (1985) (dismissing 93A claim where plaintiff failed to satisfy demand letter requirements).

Defendants never received a 93A demand letter from any plaintiff other than Health Care for All.  See Affidavit of Joseph J. Leghorn, sworn to on June 9, 2005 ("Leghorn Aff."), ¶ 6.  Nor do Plaintiffs, as required, allege in the Complaint that such a letter was sent.  See, e.g., Spring, 475

N.E.2d at 735, 394 Mass. at 287 (*quoting* Entrialgo v. Twin City Dodge, 333 N.E.2d 202, 204, 368 Mass. 812, 813 (1975) ("[a] demand letter listing the specific deceptive practices claims is a prerequisite to suit and *as a special element must be alleged and proved*") (emphasis added). Accordingly, there is no jurisdiction over any 93A claim other than the claim asserted by Health Care for All.[6]

The 93A claim also fails on its merits because the Plaintiffs have failed to allege, as required, that some deceptive act or practice by a defendant proximately caused the Plaintiffs to suffer some injury or loss.[7]  See M.G.L.A. 93A, § 9(1) (requiring that, to state a claim under § 9 of Ch. 93A, a plaintiff must assert that he or she has "been injured by another person's" unfair or deceptive act or practice); M.G.L.A. 93A, § 11 (requiring that, to state a claim under § 11 of Ch. 93A, a plaintiff must allege that it has engaged in trade or commerce and that an unfair or deceptive act or practice by the defendant caused the plaintiff to suffer a "loss of money or property").  Where a defendant's actions do not proximately cause injury to the plaintiff, no liability exists under 93A.  McCann v. Davis, Malm, and D'Agostine, 669 N.E.2d 1077, 1079, 423 Mass. 558, 561 (1996).

The Individual Plaintiffs have failed to allege causation.  With the exception of Plaintiff Meredith, they fail to allege that they ever saw or heard any advertisement for Celebrex, and no plaintiff alleges that any advertisement caused them to seek a prescription of Celebrex from a

---

[5]   The Complaint does not indicate the state of residence for Plaintiff Rose Lohman.

[6]   For its claim, Health Care for All does not have standing to sue under section 93A.  See Defendants' Memorandum of Law in Support of Their Motion to Dismiss Claims Brought By the Organizational Plaintiffs, pp. 7-9.

[7]   Plaintiffs merely make a conclusory allegation that, "[a]s a proximate result of the Defendants' misrepresentations, Plaintiffs and the proposed class members have suffered an ascertainable loss…." (Compl. ¶ 204).  Conclusory allegations are insufficient.  See Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F. Supp. 93, 103 (D. Mass. 1990) (dismissing 93A claim where plaintiff made a "conclusory allegation parroting" the statute's language but did not allege facts supporting the conclusion that defendant had "engaged in unfair acts or practices").

physician. Absent such an allegation, the Individual Plaintiffs have not pleaded the necessary element of causation under 93A. See, e.g. id.[8]

### B. The Complaint Fails to State a Claim Under Arizona's Consumer Fraud Act.

Plaintiffs' claim under the Arizona Consumer Fraud Act fails because the Complaint does not allege the necessary causal relationship between Defendants' alleged misconduct and Plaintiffs' purported injuries:

> To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise. An injury occurs when a consumer *relies*, even unreasonably, on false or misrepresented information.

Kuehn v. Stanley, 208 Ariz. 124, 129 (Ct. App. 2005) (citations omitted) (emphasis added).

Plaintiffs do not allege that they were prescribed Celebrex, and suffered injury, because they relied on Defendants' alleged misrepresentations. Plaintiffs merely allege that "Plaintiffs were deceived by Defendants' misrepresentations." (Compl. ¶ 207). Such conclusory allegations are insufficient to state a claim under the Arizona Consumer Fraud Act. See Williamson v. Allstate Ins. Co., 204 F.R.D. 641, 645 (D. Ariz. 2001) (granting motion to dismiss ACFA claim where plaintiff failed to comply with Rule 9(b)). Additionally, the Complaint does not allege any facts to support a claim that Plaintiffs' purported injuries resulted from Defendants' alleged advertising misrepresentations; indeed, the Individual Plaintiffs and putative class members were prescribed Celebrex by their physicians. The Complaint does not allege facts to support a claim that the

---

[8] By contrast to the other individual plaintiffs, Plaintiff Meredith does allege that "[s]he began taking Celebrex after seeing the advertisements and asked her doctor to prescribe it for her." (Compl. ¶ 15.) Plaintiff Meredith's 93A claim suffers from a different defect, however. Nowhere in the Complaint is any allegation that Meredith would have paid a lower co-payment for Celebrex had Pfizer's advertising been different. Absent any such allegation, the Complaint fails even the most minimal standing requirements of Chapter 93A. To be sure, the Complaint also contains scattered allegations that Celebrex was overpriced as a result of the allegedly deceptive advertising. But even if accepting those allegations as true, there is no allegation that Meredith ever paid any such inflated price as part of her co-payment.

physicians' independent decision to prescribe Celebrex resulted from any allegedly misleading advertisements.

### IV.     THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

To establish a claim for unjust enrichment, Plaintiffs must allege: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." Lawson v. Affirmative Equities Co., 341 F. Supp. 2d 51, 65 (D. Mass. 2004) (citation omitted).  Because Plaintiffs have failed to allege facts to support a claim that their purported injuries were proximately caused by Defendants' alleged misconduct, there is nothing inequitable about Defendants' receipt of any funds Plaintiffs or other putative class members may have paid for Celebrex.  See generally Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 (5th Cir. 2002) (dismissing case, including unjust enrichment claim, for lack of Article III standing brought by plaintiffs who did "not claim [that the drug] caused them physical or emotional injury, was ineffective as a pain killer, or ha[d] any future health consequences to users").

### CONCLUSION

For all of the reasons set forth above, the claims of the Individual Plainitffs set forth in the Complaint should be dismissed in their entirety.

Respectfully submitted,
**PFIZER INC., PHARMACIA CORP., and G.D. SEARLE LLC,**
By their attorneys,

*/s/ Joseph J. Leghorn*
_____
Joseph J. Leghorn, BBO No. 292440
J. Christopher Allen, Jr. BBO No. 648381
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

-Of Counsel-

James D. Arden
Benjamin R. Nagin
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Richard F. O'Malley, Jr.
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

DATED:  June 10, 2005

## CERTIFICATE OF SERVICE

I, J. Christopher Allen, Jr. do hereby certify that a true copy of the above document was served upon Thomas M. Sobol, Hagens Berman Sobol Shapiro LLP, One Main Street, Fourth Floor, Cambridge, MA, 02142, counsel of record for plaintiffs, on this 10th day of June, 2005 by electronic service.

*/s/ J. Christopher Allen, Jr.*
_____
J. Christopher Allen, Jr.