UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH CARE FOR ALL, WISCONSIN CITIZEN ACTION, UNITED SENIOR ACTION OF INDIANA, JUDITH C. MEREDITH, MICHELLE MADOFF, ROSE LOHMAN and CAVALIER HOMES, INC., individually and on behalf of all others similarly situated, | Civil Action No. 05-10707-DPW |
| Plaintiff, | |
| v. | |
| PFIZER INC., PHARMACIA CORP., and G.D. SEARLE & CO., | |
| Defendant. | |

**ORGANIZATIONAL PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................................1

II.  MDL PROCEEDINGS ................................................................................................1

III.  STATEMENT OF THE FACTS ...............................................................................2

IV.  ARGUMENT ...............................................................................................................5

  A.  Plaintiff Cavalier Homes' Claims Are Not Barred By The Doctrine Of *Res Judicata*...........................................................................................................5

  B.  Plaintiffs Have Standing to Assert Their Claims For Injunctive Relief .................8

  C.  The Complaint Properly Pleads RICO Violations ...................................................9

    1.  Plaintiffs have standing to sue for Defendants' RICO violations.............10

    2.  The Complaint alleges with sufficient particularity that Defendants conducted the Celebrex Enterprises' affairs through a pattern of racketeering activity...................................................................................10

  D.  Plaintiffs Have Stated Proper Claims Under Each State Consumer Protection Statute .................................................................................................14

  E.  Cavalier Homes and the Organizational Plaintiffs Are "Persons" Entitled to Protection Under the New Jersey Consumer Fraud Act .........................................14

  F.  Plaintiffs Have Stated a Proper Claim for Unjust Enrichment .............................18

V.  CONCLUSION............................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Acevedo-Villalobos v. Hernandez,*
  22 F.3d 384 (1st Cir. 1994).............................................................................................8

*Ahmed v. Rosenblatt,*
  118 F.3d 886 (1st Cir. 1997)...........................................................................................13

*Allen v. McCurry,*
  449 U.S. 90 (1980).............................................................................................................5

*American Trial Lawyers Assoc. v. N.J. Supreme Ct.,*
  330 A.2d 350 (1974).........................................................................................................16

*In re Application of Boardwalk Regency Corp. for Casino License,*
  447 A.2d 1335 (N.J. Sup. Ct. 1982).................................................................................16

*In re Association of Trial Lawyers,*
  549 A.2d 446 (N.J. Super. Ct. App. Div. 1980)...............................................................15

*Bankers Trust Co. v. Mallis,*
  435 U.S. 381 (1978)............................................................................................................6

*Boston & Maine Corp. v. Hampton,*
  987 F.2d 855 (1st Cir. 1993).......................................................................................11, 13

*Camel Hair and Cashmere v. Associated Dry Goods,*
  799 F.2d 6 (1st Cir. 1986).................................................................................................9

*City Check Cashing, Inc. v. National State Bank,*
  582 A.2d 809 (N.J. Super. Ct. App. Div. 1990)...............................................................14

*Common Cause v. N.J. Election Law Enforce. Comm'n,*
  377 A.2d 643 (N.J. Sup. Ct. 1977)...................................................................................16

*Cordero Hernandez v. Hernandez Ballesteros,*
  333 F. Supp. 2d 6 (D.P.R. 2004)......................................................................................13

*Crescent Park Tenants Assoc. v. Realty Equities Corp.,*
  275 A.2d 433 (N.J. Sup. Ct. 1971)........................................................................15, 16, 17

*Czeremcha v. International Assoc. of Mach. and Aerospace Workers,*
  724 F.2d 1552 (11th Cir. 1984) ......................................................................................7, 8

*Desiano v. Warner-Lambert Co.,*
  326 F.3d 339 (2d Cir. 2003)..............................................................................................15

*Doyle v. Hasbro, Inc.,*
  103 F.3d 186 (1st Cir. 1996).............................................................................................10

*Guckenberger v. Boston University*,
   957 F. Supp. 306 (D. Mass. 1997) ......................................................................9

*Hughes v. Lott*,
   350 F.3d 1157 (11th Cir. 2003) .........................................................................7

*Hundred East Credit Corp. v. Eric Shuster Corp.*,
   515 A.2d 246 (N.J. Super. Ct. App. Div. 1986).............................................15

*In the Matter of the Adoption of Baby T*,
   734 A.2d 304 (N.J. Sup. Ct. 1999)...................................................................16

*International Union of Op. Eng'rs Local 68 Welfare Fund v. Merck & Co., Inc.*,
   No. ATL-L-3015-04 (N.J. Super. Ct. Atl. Cty. July 8, 2004)........................15

*Jackson v. Crosby*,
   375 F.3d 1291 (11th Cir. 2004) .........................................................................6

*Jordan Horsemen's Benev. & Protect. Associate*,
   448 A.2d 462 (N.J. Sup. Ct. 1982)...................................................................16

*Kale v. Combined Ins. Co. of America*,
   924 F.2d 1161 (1st Cir. 1991) ............................................................................6

*Karvelas*,
   2003 U.S. Dist. Lexis 8846........................................................................11, 12

*Kavky v. Herbalife International of America*,
   820 A.2d 677 (N.J. Super. Ct. App. Div. 2003)..............................................14

*Knight v. Margate*,
   431 A.2d 833 (N.J. Sup. Ct. 1981)...................................................................16

*Kuney Int'l, S.A. v. DiIanni*,
   746 F. Supp. 234 (D. Mass. 1990) ...................................................................11

*Ludgood v. Apex Marine Corp. Ship Mgmt.*,
   311 F.3d 364 (5th Cir. 2002) .............................................................................6

*In re Lupron Marketing and Sales Practices Litig.*,
   295 F. Supp. 2d 148 (D. Mass. 2003) .......................................................12, 13

*N.J. Chamb. Commerce v. N.J. Electric Law Enforce. Comm'n*,
   411 A.2d 168 (N.J. Sup. Ct. 1980)..............................................................16, 17

*N.J. State Bar Assoc. v. Northern N.J. Mortgage Assocs.*,
   123 A.2d 498 (N.J. Sup. Ct. 1956)...................................................................16

*New England Data Servs., Inc. v. Becher*,
   829 F.2d 286 (1st Cir. 1987)..................................................................11, 12, 13

*New Jersey Builders Ass'n. v. Bernards Township,*
    528 A.2d 555 (N.J. Sup. Ct. 1987)...................................................17

*Perez v. Wyeth Labs. Inc.,*
    734 A.2d 1245 (N.J. Sup. Ct. 1999)...................................................17

*Playboy Enters. v. Public Serv. Comm'n,*
    906 F.2d 25 (1st Cir. 1990)...................................................9

*Rhone v. Energy North, Inc.,*
    790 F. Supp. 353 (D. Mass. 1991) ...................................................13

*Right to Choose v. Byrne,*
    450 A.2d 925 (N.J. Sup. Ct. 1982)...................................................15

*Salorio v. Glaser,*
    414 A.2d 943 (N.J. Sup. Ct. 1980)...................................................16, 17

*Sedima, S.P.R.L. v. Imrex Co.,*
    473 U.S. 479 (1985)...................................................10

*Shalala v. Schaefer,*
    509 U.S. 292 (1993)...................................................6

*State of New Jersey v. Alston,*
    440 A.2d 1311 (N.J. Sup. Ct. 1981)...................................................16

*State of New Jersey v. Martini,*
    677 A.2d 1106 (N.J. Sup. Ct. 1996)...................................................16

*State v. Hunt,*
    450 A.2d 952 (N.J. Sup. Ct. 1982)...................................................17

*United States ex rel. Franklin v. Parke-Davis,*
    147 F. Supp. 2d 39 (D. Mass. 2001) ...................................................11

*United States ex rel. Karvelas v. Melrose-Wakefield Hospital,*
    360 F.3d 220 (1st Cir. 2004)...................................................11

*United States ex rel. Karvelas v. Melrose-Wakefield Hospital,*
    2003 U.S. Dist. Lexis 8846 (D. Mass. May 21, 2003)...................................................11, 12

*United States v. Cianci,*
    378 F.3d 71 (1st Cir. 2004)...................................................10

*Warth v. Seldin,*
    422 U.S. 490 (1975)...................................................9

*White v. Union Leader Corp.*,
    2001  U.S. Dist. Lexis 24516, 2001 DNH 126, 2001 WL. 821527 (D.N.H. July 13
    2001) ...........................................................................................................................................14

## STATUTES

18 U.S.C. § 1961(5) ...........................................................................................................10

18 U.S.C. § 1962(c) ..............................................................................................................9

18 U.S.C. § 1964(c) ..............................................................................................................9

18 U.S.C. §§ 1961-1968 ........................................................................................................9

Fed. R. App. P. 4(a)(7)(A)(ii) ...............................................................................................6

Fed. R. Civ. P. 9(b) .............................................................................................................10

Fed. R. Civ. P. 58 ..........................................................................................................6, 7, 8

Plaintiffs Health Care For All, Wisconsin Citizen Action, United Senior Action of Indiana, and Cavalier Homes, individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in opposition to Defendants' motion to dismiss Plaintiffs' putative class action complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b).

## I.    INTRODUCTION

The allegations set forth in Plaintiffs' Class Action Complaint (the "Complaint") expose a widespread, fraudulent scheme whereby Defendants falsely marketed and promoted the prescription drug Celebrex in an effort to create demand for the drug as a wide-ranging pain reliever, allowing defendants to sell it at a premium over comparable drugs. Although Defendants were well-aware that Celebrex had no proven superiority over competing drugs, and in fact had serious side effects, including gastrointestinal complications, blood clotting and clot-related cardiovascular events, and life-threatening skin reactions, they nonetheless pushed Celebrex to market on false claims of improved gastrointestinal safety while downplaying its other risks.

Defendants used the U.S. Mails and Interstate Wire Facilities on thousands, if not hundreds of thousands, of occasions to submit false and misleading marketing materials to governmental agencies, doctors, consumers, health-care providers and others throughout the country. These materials were designed to conceal Celebrex's risks and falsely promote its safety and efficacy. This fraudulent pattern of marketing and promotion persisted for more than four years and, unfortunately, it worked. By the time Defendants ceased marketing Celebrex, plaintiffs had paid hundreds of millions of dollars for the drug, despite the fact that it was no more effective, and in fact far more dangerous, than less expensive alternatives. Accordingly, Plaintiffs bring this action on behalf of themselves and all other similarly situated entities nationwide that paid some or all of Celebrex's inflated purchase price. Because the Complaint adequately pleads claims for violation of 18 U.S.C. § 1962(c), violation of various consumer-

fraud statutes and unjust enrichment, Plaintiffs respectfully ask the Court to deny Defendants'
motion to dismiss.

## II.     MDL PROCEEDINGS

Presently pending before the Judicial Panel on Multidistrict Litigation (the "Panel") are
multiple motions for transfer and consolidation pursuant to 28 U.S.C. § 1407.  These motions
encompass at least 33 lawsuits throughout the country, including the present action, and are
scheduled to be heard on July 28, 2005.  On May 13, 2005, the Panel advised that it might be
"especially appropriate" for district courts to delay ruling on any pending motions "if the motion
raises questions likely to arise in other actions in the transferee court and, in the interest of
uniformity, might best be decided there if the Panel orders centralization."  (Declaration of
Thomas M. Sobol In Support of Plaintiffs' Opposition To Defendants' Motions To Dismiss
("Sobol Decl."), Ex. A.)  Given the multiplicity of similar lawsuits throughout the country, every
question raised by Defendants' motion to dismiss is likely to arise in other actions.  In fact,
Defendants have already filed a similar motion to dismiss in *Steamfitters' Indus. Welfare Fund v.
Pfizer, et al.*, 05 Civ. 3814 (RJH) (S.D.N.Y.), and *Hatcher v. Pfizer, et al.*, 05-208-SLR (D.
Del.), raising the possibility of inconsistent rulings on virtually identical legal issues.  Under
these circumstances, it might be especially appropriate for the Court to delay ruling on
Defendants' motion.

## III.     STATEMENT OF THE FACTS

Celebrex belongs to a class of drugs known as non-steroidal anti-inflammatory drugs
("NSAIDs").  ¶ 27.[1]  Aspirin and ibuprofen are examples of well-known NSAIDs.  ¶ 27.
NSAIDs reduce pain by blocking the body's production of pain transmission enzymes called
cyclo-oxygenase ("COX").  ¶ 28.  There are two forms of COX – COX-1 and COX-2.  *Id.*

---

[1] "¶ __" as used throughout this brief refers to paragraphs of the Class Action Complaint unless otherwise noted.

In addition to transmitting pain sensations, COX-1 and COX-2 have beneficial functions. For instance, COX-1 is involved in maintaining and repairing gastrointestinal tissue, while COX-2 is involved in the prevention of blood clots. ¶¶ 29-30.  Accordingly, blocking COX-1 hampers the body's ability to repair gastric tissue and causes harmful gastrointestinal side effects, including stomach ulceration and bleeding, while blocking COX-2 encourages the formation of blood clots and causes various clot-related cardiovascular events, including heart attacks, unstable angina, strokes, cardiac clotting, and hypertension. ¶¶ 31-32.  Traditional NSAIDs like aspirin block both COX-1 and COX-2 simultaneously, increasing the risk of ulcers in the stomach and intestines (because of a complex chemical balance in the human body, however, traditional NSAIDs do not cause blood clots, but actually reduce the risk of clots and help protect heart function). ¶ 33.  Selective COX-2 inhibitors were developed to remedy this problem.

Celebrex was one of the new COX-2 inhibitors, Vioxx was the other. ¶ 4.  Defendant Searle sought FDA approval on June 29, 1998.  In its pre-approval marketing plans, Defendants planned that Celebrex would be approved and that such approval would include an indication that it was safer than NSAIDs in protecting against GI complications. ¶ 37.  The FDA granted new drug approval on December 23, 1999.  However, Defendants did not obtain approval to promote Celebrex as more effective than NSAIDs in preventing clinically serious GI events. The FDA warned Searle that any promotional activities "that make or imply comparative claims about the frequency of clinically serious GI events compared to NSAIDs or specific NSAIDs will be considered false and/or misleading …."  This finding by the FDA was a potentially serious blow to Defendants.  As a result, the Celebrex package inserts had to include a warning that its use presented GI risks.  ¶¶ 39-40.

Defendants promoted Celebrex as offering all of the benefits of less expensive NSAIDs with none of the drawbacks, thereby turning Celebrex into a blockbuster drug with billions of dollars in yearly sales.  ¶¶ 5-6.  Before they began marketing the drug as being safer and more effective than other NSAIDs, however, Defendants were well-aware that Celebrex had no proven

superiority over other NSAIDs, and in fact had serious side effects, including known risks of blood clots, heart attack, stroke, unstable angina, cardiac clotting and hypertension.  ¶ 152.

Defendants funded a significant clinical trial to demonstrate that Celebrex had greater gastrointestinal safety than traditional NSAIDs:  the Celecoxib Long-Term Arthritis Safety Study ("CLASS").  ¶ 41.  Defendants expected CLASS to show that Celebrex was statistically significant in reducing serious GI complication over NSAIDs and that the results would allow removal of the warning label.  Removal of the warning label was viewed as critical to breaking the NSAID barrier, *i.e.*, competing against NSAIDs based on GI superiority.  ¶ 42.  When the CLASS study was completed, the results were reported to the U.S. Food and Drug Administration's Arthritis Drugs Advisory Committee ("the Committee") as part of a request to exempt Celebrex from including a gastrointestinal safety warning in its package insert.  ¶ 44.

After reviewing the CLASS results, the Committee concluded that patients taking Celebrex had not experienced fewer gastrointestinal complications than those taking traditional NSAIDs.  In other words, CLASS showed that Celebrex failed to achieve its primary endpoint of reduced "clinically significant serious gastrointestinal events."  Without any proof of enhanced safety, the Committee then recommended that the Celebrex package insert contain the same gastrointestinal warnings as traditional NSAIDs, and advised further studies to assess the risk of COX-2 inhibitors when taken with aspirin.  Thus, Defendants' clinical studies did not have their intended effect:  Celebrex was not permitted to claim increased gastrointestinal safety over traditional NSAIDs.  ¶ 45-46.

Notwithstanding the FDA's limited approval, Defendants initiated a massive marketing campaign in which they promoted Celebrex as providing effective pain relief without the gastro-intestinal side effects of traditional NSAIDs.  ¶¶ 3-4.  Defendants' marketing and promotion of Celebrex was part of a scheme to create the impression and demand for Celebrex as a wide ranging pain reliever that would enhance consumers' abilities to live a normal life or engage in activities such as running, playing a guitar, swimming, walking, taking exercise classes and a

host of similar activities that many who suffer from chronic pain have difficulty performing.  ¶ 5. The scheme was accomplished by unlawful means including, but not limited to, (i) the suppression of data showing the cardiovascular risks associated with the use of Celebrex (¶¶ 143-150); (ii) the manipulation of data in an effort to show statistical significance of fewer serious upper GI events than those using NSAIDs when in fact the complete data failed to demonstrate a statistically significant lower rate of GI complications and, in fact, use of Celebrex for more than six months increased the risk of GI complications (¶¶ 51-56); (iii) the manipulation of data to give the appearance of superiority over NSAIDs when such superiority did not exist (*id*.); (iv) false promotional materials directed to doctors and consumers (¶¶ 72-142); and (v) the use of reprinted articles from prestigious medical journals that falsely claimed Celebrex was proven to be safer than NSAIDs (¶¶ 60, 62-71.).

Defendants maintained this marketing campaign in order to create demand for Celebrex as a superior paint reliever, which in turn allowed them to sell it at a premium over other NSAIDs.  ¶¶ 7, 9.  Unfortunately, the scheme worked.  Defendants created significant demand for Celebrex, allowing them to sell it for $2.53 to $6.45 per day depending upon the dose, while NSAIDs sell for 21¢ to 31¢ per day.  ¶ 9.  This continued until December 20, 2004, when Pfizer announced that it would stop all television, radio, newspaper and magazine advertising.  ¶ 159. By that time, however, the Class had already paid billions of dollars for the drug, despite the fact that it was no more effective, than a 10¢ aspirin.  ¶ 9.

## IV.    ARGUMENT

## A.    Plaintiff Cavalier Homes' Claims Are Not Barred By The Doctrine Of *Res Judicata*

Defendants also ask the Court to dismiss claims brought by Plaintiff Cavalier Homes, but Defendants assert incorrectly that those claims have been dismissed by a final judgment.  The doctrine of *res judicata* bars a party from re-litigating the issues that were or could have been raised in a previous litigation.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Federal law requires (i) a final judgment on the merits of an earlier action,  (ii) identity of the causes of action, and

(iii) identity of the parties or privity in both suits. *Kale v. Combined Ins. Co. of* America, 924 F.2d 1161, 1165 (1st Cir. 1991). *Res Judicata* does not bar Cavalier Homes from bringing this action because the Alabama district court did not reach final judgment on the merits. The court instead dismissed the complaint without prejudice without entering final judgment.

Res judicata does not apply if there was no final judgment on the merits in the earlier suit, which is the case in Cavalier Homes' Alabama action. Rule 58(a)(1) of the Federal Rules of Civil Procedure requires a district court to set forth every judgment "on a separate document." Judgment is not entered until such time or, if the court does not enter a separate judgment, 150 days after entry in the docket of the otherwise final order or judgment. Rule 58(b)(2). *See also Shalala v. Schaefer*, 509 U.S. 292, 302 (1993); *Jackson v. Crosby*, 375 F.3d 1291, 1294 (11th Cir. 2004); Federal Rules of Appellate Procedure 4(a)(7)(A)(ii). The purpose of Rule 58's separate-document requirement is to clarify when the time for an appeal begins to run. *E.g.*, *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384 (1978); *Ludgood v. Apex Marine Corp. Ship Mgmt.*, 311 F.3d 364, 368 (5th Cir. 2002).

The unique circumstances of the Alabama action compel the conclusion that the court sought to dismiss the case ***without prejudice*** and was awaiting Cavalier Homes' response before entering any further order. Cavalier Homes filed its complaint on December 23, 2004, and amended the complaint on February 17, 2005. Defendants filed their motion to dismiss that amended complaint on March 4, 2005. Six days later, on March 10, 2005, while plaintiff was drafting its opposition, the court ***granted defendants' motion without allowing Cavalier Homes any opportunity to oppose to it***.

The court could not have intended this as a dismissal with prejudice. First, the court never entered a final judgment (see Sobol Decl., Ex. B, Docket sheet for *Cavalier Homes, Inc. v. Pfizer, Inc. et al.*, 6:04-cv-03512-IPJ). Second, although the court granted the motion to dismiss, it certainly would have allowed Cavalier a chance to cure the defects in the complaint before entering final judgment. Rather than seeking to amend in that action, however, Cavalier joined

with other Plaintiffs in the present action.[2]  Cavalier has, concurrently with this motion, moved to voluntarily dismiss the Alabama action.[3]

A dismissal without prejudice is not a final adjudication on the merits and thus does not have a *res judicata* effect.  *Hughes v. Lott*, 350 F.3d 1157 (11th Cir. 2003) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)).  The Alabama court ruled:  "… this Court orders that defendant's motion to dismiss be and hereby is GRANTED."  But nowhere did Defendants' motion and supporting brief state that Defendants were seeking a dismissal with prejudice.  Defendants asked the court to dismiss Cavalier's claims for failure to state a claim and to plead fraud with particularity.  Sobol Decl., Ex. C at 1.  Defendants concluded their brief in support of that motion by asking the court to dismiss the complaint in its entirety.  But they did not ask the Alabama court to dismiss the entire action or to dismiss the complaint with prejudice.

The Eleventh Circuit does not equate dismissing a complaint with dismissing an action.  *See Czeremcha v. International Assoc. of Machinists and Aerospace Workers, AFL-CIO,* 724 F.2d 1552, 1556 n.6 (11th Cir. 1984).  Dismissing a complaint has the effect of terminating the plaintiff's right to amend under Fed. R. Civ. P. 15(a), but it is not itself a final judgment.  Rule 58(a); *Czeremcha,* 724 F.2d at 1554.  The plaintiff may still move the court for leave to amend unless the "court has clearly indicated either that no amendment is possible or that dismissal of the complaint also constitutes a dismissal of the action."  *Czeremcha,* 724 F.2d at 1556 n.6.  The Eleventh Circuit's approach is grounded in the desire to formulate a rule consistent with "rule 15's liberal mandate that leave to amend be freely given when justice so requires."  *Id.* at 1554-

---

[2] Defendants label this "forum shopping," but Cavalier Homes merely foresaw the inevitable – that the multitude of related actions pending in various district courts would be transferred and consolidated before a single court. Cavalier thus joined with plaintiffs from four other states (Arizona, Indiana, Massachusetts and Wisconsin) in a complaint filed in this Court.  Defendants can little criticize Cavalier – they are urging the Judicial Panel for Mulitdistrict Litigation to transfer and consolidate all pending federal actions in a single forum (though they prefer not to litigate here, arguing instead for transfer to the Southern District of New York).

[3]  The motion alternatively seeks to stay the action or, failing that, to amend the complaint.  If the Alabama court declines to grant a voluntary dismissal or stay, Cavalier Homes will inform this Court and take appropriate action here.

55.  While the court wants to prevent "granting the plaintiff carte blanche to reopen a case at will," it generally allows an amendment if leave of court is requested.  *Id.*

Accordingly, without an express statement from the court that Cavalier Homes cannot amend or that the dismissal was ***with prejudice*** – or that the court was entering a final judgment under Fed. R. Civ. P. 58(a) – Cavalier had an opportunity to seek leave to amend and thus the dismissal was not a final adjudication.  *See id.*; *Acevedo-Villalobos v. Hernandez*, 22 F.3d 384, 388 (1st Cir. 1994) (discussing *Czeremcha* and Eleventh Circuit's approach).

Further, the Eleventh Circuit held in *Czeremcha* that an order of dismissal is not final if "the plaintiff could not have been reasonably expected to realize that the court was entering a final order."  *Czeremcha,* 724 F.2d at 1555.  Under the dismissal ruling's unique circumstances, Cavalier Homes rightfully interpreted the action of the Court as a dismissal of the complaint or, at most, a dismissal ***without*** prejudice.  And the absence of a final judgment confirms that the court did not intend its hasty grant of Defendants' motion to dismiss to be final and with prejudice.  *See Acevedo-Villalobos*, 22 F.3d at 389.

In sum, given that (i) the Alabama court granted Defendants' motion to dismiss before Cavalier Homes could respond, (ii) did not expressly dismiss the complaint with prejudice, (iii) did not enter a final judgment, and (iv) Cavalier reasonably interpreted the court's ruling and its failure to enter final judgment to be a dismissal ***without*** prejudice, that dismissal is a not final judgment that can act as *res judicata* on Cavalier Homes' claims here.  Defendants' motion to dismiss Cavalier Homes' claims thus should be denied.

**B.     Plaintiffs Have Standing to Assert Their Claims For Injunctive Relief**

Defendants' narrowly focus their standing argument on whether the three advocacy groups here (Health Care For All, Wisconsin Citizen Action and United Senior Action of Indiana) can assert a damages claim.  Defs. Br. at 7-9.  Defendants do not dispute, however, that these plaintiffs can assert claims for injunctive relief.

Nor can they.  Defendants' own authority confirms that such organizations can seek a declaration or injunction that would benefit its injured members:

> [W]hether an association has standing to invoke the courts' remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.  If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.  Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Warth v. Seldin*, 422 U.S. 490, 515 (1975), *quoted in Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  The First Circuit confirmed that associations can seek injunctive or declaratory relief where, as here, it turns on questions of law that are not particular to any individual member.  *See Playboy Enters. v. Public Serv. Comm'n*, 906 F.2d 25, 35 (1st Cir. 1990); *Camel Hair and Cashmere v. Associated Dry Goods*, 799 F.2d 6, 12 (1st Cir. 1986); *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 321 (D. Mass. 1997).  Defendants do not argue that Plaintiffs' request for injunctive relief (Complaint at 73 ¶ E) hinges on factual questions unique to individual members.[4]

## C.    The Complaint Properly Pleads RICO Violations

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), authorizes a private right of action by "[a]ny person injured in his business or property by reason of a violation of section 1962 of [Title 18]."  18 U.S.C. § 1964(c).  18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  Accordingly, Plaintiffs are authorized to maintain the present lawsuit if they were injured in their businesses or properties by defendants' "(1) conduct (2) of an

---

[4] To the extent the Court concludes that these plaintiffs must plead more details about particular injured members, Plaintiffs request leave to amend.

enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996). As set forth herein, the complaint properly alleges each of these elements, and all other matters required to maintain an action for Defendants' violation of 18 U.S.C. § 1962(c), with the specificity required by First Circuit precedent, Fed. R. Civ. P. 8(a), and, where applicable, Fed. R. Civ. P. 9(b).

> **1.    Plaintiffs have standing to sue for Defendants' RICO violations**

Defendants repeat their narrow challenge to the three organizational Plaintiffs' standing to seek damages under the RICO statutes. But again, these Plaintiffs are not seeking damages, and Defendants' arguments are thus misplaced. Plaintiffs are seeking injunctive relief for Defendants' RICO violations. Complaint at 73 ¶ E. They plainly have standing to do so.

> **2.    The Complaint alleges with sufficient particularity that Defendants conducted the Celebrex Enterprises' affairs through a pattern of racketeering activity**

RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity" committed within a ten year period. 18 U.S.C. § 1961(5). A pattern is established where the predicate acts are related and they amount to, or pose a threat of, continued criminal activity. *United States v. Cianci*, 378 F.3d 71, 88 (1st Cir. 2004). That the facts alleged by Plaintiffs establish that Defendants committed at least two predicate acts during the relevant time period is not in dispute. Indeed, plaintiffs allege that each of the defendants committed thousands of individual acts of mail fraud and wire fraud. ¶¶ 180-84.

Defendants assert that Plaintiffs have not alleged their racketeering activity with particularity sufficient to satisfy Fed. R. Civ. P. 9(b). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Defendants assert that Plaintiffs' allegations of mail and wire fraud must comply with Rule 9(b). They fail to note, however, the First Circuit has expressly relaxed Rule 9(b)'s pleading requirements pending further discovery for allegations of mail and wire fraud pursuant to RICO "because of the apparent difficulties in specifically pleading mail and wire fraud as

predicate acts." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 229 (1st Cir. 2004); *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 290-91 (1st Cir. 1987) ("*Becher*"). This relaxed particularity standard under Rule 9(b) applies where plaintiffs are not directly involved in the alleged fraudulent scheme and, thus, cannot be expected to have personal knowledge of the facts constituting the fraud. *See Becher*, 829 F.2d at 290-91 ("it is seemingly impossible for the plaintiff to have known exactly when the various defendants phoned or wrote to each other or exactly what was said"); *Kuney Int'l, S.A. v. DiIanni*, 746 F. Supp. 234, 237 (D. Mass. 1990) (civil RICO claim was pled with sufficient particularity). Courts recognize that "it is difficult to perceive how the defendants would have communicated without the use of the mail or interstate wires." *Becher*, 829 F.2d at 291. And thus, "when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion," or "when the facts underlying the fraud are 'peculiarly within the defendants' control,'" Rule 9(b) requires less specificity of pleading pending discovery. *Boston & Maine Corp. v. Hampton*, 987 F.2d 855, 866 (1st Cir. 1993). *See also United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 2003 U.S. Dist. Lexis 8846, at *13 (D. Mass. May 21, 2003) (quoting *Boston & Maine*), *aff'd*, 360 F.3d 220 (1st Cir. 2004); *United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 46 (D. Mass. 2001) (same).

The Court also weighs Rule 9(b) against the general policy of Rule 8 notice pleading. *See Karvelas*, 2003 U.S. Dist. Lexis 8846, at *13; *Kuney Int'l*, 746 F. Supp. at 237; *accord Parke-Davis*, 147 F. Supp. 2d at 46. Plaintiffs' complaint thus need not plead all of the evidence or facts supporting the allegations of fraud. *Id.* at 46-47. "Detailed facts are not required where allegations of fraud in the complaint set forth the specific basis for the claim." *Kuney Int'l*, 746 F. Supp. at 237. The purposes behind Rule 9(b), each of which is fulfilled here, include: (i) put Defendants on notice and enable them to prepare meaningful responses to charges of fraud, which Plaintiffs have done here by including general allegations of the fraudulent scheme, *see* ¶¶ 175-98; (ii) provide a basis for demonstrating that the suit is not simply a "strike suit" or a

groundless fraud claim as a pretext to discovering a wrong; and (iii) protect Defendants from groundless charges. *Karvelas*, 2003 U.S. Dist. Lexis 8846, at *13; *In re Lupron Marketing and Sales Practices Litig.*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003). In sum, this Court has previously referred to Rule 9(b)'s requirements as setting forth the "'who, what, when where, and how' of the alleged fraud." *Karvelas*, at *13 (quoting *United States ex rel. Gublo v. Novacare, Inc.*, 62 F. Supp. 2d 347, 354 (D. Mass. 1999)).

The Complaint does exactly that. Specifically, the Complaint alleges that Defendants falsely marketed and promoted Celebrex in an effort to create demand for the drug as a wide-ranging pain reliever, allowing defendants to sell it at a premium over other NSAIDs. ¶¶ 7, 9. Although Defendants were well-aware that Celebrex had no proven superiority over other NSAIDs, that the FDA had refused to approve Celebrex for the management of acute pain, and that Celebrex had serious gastrointestinal, cardiovascular, and skin reaction side-effects, defendants nonetheless promoted it as a superior pain reliever, falsely advertising its safety and efficacy while concealing its life-threatening side effects. ¶¶ 57, 152. Defendants blitzed doctors' offices with fraudulent literature and verbal presentations, and they each used the U.S. Mails and Interstate Wire Facilities on thousands, if not hundreds of thousands, of occasions to direct false and misleading materials to governmental agencies, doctors, consumers, health care providers, and others throughout the country. ¶¶ 72-83, 184. Although Plaintiffs are unable to allege the precise dates of each communication, such matters are peculiarly within Defendants' knowledge. "Indeed, an essential part of the successful operation of the Celebrex Enterprise alleged herein depended upon secrecy, and as alleged above, Defendants took deliberate steps to conceal their wrongdoing." ¶ 183.

Defendants seize upon the complaint's lack of allegations of precise dates of and the specific participants in these communications as grounds to dismiss. But in response to the same argument, the *Lupron* court refused to grant defendants' motion to dismiss, quoting at length from the First Circuit's decision in *Becher*, 829 F.2d at 290-91, where the plaintiffs plausibly

pled a fraudulent scheme but were unable to specify each defendant's use of interstate mail or wire. *In re Lupron*, 295 F. Supp.2d at 170-71. Plaintiffs' allegations of a fraudulent scheme that was both plausible and concealed led the First Circuit to relax the Rule 9(b) pleading standard:

> Where there are multiple defendants, as here, and where the plaintiff was not directly involved in the alleged transaction, the burden on the plaintiff to know exactly when the defendants called each other or corresponded with each other, and the contents thereof, is not realistic. Plaintiff here provided an outline of the general scheme to defraud and established an inference that the mail or wires was used to transact this scheme; requiring plaintiff to plead the time, place and contents of communications between the defendants, without allowing some discovery, in addition to interrogatories, seems unreasonable. [*Becher*, 829 F.2d at 291.]

And thus, under the circumstances herein, where only Defendants know the details of their fraud and Plaintiffs have had no opportunity to conduct discovery, courts in this Circuit do not require greater specificity lest they permit sophisticated defrauders to successfully conceal the details of their fraud and avoid liability. Defendants cannot, and do not, contest the fact that they are on notice of the precise misconduct with which they are charged. Moreover, as Defendants do not dispute in their motion, Plaintiffs have pled a plausible scheme to defraud that used interstate mails and wire. The standard set forth in *Becher*, *Boston & Maine Corp.*, and *Lupron* has been met. The Complaint must be sustained.

Defendants' authorities do not compel a contrary result. In *Ahmed v. Rosenblatt*, 118 F.3d 886 (1st Cir. 1997), for example, the pro se plaintiff failed to plead any of the three elements of his RICO claim. *Id*. at 889. The court was hence ill-disposed to grant plaintiff leeway under Rule 9(b) to allow him discovery for the sole purpose of pleading defendant's predicate acts with greater particularity. *Id*. at 890. *See also Rhone v. Energy North, Inc.*, 790 F. Supp. 353, 358-61 (D. Mass. 1991) (same).[5] In *Cordero Hernandez v. Hernandez Ballesteros*, 333 F. Supp. 2d 6, 11-12 (D.P.R. 2004), the court had previously given plaintiff three years to conduct discovery into defendants' alleged predicate acts, which it deemed a sufficient opportunity for

---

[5] *Rhone* also failed even to mention the relaxed Rule 9(b) pleading standard for RICO predicate acts. *See id*. at 360.

plaintiff to plead the acts with particularity. The plaintiff in *White v. Union Leader Corp.*, 2001 U.S. Dist. Lexis 24516, at *17-19, 2001 DNH 126, 2001 WL 821527 (D.N.H. July 13 2001), likewise had ample access to evidence of defendants' predicate acts. Here, by contrast, Plaintiffs only recently filed this case and have obtained no discovery from Defendants. Evidence of Defendants' predicate acts thus remains in Defendants' sole possession.

**D.    Plaintiffs Have Stated Proper Claims Under Each State Consumer Protection Statute**

Plaintiffs successfully allege claims under the consumer fraud statues of Illinois, New Jersey, and New York. As set forth below Plaintiffs have sufficiently pleaded violations of the states' consumer fraud statutes.

**E.    Cavalier Homes and the Organizational Plaintiffs Are "Persons" Entitled to Protection Under the New Jersey Consumer Fraud Act**

Defendants argue that Plaintiffs Cavalier Homes and the Organizational Plaintiffs lack standing to assert a claim under the New Jersey Consumer Fraud Act ("NJCFA") because they are not "consumers" under NJCFA. Defs. Br. at 12. Defendants' argument is erroneous because Plaintiff Cavalier Homes is a third party payor that paid most of the costs of Celebrex purchases for its employees. Further, the Organizational Plaintiffs have a sufficient stake in the outcome of the litigation to meet New Jersey requirements for standing.

In *Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677 (N.J. Super. Ct. App. Div. 2003) the appellate court held the NJCFA applied to the sale of a franchise, which was obviously not "consumed" by the plaintiff franchisee. *Kavky* expressly rejected the narrow interpretation of the NJCFA contained in Defendants' authority, *City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809 (N.J. Super. Ct. App. Div. 1990):

> Although we have occasionally referred to a dictionary definition of a consumer as "one who uses (economic) good, and so diminishes or destroys their utilities,"… "some consumer goods may not be dismissed or destroyed through use …." Consequently, we agree … that the result should not turn on "the acceptance of [that] definition. [820 A.2d at 682 (internal citations omitted).]

Relying upon *Kavky,* a New Jersey trial court recently upheld similar third-party payor claims against Merck for its sales of Vioxx in the face of virtually identical arguments.[6] *Desiano v. Warner-Lambert Co.,* 326 F.3d 339 (2d Cir. 2003), which was cited with approval in *Merck* (at 9-10), also held that third-party payors had claims under the NJCFA against these same Defendants in connection with the deceptive marketing of the drug Rezulin. As one New Jersey appellate court appropriately noted:

> Even the most world-wise business entity can be inexperienced and uninformed in a given consumer transaction. Unlawful practices thus can victimize business entities as well as individual consumers…. [T]o exclude business entities from any protection of the Act would contravene its manifest purpose as well as its unambiguous language.

*Hundred East Credit Corp. v. Eric Shuster Corp.,* 515 A.2d 246, 249 (N.J. Super. Ct. App. Div. 1986). Accordingly, third-party payers – who pay most of the costs of Celebrex prescriptions – have standing to sue under the NJCFA.

Plaintiff organizations – Health Care for All, Wisconsin Citizen Action and United Senior Action of Indiana – seek relief on behalf of their members for Defendants' false and deceptive advertising. Each Plaintiff organization is dedicated to the rights of consumers and other vulnerable populations, and has members that have purchased Celebrex at an elevated price during the class period. *See* ¶¶ 12-14. Both New Jersey's statutes and appellate decisions widely recognize and uphold the standing of organizations to assert claims for relief on behalf of their members. *See Crescent Park Tenants Assoc. v. Realty Equities Corp.*, 275 A.2d 433, 439 (N.J. Sup. Ct. 1971); *In re Association of Trial Lawyers*, 549 A.2d 446, 449 (N.J. Super. Ct. App. Div. 1980) ("the standing of nonprofit associations to litigate in varying contexts has historically been upheld in New Jersey"; citing *Right to Choose v. Byrne*, 450 A.2d 925, 938-39 (N.J. Sup.

---

[6] *See Int'l Union of Op. Eng'rs Local 68 Welfare Fund v. Merck & Co., Inc.,* No. ATL-L-3015-04 (N.J. Super. Ct. Atl. Cty. July 8, 2004) (attached hereto as Exhibit A) (noting that the NJCFA "actually uses the word 'person' not 'consumer,'" and that "[t]here is no dispute that the word 'person' is not limited to individuals") (distinguishing *City Check Cashing* "because [it] involve[d] buyers of wholesale services to resell at retail…. [T]he services purchased were not available to the general public which is completely different from … Vioxx").

Ct. 1982); *Jordan Horsemen's Benev. & Protect. Assoc.,* 448 A.2d 462, 466-67 (N.J. Sup. Ct. 1982); *Knight v. Margate,* 431 A.2d 833, 840 (N.J. Sup. Ct. 1981); *N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm'n.,* 411 A.2d 168, 173-74 (N.J. Sup. Ct. 1980); *Common Cause v. N.J. Election Law Enforce. Comm'n.,* 377 A.2d 643, 645-46 (N.J. Sup. Ct. 1977); *American Trial Lawyers Assoc. v. N.J. Supreme Ct.,* 330 A.2d 350, 351 (1974); *N.J. State Bar Ass'n v. Northern N.J. Mortgage Associates,* 123 A.2d 498, 504 (N.J. Sup. Ct. 1956)).

As first explained by the New Jersey Supreme Court in *Crescent Park Tenants Ass'n,* "Unlike the Federal Constitution, there is no express language in New Jersey's Constitution which confines the exercise of our judicial power to actual cases and controversies." *Crescent Park Tenants Ass'n*, 275 A.2d at 437 (citing U.S. Const. art. III, § 2; N.J. Const. art. VI, § 1). The New Jersey Supreme Court's later decisions have repeatedly recognized and adhered to these clear distinctions between Article III federal standing requirements and New Jersey's Article VI standing requirements. *See State of New Jersey v. Martini*, 677 A.2d 1106, 1111 (N.J. Sup. Ct. 1996) ("[c]onsequently, we need not debate or decide the differences between standing under Article III of the United States Constitution and under Article VI of the New Jersey Constitution"; citing *Crescent Park Tenants Ass'n*); *Salorio v. Glaser*, 414 A.2d 943, 947 (N.J. Sup. Ct. 1980) ("[i]t is important to recognize that New Jersey State courts are not bound by the 'case or controversy' requirement governing federal courts"); *State of New Jersey v. Alston*, 440 A.2d 1311, 1316 n.5 (N.J. Sup. Ct. 1981) (Schreiber, J., concurring) (noting distinction between federal and state standard for standing); *In re Application of Boardwalk Regency Corp. for Casino License*, 447 A.2d 1335, 1339 (N.J. Sup. Ct. 1982) (New Jersey courts are not limited to the "case or controversy" requirement imposed on the federal courts by way of Article III of the Federal Constitution, U.S. Const. art. III § 2).

Rather, standing is shown "where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness." *Crescent Park Tenants Ass'n.*, 275 A.2d at 438; *see In the Matter of the Adoption of Baby T*, 734 A.2d 304, 308 (N.J. Sup. Ct. 1999); *New Jersey*

*Builders Ass'n v. Bernards Township*, 528 A.2d 555, 557 (N.J. Sup. Ct. 1987). In addition, "a plaintiff's particular interest in the litigation in certain circumstances need not be the sole determinant. That interest may be accorded proportionately less significance where it coincides with a strong public interest." *N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm'n.,* 411 A.2d at 173. "[I]n cases of great public interest, any 'slight additional private interest' will be sufficient to afford standing." *Salorio*, 414 A.2d at 947 (citing cases). Indeed, New Jersey courts must "always bear[] in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of 'just and expeditious determinations on the ultimate merits.'" *Crescent Park Tenants Ass'n*, 275 A.2d at 438; *see also State v. Hunt*, 450 A.2d 952, 966 (N.J. Sup. Ct. 1982) ("strong state policy in favor of access to our courts and liberalized standing to vindicate legal claims").

Plaintiff organizations have a sufficient stake in the outcome of litigation and real adverseness to meet New Jersey's requirements for standing. Each Plaintiff organization has members that have purchased Celebrex at an elevated price during the class period. ¶¶ 12-14. Each Plaintiff organization has alleged matters of common interest to their members and the public, and has not included any individual grievance that might be dealt with more appropriately in a proceeding between individual members and Defendants. *See id. generally*. Furthermore, there is a strong public interest in addressing Defendants' direct-to-consumer advertising that Plaintiffs have complained of in their Complaint. *See Perez v. Wyeth Labs. Inc.,* 734 A.2d 1245 (N.J. Sup. Ct. 1999). Plaintiff organizations have sufficiently alleged a "legitimate concern with the subject matter" that "evidence[s] a sufficient stake and real adverseness." *Crescent Park Tenants Ass'n.,* 275 A.2d at 438. Plaintiff organizations have sufficient standing to sue for claims of injunctive relief on behalf of their members. Since Defendants' arguments are contrary to well-established law and Plaintiffs sufficiently allege their NJCFA claims, Defendants' motion to dismiss Plaintiffs' NJCFA claims should be denied.

**F.      Plaintiffs Have Stated a Proper Claim for Unjust Enrichment**

Defendants' challenge to Plaintiffs' unjust enrichments claims fail for the same reasons set forth in the Individual Plaintiffs' memorandum of law, at 19-20.

**V.      CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss the claims of the organizations plaintiffs should be denied.

DATED:  July 27, 2005

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ Thomas M. Sobol
Thomas M. Sobol
One Main Street, Fourth Floor
Cambridge, MA  02142
(617) 482-3700
tom@hbsslaw.com

Steve W. Berman
Erin K. Flory
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292
steve@hbsslaw.com
erin@hbsslaw.com

Garve Ivey, Jr.
Barry A. Ragsdale
William Adair, Jr.
IVEY & RAGSDALE
P.O. Box 1349
315 West 19th Street
Jasper, AL 35502-1349
(205) 221-4644
garve@iveyragsdale.com

Jonathan B. Lowe
LOWE MOBLEY & LOWE
P.O. Box 576
Haleyville, AL 35575-0576
(205) 486-5296

Jeffrey Kodroff
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
(215) 496-0300

*Attorneys for Plaintiffs and the Proposed Class*

# EXHIBIT A





## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS

CAROL E. HIGBEE, J.S.C.

1201 Bacharach Boulevard
Atlantic City, NJ 08401-4527
(609) 343-2190

### MEMORANDUM OF DECISION ON MOTION
Pursuant to Rule 1:6-2(f)

**CASE:**           International Union of Operating Engineers Local No. 68
                    Welfare Fund, Individually and on behalf of all others
                    similarly situated v. Merck & Co., Inc.

**DOCKET #:**       ATL-L-3015-04

**DATE:**           July 8, 2004

**MOTION:**         Defendant's Motion for Summary Judgment

**ATTORNEYS:**      Wilfred P. Coronato, Esq. – Attorney for Defendant
                    Christopher A. Seeger, Esq. – Attorney for Plaintiff

Having carefully reviewed the papers submitted and oral arguments presented, I have ruled on the above Motion as follows:

The plaintiff, International Union of Operating Engineers Local No. 68 Welfare Fund (the Fund or the plaintiff) is a joint union-employer trust fund which pays for prescription drugs purchased by its members for their consumption. Such "third party payor" funds are common today as most prescription drugs are purchased through prescription plans.

The Fund filed a two-count class action complaint against the defendant Merck & Co., Inc. (Merck) who is the manufacturer of the prescription drug VIOXX®. Merck is a New Jersey corporation. The Fund is organized and operating in New Jersey. The complaint was filed in New Jersey on behalf of "all third party payors in the United States" who have paid for the prescription drug VIOXX®. The issue of class certification is not presently before the Court.

🟦 *"The Judiciary of New Jersey is an equal Opportunity/Affirmative Action Employer"* ⚖



The Fund alleges that Merck's marketing and advertising of the drug VIOXX® was fraudulent and misrepresented the safety and efficacy of the drug.

The Fund alleges specifically that VIOXX® is a cox-2 specific inhibitor used in the treatment of inflammation and pain and is among the class of drugs known as NSAIDs. Merck introduced VIOXX® and sold it initially at a cost of $72.00 for a monthly supply. In contrast NSAIDs on the market already sold for $9.00 or less for the same supply. Traditional NASIDs inhibit both cox-1 and cox-2 enzymes. Cox–1 enzyme is believed to have a protective effect on the gastrointestinal system and the traditional NASIDs were known to pose a risk of ulcer and other gastrointestinal problems. The Fund alleges that Merck misrepresented that VIOXX® had a significantly reduced risk of these side effects. The Fund alleges VIOXX® was promoted and marketed by Merck as much safer and more effective than the much cheaper NASIDs already on the market. The Fund states that in reliance on these claims by Merck, they approved, as did other third party payors, inclusion of VIOXX® as a preferred prescription drug and agreed to pay for use of VIOXX® by their members.

The Fund specifically alleges that Merck initially misrepresented the safety of the drug to get it on drug formularies so they could get a large share of the market for these types of drugs. In the year 2000, the Fund states that sales of VIOXX® exceeded two billion dollars and VIOXX® acquired 23% of the NASIDs market despite the significantly higher cost.

The plaintiff alleges that the representation by Merck that VIOXX® was safer than traditional NASIDs was false. The plaintiff alleges that VIOXX® also poses a risk of ulcers and gastrointestinal side effects and that its marketing and promotion as a safer alternative was false. In addition, the Fund alleges that VIOXX® produced a high rate of cardiovascular events,

including heart attacks. They allege that the defendant intentionally failed to disclose the level of risk of cardiovascular events caused by the drug.

In the complaint, plaintiffs refer to specific FDA warning letters sent to the defendant. The complaint references a letter sent by the FDA on July 16, 1999 warning defendant that its advertisements failed to provide adequate risk information. It also references a December 1999 FDA letter to defendant that warns them that some of its promotional pieces were "false & misleading." An additional letter issued to defendant on September 17, 2001 includes statements that Merck had minimized "potentially serious cardiovascular findings" from a VIOXX® study.

The complaint asks for economic damages because the Fund was mislead into paying higher prices for VIOXX® than for traditional NASIDs. The Fund claims it relied on the false statements and the suppression of information from Merck in order to approve VIOXX® as a preferred drug for its members because it had more benefits and less risks to its members than much cheaper NASIDs on the market. The complaint states two causes of action, one for common law fraud and misrepresentation and one for fraud under the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, et seq.).

Merck moves to strike both counts of the complaint. Merck states the first count is deficient because the complaint is not specific enough for a fraud count. In order to make a valid claim for fraud, plaintiff must allege a material misrepresentation and reasonable reliance thereon. See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). The allegations of misrepresentation must be pled with particularity under Rule 4:5-8(a) which states in "all allegations of misrepresentation, fraud . . . particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable."

This is a motion to dismiss a complaint. Discovery is still in process. Over a million pages of documents, including advertising and marketing materials and drug studies have been provided by defendant to plaintiff. Depositions have started but most are still ahead.

Defendants cite to several federal cases that were dismissed for failure to plead with particularity under Fed. R. Civ. P. 9(b). In this case, the complaint does not simply make a general allegation of fraud. The complaint describes the misrepresentations that VIOXX® was more safe and more effective than other NASIDs on the market as being the heart of the misrepresentation. The complaint states with even more particularity that representations that VIOXX® caused less gastrointestinal side effects than other NASIDs on the market and the omission or minimizing of known dangers of cardiovascular side effects are the basis of the claim of misrepresentation. These are specific misrepresentations. It is not "practicable" in a case such as this to allege each and every specific statement made and the date and place in the complaint.

There has to be a balance between the need for specificity so the defendant understands exactly what is being alleged as fraud and the practical ability of the plaintiff to specify each individual misstatement before discovery is completed in a case that involves billions of dollars of sales.

The Federal Rules and the New Jersey Rules on pleading of fraud are similar but the State Rule addresses practicality. The purpose is the same. In the case of <u>Seville Industrial Machinery Corp. v. Southmost Machinery Corp.</u>, 742 <u>F.2d</u> 786 (1984) the U. S. Third Circuit Court reversed a decision of the U.S. District Court of New Jersey where plaintiff's complaint had been dismissed for failing to plead the underlying acts of fraud with sufficient particularity.



The U.S. Third Circuit Court states that the U.S. District Court confused what must be "pleaded with what must be proved". The decision states:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

The VIOXX® complaint identifies with specificity the nature of the misrepresentations. The specific FDA warning letters referenced in the complaint add both more precision and some measure of substantiation to the allegations.

The allegations are just that. They remain unproven but are sufficiently specific to allow the defendant to understand what they must defend against. In Florian Greenhouse v. Cardinal IG Corp., 11 F.Supp.2d 521 (U.S. Dist.Ct. N.J. 1998) the Court stated "the most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading."

In In re The Prudential Insurance Company of American Sales Practices Litigation 975 F.Supp. 584, in an opinion dealing with complex insurance fraud allegations, the U.S. District Court of N.J. held:

> Nor, under these circumstances, is plaintiffs' failure to attach specific documents to which the complaint refers, or to quote from them verbatim, fatal to their claims. Cf. In re VMS Secs. Lit., 752 F.Supp. 1373, 1386 (N.D.Ill.1990). In complex corporate fraud case such as this one, "a description of the nature and subject matter" of the alleged misrepresentations or omissions may be sufficient "even absent allegations with respect to the exact factual context or words constituting the misrepresentation." In re Midlantic Corp. Shareholder Lit., 758 F.Supp. 226, 231 (D.N.J.1990), citing Commodity Futures Trading Com'n v. American Metal Exchange Corp., 693 F. Supp. 168, 190-91 (D.N.J.1988).



The Court finds that the complaint alleges fraud with sufficient particularity to fulfill the purpose of the Rules.

This Court notes that in <u>Shapo v. O'Shaughnessy</u>, 246 <u>F.Supp.2d</u> 935 (U.S. Dist. Ct. Ill. 2002) it was recognized that although the Third Circuit and Eighth Circuit have looked to the purpose of Rule 9(b) and don't require that every complaint contain "who, what, when, where and how" in complete detail, the Seventh Circuit does usually still require all such details. The decision points out, however, that even the Seventh Circuit recognizes that these requirements are loosened upon a showing a plaintiff needs discovery to obtain particulars of fraudulent scheme where the scheme itself is alleged with particularity. This reasoning would also support the Court's decision to decline to dismiss plaintiff's complaint for failure to properly plead their fraud claim. Discovery is necessary to flesh out the misrepresentations cited in the FDA warning letters.

The defendant Merck also argues that plaintiff's allegations of fraudulent omissions are defective because there was no fiduciary relationship between plaintiff and the defendant and therefore no duty to disclose information to plaintiffs. Pharmaceutical companies have a duty to disclose information to the public including to those who directly purchase their drugs. See <u>Perez v. Wyeth Labs</u>, 161 <u>N.J.</u> 1 (1999), at 20-21, in which the Court stated:

> It is one thing not to inform a patient about the potential side effects of a product; it is another thing to misinform the patient by deliberately withholding potential side effects while marketing the product as a efficacious solution to a serious health problem.

This Court sees no reason why the duty to be honest about the safety and usefulness of a drug when marketing it as a product for sale should not extend to the third party payors who actually pay for the purchase of drugs for members.

6



The complaint alleges that the plaintiff relied upon the misrepresentations of defendant Merck when approving VIOXX® for purchase by its members. It alleges plaintiff paid an excessive price to buy VIOXX® at a substantial premium over other drugs on the market because of these misrepresentations. The defendants argue that there really was no reliance. The claim is pled appropriately. The issue of whether there actually was reliance is a fact issue left for another day.

Consumer Fraud Act

The defendant also moves to strike Count II of the complaint which makes a claim against the defendant based on violations of the Consumer Fraud Act (N.J.S.A. 56:8-1, *et.seq.*). The defendant Merck maintains that the plaintiff as a third party payor for its members is not a "consumer" under the statute and therefore not entitled to the protection offered by the statute.

There can be no disagreement that the purpose of the Consumer Fraud Act is the "protection of consumers by eliminating sharp practices and dealings in the marketing of merchandise." Channel Cos., Inc. v. Britton, 167 N.J.Super. 417, 417 (App.Div. 1979). Because it is a remedial act, it should be liberally construed to serve that goal. New Mea Const. Corp. v. Hayer, 203 N.J.Super. 486, 501-02 (App. Div. 1985). As the Supreme Court has stated "the history of the Act is one of constant expansion of consumer protection." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604 (1997).

N.J.S.A. 56:18-9 actually uses the word "person" not "consumer." The Act states that "any person who suffers an ascertainable loss of moneys or property, real or personal" may bring an action if the loss was caused by an unlawful practice or method. There is no dispute the word "person" is not limited to individuals or to those who purchase personal or household items. The word "consumer" is used with much more limited connotations in other acts. Both the Consumer

7



Credit Transaction Act, N.J.S.A. 56:11-1 and the Consumer Contract Act N.J.S.A. 56:12-1 limit the definition of "consumer" to an individual. The Consumer Fraud Act however uses the word "person" and includes business entities such as the plaintiff in this case.

In Marascio v. Campanella, 298 N.J.Super. 491 (App. Div. 1997), the Court held that a corporation purchasing goods or services generally sold to the public is a consumer entitled to the protection of the Act.

In Kavky v. Herbalife Intern. of America, 359 N.J.Super. 497 (App. Div. 2003), the Appellate Court applied the Act to the purchase of a franchise. The Court stated not to interpret the Act broadly would deny protection from "pyramid schemes and similar mass public frauds." Id. at 501

Although Kavky dealt with the meaning of the word "merchandise" under the Act, the Appellate panel in Kavky, supra, states they accept the definition of "consumer" set forth in Neveroski v. Blair, 141 N.J.Super. 365, 378 (App. Div. 1976). The Neveroski decision defined consumers as those who:

> "purchase products from retail sellers of merchandise consisting of personal property of all kinds or contract for services of various types brought to their attention by advertising or sales techniques."

In this case, the plaintiff paid for the purchase of the product from retail sellers. The plaintiff sustained the economic cost of the higher price for VIOXX®. The individual members retain their own individual claims for personal injury and the plaintiff doesn't seek compensation for that. The plaintiff seeks the added cost to the plaintiff that resulted from their reliance on alleged misrepresentations by the defendant. If their claim is true, then the plaintiff has suffered an ascertainable loss by paying for a retail product based on false advertising and "sharp practices" of the defendant. Certainly, this should be covered by the statute.

8



The defendants rely on <u>City Check Cashing, Inc. v. Nat. State Bank</u>, 244 <u>N.J.Super.</u> 304 (App. .Div. 1990) and <u>Arc Networks v. Gold Phone Card Co.</u>, 333 <u>N.J.Super.L.</u> 587 (Law Div. 2000). In these cases, the plaintiffs were found not to be entitled to protection of the Consumer Fraud Act. Both these cases are distinguishable because they involve buyers of wholesale services to resell at retail. In the cases cited by the defendant the services purchased were not available to the general public which is completely different from the VIOXX® which was being marketed to the public by the defendant.

In the case of <u>Zorba Contractors v. Housing Authority of Newark v. Georgia-Pacific Corporation</u>, 282 <u>N.J. Super.</u> 430 (App. Div. 1995), the Court notes that the New Jersey statute is one of the strongest consumer protection laws in the country. The Court found the Housing Authority of Newark was unquestionably a consumer under the Act even when purchasing merchandise with public funds.

The issue of remoteness of proximate cause would be relevant only if the plaintiffs were claiming for cost of treating members for personal injuries caused by taking VIOXX®. In this case, this issue is not relevant. In fact, this plaintiff is the proper party to claim for the cost of paying an increased price because of the alleged misrepresentations that VIOXX® was safer and more effective than cheaper drugs on the market.

In the case of <u>Desiano v. Warner Lambert</u>, 326 <u>F.3d</u> 339 the U.S. Court of Appeals for the Southern District of New York found the New Jersey consumer Fraud Act did protect insurers who paid for the drug Resulin at a higher price than diabetes drugs on the market based on false advertising. The District Court had dismissed the claim based on proximate cause issues citing to <u>Holmes v. Securities Investor Protection Corp.</u>, 503 <u>U.S.</u> 258 (1992) and <u>Laborers Local 17 Health & Benefit Funds v. Phillip Morris</u>, 191 <u>F.3d</u> 229 (2d Cir. 1999). These cases

9



dismissed actions based on lack of direct relationship between the injurious conduct and the injury. The Circuit Court in <u>Disiano</u>, <u>supra</u>, found these cases were distinguishable because they were RICO claims and because the plaintiff's damages were entirely derivative of injuries to their insured. In <u>Disiano</u>, <u>supra</u>, as in this case now before the Court, the claim is for direct financial losses sustained by the plaintiff as a result of the increased cost paid for the drug.

The Court in <u>Desiano</u>, <u>supra</u>, pointed out that if the plaintiff had paid substantially more for a drug falsely advertised as safer than Drug A when it was really identical to Drug A and just sold under a different name, there would be direct losses to the "person" or entity paying for the drug as a result of the false ads even if no person was actually injured by the drug.

The defendant focuses on a definition of consumer from the case of <u>Hundred East Credit Corp. v. Eric Shuster Corp.</u>, 212 <u>N.J.Super.</u> 350 (App. Div. 1986). In that case, the Court described a consumer as "one who uses goods and so diminishes or destroys their utilities." This definition is quoted in <u>City Check Cashing Inc. v. National State Bank</u>, <u>supra</u>. In the <u>Hundred East Credit Corp v. Shuster</u>, <u>supra</u>, opinion, the Appellate Division rejected a narrow interpretation of "consumer." In that opinion, the language relied upon by defendants is taken from the Webster's Dictionary and does not express the outer limits of who is covered by the Act. In fact, the Court states:

> Nothing in that statutory language suggests that the Act is inapplicable to the sale
> of merchandise for use in business operations. To the contrary, the language on
> its face makes the Act applicable to all sales of 'merchandise' without regard to
> its intended use or the nature of the buyer. 212 <u>N.J.Super.</u> 350, at 355.

The Court finds that the limit placed by the defendants that a "person" under the Act must be the one who actually takes the medication or uses the product is too simplistic. The focus should be on a misrepresentation causing a "person" to pay for something they otherwise would not have been willing to pay for because of the higher cost. This fits the purpose of the Act. If,



for example, a "person" buys a gift for a third party based on false advertising, it does not matter that the person who is duped into making the purchase does not personally use the product.

The Court finds that the motion to dismiss the claim under the Consumer Fraud Act must be denied.

DATE OF DECISION: 07/09/04                    /s/ Carol E. Higbee

                                             CAROL E. HIGBEE, J.S.C.

XXXX    Order is attached.

This decision will be posted on the judiciary website and can be viewed at http://www.judiciary.state.nj.us/decisions.htm for a period of six weeks from the motion return period.

11