UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH CARE FOR ALL, WISCONSIN CITIZEN ACTION, UNITED SENIOR ACTION OF INDIANA, JUDITH C. MEREDITH, MICHELLE MADOFF, ROSE LOHMAN and CAVALIER HOMES, INC., individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>    v.<br><br>PFIZER INC., PHARMACIA CORP., and G.D. SEARLE & CO.,<br><br>                          Defendant. | Civil Action No. 05-10707-DPW |

**DECLARATION OF THOMAS M. SOBOL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

THOMAS M. SOBOL, declares and states as follow:

1.      I am a member of the firm of Hagens Berman Sobol Shapiro LLP, counsel for Plaintiffs, Health Care For All, Wisconsin Citizen Action, United Senior Action of Indiana, Judith C. Meredith, Michelle Madoff, Rose Lohman and Cavalier Homes, Inc., in this action. I have personal knowledge of and am competent to testify to the facts stated below.

2.      Attached hereto as Exhibit A is a true and correct copy of a letter dated May 13, 2005 from Judge Wm. Terrell Hodges, Chairman of the Judicial Panel on Multidistrict Litigation, to the Involved Judges in MDL-1699 – In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation.

3.      Attached hereto as Exhibit B is a true and correct copy of the Docket sheet in *Cavalier Homes, Inc. v. Pfizer, Inc.*, 6:04-cv-03512-IPJ (N.D. Ala.).

4.      Attached hereto as Exhibit C is a true and correct copy of Defendants' Brief In Support of Their Motion To Dismiss The Amended Complaint in *Cavalier Homes, Inc. v. Pfizer, Inc.*, 6:04-cv-03512-IPJ (N.D. Ala.).

5.      Attached hereto as Exhibit D is a true and correct copy of Plaintiffs' demand letter sent to Defendants' pursuant to M.G.L. 93A, § 9(3), dated February 16, 2005.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 27, 2005

<div style="text-align:center">

**/s/ Thomas M. Sobol**
Thomas M. Sobol
</div>

# Exhibit A

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Robert A. Cahn
Executive Attorney

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone:  [202] 502-2800
Fax:          [202] 502-2888

http://www.jpml.uscourts.gov

May 13, 2005

TO INVOLVED JUDGES

Re:  MDL-1699—In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation

(See Attached Schedule of Actions)

Dear Judges:

Presently before the Panel pursuant to 28 U.S.C. § 1407 is a motion to transfer which includes at least one action before you in the above-described docket.  The parties will have an opportunity to fully brief the question of transfer and the matter will be considered at a bimonthly Panel hearing session.  In the meantime, your jurisdiction continues until any transfer ruling by the Panel becomes effective.

If you have a motion pending -- such as a motion to remand to state court (if the action was removed to your court) -- you are free to rule on the motion, of course, or wait until the Panel has decided the transfer issue.  The latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization.

Please feel free to contact our staff in Washington with any questions.

Kindest regards,

Wm. Terrell Hodges
Chairman

RECEIVED
MAY 17 2005
SUE L. ROBINSON
U.S. DISTRICT JUDGE

## SCHEDULE OF ACTIONS
## DOCKET NO. 1699
## IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

<u>Northern District of Alabama</u>
  *Martha Ann Lemond, et al. v. Merck & Co., Inc., et al.,* C.A. No. 7:05-691  (Judge L. Scott Coogler)

<u>District of Arizona</u>
  *Dorothy Greaves v. Pfizer, Inc., et al.,* C.A. No. 2:05-647  (Judge Roslyn O. Silver)

<u>Central District of California</u>
  *John Bolwell, et al. v. Pfizer, Inc.,* C.A. No. 2:05-1967  (Judge Audrey B. Collins)

<u>Northern District of California</u>
  *June Swan, et al. v. Pfizer, Inc., et al.,* C.A. No. 3:05-834  (Judge Charles R. Breyer)

<u>District of Connecticut</u>
  *Kenneth Kaye, et al. v. Pfizer, et al.,* C.A. No. 3:05-385  (Judge Stefan R. Underhill)
  *Irene Bailey, et al. v. Pfizer, Inc., et al.,* C.A. No. 3:05-386  (Judge Mark R. Kravitz)

<u>District of Delaware</u>
  *Ronnie L. Hatcher v. Pfizer, Inc.,* et al., C.A. No. 1:05-208  (Judge Sue L. Robinson)

<u>Northern District of Florida</u>
  *Marie McConnell v. Pfizer, Inc.,* C.A. No. 3:05-123  (Judge C. Roger Vinson)

<u>Southern District of Florida</u>
  *Aurora Balloveras v. Pfizer, Inc.,* C.A. No. 1:05-20429  (Judge Adalberto Jordan)

<u>Eastern District of Louisiana</u>
  *Gloria Ward v. Pfizer, Inc.,* C.A. No. 2:04-3469  (Judge Stanwood R. Duval, Jr.)
  *Elmer E. Creel, Sr., et al. v. Pfizer, Inc.,* C.A. No. 2:04-3470  (Judge G. Thomas Porteous, Jr.)
  *Carol J. Aiola v. Pfizer, Inc.,* C.A. No. 2:05-1207  (Judge Stanwood R. Duval, Jr.)
  *Ronald J. Babin v. Pfizer, Inc.,* C.A. No. 2:05-1208  (Judge Stanwood R. Duval, Jr.)
  *Deborah Ann Woodberry v. Pfizer, Inc.,* C.A. No. 2:05-1350  (Judge Mary Ann Vial Lemmon)
  *Terry Bridges v. Pfizer, Inc.,* C.A. No. 2:05-1353  (Judge Ivan L.R. Lemelle)
  *George Hoffman v. Pfizer, Inc.,* C.A. No. 2:05-1354  (Judge Lance M. Africk)
  *Helen Anne Todini v. Pfizer, Inc.,* C.A. No. 2:05-1367  (Judge Sarah S. Vance)
  *Betty A. Alexander, et al. v. Pfizer, Inc.,* C.A. No. 2:05-1720  (Judge Marcel Livaudais, Jr.)

<u>Middle District of Louisiana</u>
  *Ronald W. Abel, etc. v. Pfizer, Inc.,* C.A. No. 3:05-258  (Judge Frank J. Polozola)

<u>Western District of Louisiana</u>
  *William Doss Turner v. Pfizer, Inc.,* C.A. No. 1:05-619  (Judge Dee D. Drell)
  *Yvonne Clark v. Pfizer, Inc.,* C.A. No. 1:05-620  (Judge Dee D. Drell)

<u>District of Massachusetts</u>
  *Healthcare For All, et al. v. Pfizer, Inc., et al.,* C.A. No. 1:05-10707  (Judge Douglas P. Woodlock)

<u>Eastern District of Michigan</u>
  *Linda A. Watters, et al. v. Pfizer, Inc., et al.,* C.A. No. 2:05-71434  (Judge Robert H. Cleland)

Schedule of Actions MDL-1699

District of Minnesota
*Loretta M. Harris v. Pfizer, Inc.*, C.A. No. 0:05-728  (Judge Michael J. Davis)

Eastern District of New York
*Melissa Kelly, et al. v. Pfizer, Inc.*, C.A. No. 1:05-949  (Judge David G. Trager)

Southern District of New York
*ASEA/AFSCME Local 52 Health Benefits Trust v. Pfizer, Inc., et al.*, C.A. No. 1:05-3803  (Judge Laura T. Swain)
*Steamfitters' Industry Welfare Fund, et al. v. Pfizer, Inc., et al.*, C.A. No. 1:05-3814  (Judge Richard J. Holwell)
*Sheet Metal Workers' International Assn. v. Pfizer, Inc., et al.*, C.A. No. 1:05-4125  (Judge Peter K. Leisure)

Northern District of Ohio
*Theresa Blatnik, et al. v. Pfizer, Inc.*, C.A. No. 1:05-900  (Judge Kathleen McDonald O'Malley)

Eastern District of Texas
*George Carey, et al. v. Pfizer, Inc., et al.*, C.A. No. 6:05-81  (Judge Michael H. Schneider)

Northern District of Texas
*James Booker v. Merck & Co., Inc., et al.*, C.A. No. 3:05-496  (Judge Ed Kinkeade)

Southern District of Texas
*Ronald L. Baker, et al. v. Pfizer, Inc.*, C.A. No. 3:05-206  (Judge Hayden W. Head, Jr.)

# Exhibit B

CLOSED

# U.S. District Court
## Northern District of Alabama (Jasper)
### CIVIL DOCKET FOR CASE #: 6:04-cv-03512-IPJ

Cavalier Homes Inc v. Pfizer Inc et al
Assigned to: Judge Inge P Johnson
Cause: 18:1961 Racketeering (RICO) Act

Date Filed: 12/23/2004
Jury Demand: Plaintiff
Nature of Suit: 470 Racketeer/Corrupt
Organization
Jurisdiction: Federal Question

## Plaintiff

**Cavalier Homes Inc**
*individually and on behalf of all others
similarly situated*

represented by **Craig Spiegel**
HAGENS BERMAN SOBOL SHAPIRO
LLC
1301 5th Avenue , Suite 2900
Seattle, WA 98101
206-623-7292
Fax: 206-623-0594
Email: craigs@hbsslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Scott Nalven**
HAGENS BERMAN SOBOL SHAPIRO
LLC
1 Main Street, 4th Floor
Cambridge, MA 02142
617-482-3700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garve Ivey, Jr**
IVEY & RAGSDALE
PO Box 1349
Jasper, AL 35502-1349
1-205-221-4644
Email: garve@iveyragsdale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan B Lowe**
LOWE MOBLEY & LOWE
PO Box 576
Haleyville, AL 35565
1-205-486-5296
Fax: 1-205-486-4531
Email: jbl@lowemobleylowe.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W Berman**
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Email: steve@hbsslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Sobol**
HAGENS BERMAN LLP
225 Franklin Street, 26th Floor
Boston, MA 02110
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Pfizer Inc**              represented by **Gilbert C Steindorff, IV**
ADAMS & REESE/LANGE SIMPSON LLP
2100 3rd Avenue, North, Suite 1100
Birmingham, AL 35203-3367
250-5000
Email: bert.steindorff@arlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence B Clark**
ADAMS & REESE/LANGE SIMPSON LLP
2100 3rd Avenue, North, Suite 1100
Birmingham, AL 35203-3367
250-5000
Email: lawrence.clark@arlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Pharmacia Corporation**       represented by **Gilbert C Steindorff, IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence B Clark**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Monsanto Company**
*TERMINATED: 02/17/2005*

**Defendant**

**G.D. Searle & Co**                          represented by  **Gilbert C Steindorff, IV**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Lawrence B Clark**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/23/2004 | 1 | COMPLAINT against all defendants (Filing fee $ 150, receipt #200 210823.) , filed by Cavalier Homes Inc.(ASL, ) (Entered: 12/27/2004) |
| 12/23/2004 | 2 | Request for service by certified mail filed by pla Cavalier Homes Inc. (ASL, ) (Entered: 12/27/2004) |
| 12/27/2004 | 3 | Summons Issued as to dfts Pfizer Inc, Pharmacia Corporation, Monsanto Company, and G.D. Searle & Co., mailed certified mail (ASL, ) (Entered: 12/27/2004) |
| 01/03/2005 | 4 | SUMMONS Returned Executed as to dft G.D. Searle & Co served on 12/30/2004 (ASL, ) (Entered: 01/05/2005) |
| 01/05/2005 | 5 | SUMMONS Returned Executed as to dft Pharmacia Corporation served on 12/30/2004 (ASL, ) (Entered: 01/05/2005) |
| 01/05/2005 | 6 | SUMMONS Returned Executed as to dft Monsanto Company served on 12/29/2004 (ASL, ) (Entered: 01/05/2005) |
| 01/11/2005 | 7 | SUMMONS Returned Executed as to dft Pfizer Inc served on 1/7/2005(ASL, ) (Entered: 01/12/2005) |
| 02/17/2005 | 8 | AMENDED COMPLAINT against all defendants, filed by Cavalier Homes Inc.(Ivey, Garve) (Entered: 02/17/2005) |
| 03/04/2005 | 9 | MOTION for Leave to Appear Pro Hac Vice by Cavalier Homes Inc. (Attachments: # 1 Exhibit Steve Berman Cert Good Standing# 2 Exhibit Spiegel Cert of Good Standing# 3 Exhibit Tom Sobol Cert Good Standing# 4 Exhibit David Nalven Cert Good Standing) (Ivey, Garve) (Entered: 03/04/2005) |
| 03/04/2005 | 10 | First MOTION to Dismiss *Plaintiff's First Amended Class Action Complaint* by Pfizer Inc, Pharmacia Corporation, G.D. Searle & Co. (Steindorff, Gilbert) (Entered: 03/04/2005) |
| 03/04/2005 | 11 | Brief *in Support of Motion to Dismiss the Amended Complaint* filed by Pfizer Inc, Pharmacia Corporation, G.D. Searle & Co. (Steindorff, Gilbert) (Entered: 03/04/2005) |

| 03/04/2005 | | NOTICE of Appearance by Gilbert C Steindorff, IV, Lawrence B Clark on behalf of dfts Pfizer Inc, Pharmacia Corporation, G.D. Searle & Co (w/i motion doc 10) (ASL, ) (Entered: 03/07/2005) |
|---|---|---|
| 03/07/2005 | 12 | ORDER granting 9 Motion for Leave to Appear pro hac vice, subject to payment of fees. Signed by Judge Inge P Johnson on 3/7/05. (ASL, ) (Entered: 03/07/2005) |
| 03/07/2005 | | PHV Fee paid: $ 200.00, receipt number 200 213283 for Berman, Spiegel, Sobol, and Nalven (ASL, ) (Entered: 03/09/2005) |
| 03/10/2005 | 13 | MEMORANDUM OPINION AND ORDER granting dfts' motion to dismiss, this case is DISMISSED. Signed by Judge Inge P Johnson on 3/9/05. (ASL, ) (Entered: 03/10/2005) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/20/2005 19:30:34 | | |
| **PACER Login:** | hb0116 | **Client Code:** | 1682.15 |
| **Description:** | Docket Report | **Search Criteria:** | 6:04-cv-03512-IPJ |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# Exhibit C

RECEIVED

MAR 1 0 2005

HAGENS BERMAN LLP

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

CAVALIER HOMES, INC., individually and on
behalf of all others similarly situated,

                   Plaintiff,

    v.

PFIZER INC., PHARMACIA CORP., and
G.D. SEARLE & CO.,

                  Defendants.

Civil Action No. CV-04-J-3512-J

### DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION
### TO DISMISS THE AMENDED COMPLAINT

OF COUNSEL:

Lawrence B. Clark
ADAMS AND REESE LLP/LANGE SIMPSON
2100 3rd Avenue North
Birmingham, AL 35203
(205) 250-5050

Attorneys for Defendants Pfizer Inc., Pharmacia
Corp., and G.D. Searle LLC

James D. Arden
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Richard F. O'Malley, Jr.
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Defendants Pfizer Inc. ("Pfizer"), Pharmacia Corp. ("Pharmacia"), and G.D. Searle LLC (sued herein as G.D. Searle & Co.)[1] ("Searle") (collectively, "Defendants") submit this memorandum of law in support of their motion to dismiss Plaintiff's First Amended Class Action Complaint, filed on February 17, 2005 (the "Amended Complaint" or "Am. Compl."), for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b).

<div align="center">**Preliminary Statement**</div>

### A.    **The Parties**

Plaintiff Cavalier Homes, Inc. ("Cavalier" or "Plaintiff") is a Delaware corporation with its principal place of business within the Northern District of Alabama. (Am. Compl. ¶ 12).

Defendant Pharmacia is incorporated in Delaware and has its principal place of business in New Jersey. (Id. ¶ 13). Defendant Searle is a Delaware limited liability company with its principal place of business in Illinois. (Id. ¶15). Defendant Searle is the developer of Celebrex, for which it obtained marketing approval as a treatment for arthritis from the U.S. Food and Drug Administration. (Id. ¶32). Defendant Pfizer is a Delaware corporation with its principal place of business in New York. (Id. ¶ 14). In 1999, Searle and Pfizer began co-promoting Celebrex, pursuant to a co-marketing agreement. (Id. ¶ 16). In 2003, Pfizer acquired Pharmacia, Searle's parent. (Id. ¶¶ 14, 16).

---

[1] Although the Complaint references "G.D. Searle & Co.," that entity was converted to a limited liability company named "G.D. Searle LLC" on December 31, 2000. Its sole member is Pharmacia Corporation. In March 2000, Pharmacia & Upjohn, Inc., merged with Monsanto Co., the parent of G.D. Searle & Co.

**B.    The Allegations**

This is a purported class action brought on behalf of all persons who paid for Celebrex, excluding persons who assert personal injury claims. (Am. Compl. ¶ 1). The Amended Complaint seeks to assert a claim under the RICO statute (First Claim for Relief), a claim under various state consumer protection statutes (Second Claim for Relief) and a claim for unjust enrichment (Third Claim for Relief). Plaintiff alleges that from 1999 until 2005 Defendants marketed, advertised, and promoted Celebrex to consumers and doctors in an "unlawful" manner, including the "suppression of data showing the cardiovascular risks," "the manipulation of data" to improve the drug's gastrointestinal safety profile, and the distribution of other "false promotional materials." (Id. ¶¶ 5, 6, 195(b)). Plaintiff contends that the alleged conduct resulted in "billions of dollars" being "wasted" by Plaintiff and members of the Class who paid "inflated reimbursements or other payments" for Celebrex. (Id. ¶¶ 9, 188-189).

**C.    Grounds for Defendants Motion to Dismiss**

Each claim asserted in the Amended Complaint is deficient and should be dismissed on several grounds.

**1.    No Standing Under Section 1962(c)**

Plaintiff lacks standing to assert a claim under 18 U.S.C. § 1962(c), which requires that a RICO plaintiff allege injury that was directly and proximately caused by defendants' alleged "racketeering activity." Where, as here, the alleged racketeering is mail or wire fraud, a plaintiff must allege that it was the target of the fraud and detrimentally relied on the asserted misrepresentations. In this case, plaintiff challenges material promoting the use of Celebrex that allegedly was distributed to others (physicians and patients), and does not plead that it relied on any such statements. Moreover, plaintiff seeks damages as a third-party payor for allegedly

2

inflated *reimbursements* it made to direct purchasers of Celebrex. As a matter of law, such alleged indirect damages are insufficient to confer RICO standing.

In addition, Plaintiff's First Claim is deficient for failure to comply with Fed. R. Civ. P. 9(b), which requires that RICO predicate acts of mail or wire fraud be pleaded with particularity. Rule 9(b) is not satisfied by Plaintiff's vague and generalized allegations against "defendants" that fail to attribute specific fraudulent conduct to each particular defendant. Plaintiff's conclusory allegations of "reliance" are likewise deficient, because they are unsupported by specific factual allegations. Plaintiff's failure to comply with Rule 9(b) thus warrants dismissal of the RICO claim.

### 2.    Failure to State a Claim Under State Consumer Protection Statutes

Plaintiff's claim under the consumer protection statutes of New York, New Jersey, and Illinois must be dismissed because such statutes are pre-empted by the Alabama Deceptive Trade Practices Act ("ADTPA"). The allegations of the Amended Complaint do not state a claim under ADTPA for two basic reasons: Plaintiff, a corporation, is not a consumer under ADTPA, and Plaintiff failed to comply with the ADTPA's notice requirement.

Moreover, the Amended Complaint fails to state a claim under the consumer statutes of New York, New Jersey and Illinois in any event. New York's consumer protection statute, N.Y. Gen. Bus. Law §§ 349 and 350, applies only to transactions that occur in New York. Plaintiff's "price inflation" theory of proximate causation does not support a claim under the New Jersey Consumer Fraud Act or the Illinois Consumer Fraud and Deceptive Business Practices Act.

3.    **Failure to Properly Allege Unjust Enrichment**

Plaintiff's claim for "money had and received" (unjust enrichment) under Alabama law must be dismissed. First, Plaintiff has not alleged that it paid any money (or anything of value) to Defendants. Furthermore, Alabama law prohibits class action claims for "unjust enrichment."

## ARGUMENT

## I.    THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM

Section 1962(c) of the RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs though a pattern of racketeering activity...." See 18 U.S.C. §1962(c). Thus, to state a claim under this section, a plaintiff must allege "four elements": the defendant's "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1311 (11th Cir. 2000) (citing Durham v. Business Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)). In addition, to have standing to bring a damages claim, plaintiffs must allege that they are "persons" who have been "injured by reason[] of" the RICO violation. Id. Here, Count I fails to state a section 1962(c) RICO claim for two reasons: (1) Plaintiff lacks RICO standing; and (2) its allegations of "racketeering activity" -- mail or wire fraud -- fail to satisfy the requirements of Rule 9(b).

### A.    Plaintiff Lacks Standing To Assert Its Purported Section 1962(c) RICO Claim

As a threshold matter, the section 1962(c) claim in Count I must be dismissed for Plaintiff's lack of standing. RICO authorizes private plaintiffs to sue for damages only where they have been injured "by reason of" the alleged RICO violation. See 18 U.S.C. § 1964(c). Thus, to have RICO standing, the plaintiff's alleged injury "must have been proximately caused

by the commission of the predicate acts." Pelletier v. Zweifel, 921 F.2d 1465,1499 (11th Cir. 1991); see also O'Malley v. O'Neill, 887 F.2d 1557, 1561 (11th Cir. 1989); Byrne v. Nezhat, 261 F.3d 1075, 1110-1111 (11th Cir. 2001).

"[T]he test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable." Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc., 140 F.3d 898, 908 (11th Cir. 1998); See generally Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 271 (1992). To satisfy this test, the plaintiff must have been "a target of the scheme to defraud and must have relied to [its] detriment on misrepresentations made in furtherance of that scheme." Pelletier, 921 F.2d at 1499-1500; see also Sikes v. Teleline, Inc., 281 F.3d 1350, 1360 (11th Cir. 2002). A plaintiff thus lacks standing to assert a section 1962(c) claim predicated on purported mail or wire fraud where the alleged misrepresentations were made directly to others, not to plaintiff. See Byrne, 261 F.3d at 1111 (Rule 12(b)(6) dismissal); Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1318 (11th Cir. 1998) (plaintiff lacked RICO standing "[b]ecause the misrepresentations the defendants are said to have made were directed to" others).

Here, Plaintiff's RICO claim suffers from a fundamental defect: the Amended Complaint does not allege that Plaintiff ever purchased Celebrex from any of the defendants. Although the Amended Complaint alleges that "defendants" made statements promoting the use of Celebrex to physicians (see, e.g., Am. Compl. ¶¶ 65-77), or to consumers (id. ¶¶ 83-135), it is clear that Plaintiff (a Delaware corporation) was neither a doctor nor a consumer of Celebrex, and thus was not the target of the purported mail or wire fraud. Nor does Plaintiff allege that it saw or relied on any of "defendants'" statements in medical journals or consumer advertising for

Celebrex. Plaintiff thus lacks RICO standing. See, e.g., O'Malley, 887 F.2d at 1563; Pelletier, 921 F.2d at 1499.

Moreover, because Plaintiff was not a purchaser of Celebrex, it does not (and cannot) allege that its purported injury was "directly caused" by the so-called mail or wire fraud. Although plaintiff seeks to represent a class of persons who allegedly made "inflated reimbursements and other payments for Celebrex" (Id. ¶ 188 (emphasis added)), any damages for Celebrex "reimbursements" relate only indirectly to statements promoting the drug. Such damages depend first on decisions by physicians to prescribe and patients to use Celebrex, and, second, on contractual arrangements between the patients and the party responsible for the reimbursement. Because RICO's proximate causation requirement recognizes only damages directly caused by the fraud, a non-purchaser's allegations of indirect damages purportedly resulting from statements that promoted Celebrex use by other parties are insufficient for RICO standing as a matter of law. See Johnson, 162 F.3d at 1318 (defendant cable company's contractor lacked RICO standing where alleged "greenmail scheme" was directed at government agencies and other cable operators); O'Malley, 887 F.2d at 1561 (alleged mail and wire fraud did not proximately cause damages of plaintiff terminated for refusal to participate in scheme); Bivens, 140 F.3d at 908 (hotel's creditor lacked standing to bring RICO claim based on alleged diversion of hotel revenues, because direct harm from revenue diversion was suffered by hotel). Accordingly, Count I must be dismissed. See, e.g., Byrne, 261 F.3d at 1110-1112.

### B. Plaintiff's Allegations of "Racketeering Activity" Do Not Satisfy Rule 9(b)

Even if Plaintiff had RICO standing to sue -- and it does not -- Count I would still be deficient because it does not allege that any defendant committed acts of "racketeering activity." RICO defines "racketeering activity" to include the commission of "predicate acts" indictable

under enumerated criminal laws, "including the federal statutes prohibiting mail and wire fraud." Langford, 231 F.3d at 1312; see 18 U.S.C. 1961(1).  To plead predicate acts of mail or wire fraud, plaintiffs must allege " (1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money of property, (4) by means of material misrepresentations, (5) using the mails or wires."  Sikes, 281 F.3d at 1360. Plaintiffs also must allege that the plaintiff reasonably relied on such misrepresentations and "suffered injury as a result of such reliance." Id. at 1361; Green Leaf Nursery v. E.I. Dupont De Nemours and Co., 341 F.3d 1292, 1306 (11th Cir. 2003), cert. denied, 124 S.Ct. 2094 (2004) ("essential" element of mail and wire fraud is "reasonable reliance").

Allegations of mail or wire fraud must comply with Rule 9(b).  Durham, 847 F.2d at 1511. Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"  Id. (citation omitted).  Thus, the rule requires that plaintiffs describe "(1) precisely what statements were made in what documents or oral representations of what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."  Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997) (internal citation omitted).  Accordingly, it is well settled that claims should be dismissed where plaintiffs have not pleaded  "fraud with the requisite specificity as to each of the Defendants," id. at 1381, or alleged detrimental reliance on the alleged misrepresentations with particularity, Estate of Scott v. Scott, 907 F. Supp. 1495, 1499 (M.D. Ala. 1995) (citing O'Malley, 887 F.2d at 1563 n.9).

7

Here, the Amended Complaint falls far short of complying with Rule 9(b). First,

Plaintiff's vague allegations of alleged misrepresentations dating as far back as 1999 (see, e.g.,

Am Compl. ¶¶ 66, 68-69, 86, 88) by "defendants" as a group are insufficient to plead that *each*

defendant committed mail or wire fraud "with the requisite specificity." See Brooks, 116 F.3d at

1381 (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (dismissing

complaint for failure to "link[] the alleged fraudulent statements to particular [defendants]")).

Without attributing the purported misrepresentations to particular defendants, plaintiff's

allegations cannot give notice to each defendant of the specific wrongdoing alleged against it, as

required by Rule 9(b).[2]  See id.

Similarly, Plaintiff fails to allege that it detrimentally relied on any alleged

misrepresentations by "defendants" with the specificity required by Rule 9(b) . See, e.g., Estate

of Scott, 907 F. Supp. at 1498. Rather, plaintiff simply asserts that "defendants" made "[w]ritten

and oral communications with health insurers and patients, including Plaintiff and members of

the Class, inducing payments that were made in reliance on the safety and effectiveness of

Celebrex." (Am. Compl. ¶ 177(e).). Such conclusory allegations, which fail to identify any

specific statement made by any particular defendant resulting in specific payments made by

Plaintiff, manifestly fail to comply with Rule 9(b). See Brooks, 116 F.3d at 1381 (RICO claim

---

[2] Plaintiff's failure to comply with Rule 9(b) is also fatal to its consumer protection claim. See
e.g., Appraisers Coalition v. Appraisal Inst., 845 F. Supp. 592, 608-609 (N.D. Ill. 1994)(claims
under Illinois' Consumer Fraud statute must comply with pleading requirements of Rule 9(b));
F.D.I.C. v. Bathgate, 27 F.3d 850, 876 (3d Cir. 1994)(affirming dismissal of New Jersey
Consumer Fraud Act claim for non-compliance with Rule 9(b)); Naporano Iron & Metal Co. v.
Am. Crane Corp., 79 F.Supp.2d 494, 511 (D. N.J. 2000)(dismissing New Jersey Consumer Fraud
Act claim and holding that "plaintiff must plead fraud with particularity with respect to each
defendant, thereby informing each defendant of the nature of its alleged participation in the
fraud.")

dismissed for failure to plead fraud by each defendant); <u>Mills,</u> 12 F.3d at 1176 (plaintiff's failure

to comply with Rule 9(b) in alleging fraud "demands as a corollary that these allegations cannot

serve as predicate acts" for RICO claim); <u>Estate of Scott,</u> 907 F. Supp. at 1498-99 ("failure to

plead detrimental reliance with particularity" was "a separate ground to dismiss the RICO

count"). Accordingly, Plaintiff fails to allege that any defendant engaged in "racketeering

activity" -- mail or wire fraud -- and Count I must be dismissed.

## II.    PLAINTIFF'S CLAIM UNDER THE STATE CONSUMER PROTECTION STATUTES MUST BE DISMISSED

Despite Plaintiff's effort to assert allegations under the New York, New Jersey, and

Illinois consumer protection statutes in Count II of the Amended Complaint (Am. Compl. ¶¶

191-198), Plaintiff's claim is governed by -- and deficient under -- ADTPA.

Plaintiff, a corporation with its principal place of business in Alabama (<u>id.</u> ¶ 12), asserts

that "a substantial part" of the events giving rise to this class action lawsuit "occurred in this

judicial District" (<u>id.</u> ¶ 19). It is well settled that "[w]here application of another state's laws

would be contrary to Alabama policy, the parties' choice of law will not be given effect and

Alabama law will govern" actions by Alabama plaintiffs within Alabama. <u>Ex parte Exxon</u>

<u>Corp.,</u> 725 So.2d 930, 933 (Ala. 1998) (internal quotation marks omitted); <u>see also</u> <u>Cheminova</u>

<u>Am. Corp. v. Corker,</u> 779 So.2d 1175 (Ala. 2000) (describing <u>Exxon</u> as holding that plaintiff's

allegations of a nationwide consumer fraud were considered under ADTPA, not the New Jersey

consumer protection laws asserted by plaintiff).

Among its relevant provisions, ADTPA imposes two restrictions on consumer actions:

(1) 15 days prior to the filing a complaint, a demand letter must be sent to the defendant; and (2)

only the Attorney General, not consumers, may bring an action on behalf of a class. Ala. Code

§§ 8-19-10(d-f); <u>see also</u> <u>Ex parte Exxon Corp.,</u> 725 So.2d at 933. In contravention of these

provisions, neither of which is found in the consumer protection statutes asserted in the Amended Complaint,[3] Plaintiff has not served defendants with a demand letter setting forth its claim, and has brought this lawsuit as a putative class action. Accordingly, ADTPA preempts application of the other state law to this case, and plaintiff's consumer protection claim must be dismissed for failure to comply with ADTPA's provisions. Cf. Ex parte Exxon Corp., 725 So.2d at 933 (rejecting application of New Jersey consumer protection statute and de-certifying class under ADTPA).

Moreover, although ADTPA applies to Plaintiff's "consumer protection" claim, even if any of the New York, New Jersey, or Illinois consumer protection statutes did apply, the Amended Complaint fails to state a claim under any of them for multiple reasons, as demonstrated below.

### A.   Plaintiff Has Not Alleged A Claim Under The Alabama Deceptive Trade Practices Act

Plaintiff's claim under ADTPA, which provides a private right of action in very limited circumstances, see Ala. Code § 8-19-1, et seq., is deficient in two respects. First, only a "consumer" has standing to bring a private action stemming from a "false, misleading, or deceptive act." See id. §§ 8-19-5(27), 8-19-10(a). The statute defines "consumer" as "any *natural* person who buys goods or services for personal, family or household use." Id. § 8-19-3(2) (emphasis added). As a Delaware corporation (Am. Compl. ¶ 12), plaintiff is not a "natural person" and has not purchased Celebrex for "personal, family, or household use" -- if at all. Thus, plaintiff's ADTPA claim must be dismissed. Ebsco Indus., Inc. v. LMN Enter., Inc., 89 F.

---

[3] See N.Y. Gen. Bus. Law §§ 349, 350; N.J. Stat. Ann. § 56:8-1 et seq.; 815 ILCS § 505/1, et seq.

Supp. 2d. 1248, 1266 (N.D. Ala. 2000) (dismissing claim brought by corporation); see also

Deerman v. Fed. Home Loan Mortgage Corp., 955 F. Supp. 1393, 1399 (N.D. Ala. 1997).

Moreover, the Amended Complaint does not allege that Plaintiff sent to any defendant,

"at least 15 days prior to the filing of any action under this section, a written demand for relief,

identifying the claimant and reasonably describing the unfair or deceptive act or practice relied

upon and the injury suffered ...."[4]  See Ala. Code § 8-19-10(e).  Plaintiff's failure to provide the

notice as required by ADTPA provides a separate, additional ground for dismissal of its claim.

Givens v. Rent-A-Center, Inc., 720 F. Supp. 160, 162 (S.D. Ala. 1988).

### B.    Plaintiff Has Not Stated A Claim Under New York's Consumer Protection Statute

Even if the second count of the Amended Complaint were governed by New York law, it

would fail to state a claim.  Sections 349 and 350 of the New York General Business Laws

prohibit deceptive business practices, and false advertising, that occur in the State of New York.

See N.Y. Gen. Bus. Law §§ 349, 350 (McKinney 2004).  New York courts have routinely held

that, for a plaintiff to state a claim under the statute, "the transaction in which the consumer is

deceived *must* occur in New York."  Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314,

324, 774 N.E.2d 1190, 1195, 746 N.Y.S.2d 858, 863 (2002) (emphasis added); Drizin v. Sprint

Corp., 12 A.D.3d 245, 247, 785 N.Y.S.2d 428, 429-430 (1st Dep't 2004) (holding that "Section

349 requires the deceptive transaction to have occurred in New York, leaving potential class

members from outside the state, who were victimized by defendants' practices, with no viable

claim under the statute").

---

[4] Nor does the Amended Complaint allege that Plaintiff was exempt from this requirement because Defendants do not "maintain a place of business" or "keep assets within the state."  Id.

Here, the Amended Complaint does not allege that any transaction -- much less a "deceptive" one involving Plaintiff -- occurred within New York.[5]  Although the Amended Complaint alleges that Pfizer has its principal place of business in New York (Am. Compl. ¶ 14), that fact does not bring the alleged conduct within sections 349 and 350.  See Goshen, 98 N.Y.2d at 324, 774 N.E.2d at 1195, 746 N.Y.S.2d at 863 ("'hatching a scheme' or originating a marketing campaign in New York in and of itself" is insufficient).  Accordingly, Count II does not state a claim under New York's consumer protection statute.

### C.    Plaintiff Has Not Stated A Claim Under New Jersey's Consumer Fraud Act

Plaintiff also fails to state a claim under the New Jersey Consumer Fraud Act (the "NJCFA") .  First, Plaintiff lacks standing to assert a claim because it is not a "consumer" under the Act.  New Jersey courts have given  "consumer" "the ordinary meaning of that term in the market place": a purchaser of "products from retail sellers of merchandise."  D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 23, 501 A.2d 990, 996-97 (App. Div. 1985) (internal quotation mark and citations omitted).  As a corporation that allegedly made "reimbursements" for the use of Celebrex by others (Am. Compl. ¶ 188), plaintiff thus is not a "consumer" of the drug and cannot bring a claim under the statute.  See, e.g.,  City Check Cashing, Inc. v. National State Bank, 244 N.J. Super. 304, 309, 582 A.2d 809, 811 (App. Div. 1990) (plaintiff "must be 'one who uses (economic) goods, and so diminishes or destroys their utilities'").[6]

---

[5] Indeed, Plaintiff alleges that "[a] substantial part of the events or omissions giving rise to the claims in this action occurred in *this* judicial District ...." (Am. Compl. ¶ 19) (emphasis added).

[6] Indeed, New Jersey courts repeatedly have held that corporations may assert NJCFA claims only where -- unlike Plaintiff here -- they have purchased goods for their own use. See Arc Networks, Inc. v. The Gold Phone Card Co., 333 N.J. Super. 787, 790, 756 A.2d 636, 638 (Law Div. 2000) (corporation must "purchase goods and services for use in their business operations"); Perth Amboy Iron Works, Inc. v. American Home Assur. Co., 226 N.J. Super. 200, 209, 543

Moreover, Plaintiff's claim is deficient because the Amended Complaint does not allege "a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13, 842 A.2d 174, 176 (App. Div. 2003) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 23, 647 A.2d 454, 464 (1994)). To establish this causal nexus, Plaintiff must show its "actual receipt and consideration of" the alleged misstatements. Kaufman v. i-Stat Corp., 165 N.J. 94, 109, 754 A.2d 1188, 1195 (2000) (common law fraud).

Here, Plaintiff does not allege that it saw and relied upon the alleged misrepresentations regarding Celebrex, as required by the NJCFA. Rather, Plaintiff simply asserts that it paid "inflated reimbursements or other payments" for Celebrex "when for most patients it has no proven superiority over other NSAIDs." (Am. Compl. ¶¶ 9, 188-189). That "price inflation" theory of causation, however, has been unequivocally rejected under the act. See New Jersey Citizen Action, 367 N.J. Super. at 16, 842 A.2d at 178 (price inflation theory has "no place as a part of the proofs required of plaintiffs in the CFA context ... ")[7] Indeed, allowing plaintiffs to rely on such a theory would "virtually eliminate the requirement that there be a connection

---

A.2d 1020, 1024-25 (App. Div. 1988) (corporation purchased boat for its own use); D'Ercole Sales, 206 N.J. Super. at, 23, 501 A.2d at 996-97 (corporation purchased tow truck for its own use).

[7] See also Heindel v. Pfizer Inc., No. Civ.A. 02-3348, 2004 WL 1398024, at *14 (D.N.J. June 7, 2004) (finding that application of "price inflation" theory in prescription drug cases would be "patently absurd"). The court explained that the "fraud on the market" doctrine could not borrow from the securities context because "there is no prescription drug 'market,' at least as that term is understood in the securities context .... [Rather,] the only 'market' for a prescription drug is the potential group of patients who will be prescribed it by their physician, and if the side effects of the drug make it overly risky to ingest, the doctor will either not prescribe it or the patients will decide not to take it. The suggestion that consumers might be inclined to take a drug with certain side affects if they could pay less for it, or that drugs with certain side effects should cost less, defies both reality and common sense." Id. (emphasis added) The court thus dismissed

between the misdeed complained of and the loss suffered… [and] would therefore fundamentally alter the concept of causation in the CFA context." Id. Thus, plaintiff's claim must be dismissed. See id. (rejecting argument that "causal relation between the misstatements about these products and their ascertainable loss [was] that they must have paid a higher price for the less effective product" and dismissing NJCFA claim); Heindel, 2004 WL 1398024, at *14

### D.   Plaintiff Does Not State A Claim Under Illinois' Consumer Fraud and Deceptive Business Practices Act

Plaintiff's claim also is deficient under the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"). Under the ICFA, a private claimant seeking actual damages must plead that "'the fraud complained of proximately caused' those damages in order to recover for his injury." Oliveira v. Amoco Oil Co., 201 Ill. 2d 134, 140, 776 N.E.2d 151, 155 (2002) (citing Zekman v. Direct Am. Marketers, Inc., 182 Ill.2d 359, 373, 695 N.E.2d 853 (1998)). The Illinois Supreme Court has held that, "to properly plead the element of proximate causation in a private cause of action…, a plaintiff *must* allege that he was, in some manner, deceived." Id. at 155, 776 N.E.2d at 164 (emphasis added). Thus, as in New Jersey, Illinois courts have rejected the "price inflation" theory of "causation" as insufficient under the state's consumer protection statute. Id. (upholding dismissal of plaintiff's claim under the ICFA where plaintiff did "not allege that he saw, heard or read any of the defendants" alleged representations," and instead relied on a "market theory" of causation). Accordingly, Plaintiff fails to state a claim under the IFCA.

---

plaintiffs' consumer fraud action based on the allegation that they suffered economic injuries due to defendants' alleged failure to publicize cardiovascular data from two clinical studies. Id.

### III.    PLAINTIFF HAS NOT STATED A CLAIM FOR UNJUST ENRICHMENT

Plaintiff's purported claim for "money had and received" (unjust enrichment) must be

dismissed because the Amended Complaint does not allege that any defendant has Plaintiff's

money. Epps Aircraft, Inc. v. Exxon Corp., 859 F. Supp. 533, 536 (M.D. Ala. 1993) (Alabama

law requires that "defendant *holds* money which, in equity and good conscience, belongs to

plaintiff, or *holds* money which was improperly paid to defendant because of mistake or fraud'")

(quoting Hancock-Hazlett General Const. Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala. 1986)

(emphasis in original).[8] Where the defendant "'does not have in its possession any money

belonging to' the plaintiff," it "[has] not been 'unjustly enriched' as a matter of law." Epps

Aircraft, 859 F. Supp. at 536 (quoting Hancock-Hazlett, 499 So.2d at 1387.

Here, the Amended Complaint does not allege that Plaintiff ever has paid any money, or

anything of value at all, to any defendant -- let alone that each defendant currently holds

Plaintiff's money. On the contrary, Plaintiff's own theory is that consumers purchased Celebrex,

and Plaintiff paid them "inflated reimbursements" for the drug. (Am. Compl. ¶ 188).

Accordingly, Plaintiff's claim for unjust enrichment must be dismissed. See Epps Aircraft, 859

F. Supp. at 536; Hancock-Hazlett, 499 So.2d at 1387.

Moreover, even if Plaintiff had stated its own claim -- and it manifestly has not --

Plaintiff cannot seek to bring a class action claim for "unjust enrichment" as a matter of law. See

Avis Rent-A-Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1123 (Ala. 2003) (citations omitted).

---

[8]    See also Foshee v. General Tel. Co. of the S.E., 322 So.2d 715, 717, 295 Ala. 70, 72 (Ala.
1975) (affirming dismissal of claim for unjust enrichment where defendant charged proper rate
for telephone service); Wash v. Hunt, 202 So.2d 730, 281 Ala. 368 (Ala. 1967) (affirming
dismissal of claim for unjust enrichment by tenant against landlord).

The Alabama courts' rejection of class action claims for unjust enrichment provides an

additional ground for dismissing the Third Claim in the Amended Complaint.

## CONCLUSION

For all of the reasons set forth above, the Amended Complaint should be dismissed in its

entirety.

DATED: March 4, 2005

<div style="margin-left: 40%;">

Respectfully Submitted,

ADAMS AND REESE LLP / LANGE SIMPSON

By: _Gilbert C Steindorff IV_

Lawrence B. Clark
Gilbert C. Steindorff, IV
2100 3rd Avenue North
Birmingham, AL 35203
(205) 250-5050

Attorneys for Defendants Pfizer Inc.,
Pharmacia Corp., and G.D. Searle LLC

</div>

Of Counsel:

James D. Arden
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Richard F. O'Malley, Jr.
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

NY1 5669501v3

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Preliminary Statement .............................................................................................. 1

    A.    The Parties ........................................................................................ 1

    B.    The Allegations .................................................................................. 2

    C.    Grounds for Defendants Motion to Dismiss .......................................... 2

        1.    No Standing Under Section 1962(c) ........................................... 2

        2.    Failure to State a Claim Under State Consumer Protection Statutes ............. 3

        3.    Failure to Properly Allege Unjust Enrichment ............................... 4

ARGUMENT ......................................................................................................... 4

I.    THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM ............................... 4

    A.    Plaintiff Lacks Standing To Assert Its Purported Section 1962(c) RICO Claim ....... 4

    B.    Plaintiff's Allegations of "Racketeering Activity" Do Not Satisfy Rule 9(b) ........... 6

II.    PLAINTIFF'S CLAIM UNDER THE STATE CONSUMER PROTECTION STATUTES MUST BE DISMISSED .......................................................................................... 9

    A.    Plaintiff Has Not Alleged A Claim Under The Alabama Deceptive Trade Practices Act ....................................................................................... 10

    B.    Plaintiff Has Not Stated A Claim Under New York's Consumer Protection Statute ............................................................................................ 11

    C.    Plaintiff Has Not Stated A Claim Under New Jersey's Consumer Fraud Act ......... 12

    D.    Plaintiff Does Not State A Claim Under Illinois' Consumer Fraud and Deceptive Business Practices Act ..................................................................... 14

III.    PLAINTIFF HAS NOT STATED A CLAIM FOR UNJUST ENRICHMENT ................... 15

CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

Appraisers Coalition v. Appraisal Inst.,
    845 F. Supp. 592 (N.D. Ill. 1994) ...................................................................8

Arc Networks, Inc. v. The Gold Phone Card Co.,
    333 N.J. Super. 787, 756 A.2d 636 (Law Div. 2000) .......................................12

Avis Rent-A-Car Sys., Inc. v. Heilman,
    876 So.2d 1111 (Ala. 2003) ...........................................................................15

Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.,
    140 F.3d 898 (11th Cir. 1998) .........................................................................5

Brooks v. Blue Cross and Blue Shield of Fla. Inc.,
    116 F.3d at 1364 (11th Cir. 1997) ..............................................................7, 8

Byrne v. Nezhat,
    261 F.3d 1075 (11th Cir. 2001) ....................................................................5, 6

Cheminova Am. Corp. v. Corker,
    779 So.2d 1175 (Ala. 2000) ............................................................................9

City Check Cashing, Inc. v. National State Bank,
    244 N.J. Super. 304, 582 A.2d 809 (App. Div. 1990) .....................................12

Cox v. Sears Roebuck & Co.,
    138 N.J. 2, 647 A.2d 454 (1994) ...................................................................13

D'Ercole Sales, Inc. v. Fruehauf Corp.,
    206 N.J. Super. 11, 501 A.2d 990 (App. Div. 1985) ................................12, 13

Deerman v. Fed. Home Loan Mortgage Corp.,
    955 F. Supp. 1393 (N.D. Ala. 1997) ..............................................................11

Drizin v. Sprint Corp.,
    12 A.D.3d 245, 785 N.Y.S.2d 428 (1st Dep't 2004) .......................................11

Durham v. Business Mgmt. Assocs.,
    847 F.2d 1505 (11th Cir. 1988) ..................................................................4, 7

Ebsco Indus., Inc. v. LMN Enter., Inc.,
    89 F. Supp. 2d. 1248 (N.D. Ala. 2000) ..........................................................10

Epps Aircraft, Inc. v. Exxon Corp.,
     859 F. Supp. 533 (M.D. Ala. 1993) .................................................................................. 15

Ex parte Exxon Corp.,
     725 So.2d 930 (Ala. 1998) .......................................................................................... 9, 10

F.D.I.C. v. Bathgate,
     27 F.3d 850 (3d Cir. 1994) ............................................................................................. 8

Foshee v. General Tel. Co. of the S.E.,
     322 So.2d 715, 295 Ala. 70 (Ala. 1975) ......................................................................... 15

Givens v. Rent-A-Center, Inc.,
     720 F. Supp. 160 (S.D. Ala. 1988) ................................................................................ 11

Goshen v. Mutual Life Ins. Co. of N.Y.,
     98 N.Y.2d 314, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002) ...................................... 11, 12

Green Leaf Nursery v. E.I. Dupont De Nemours and Co.,
     341 F.3d 1292 (11th Cir. 2003), *cert. denied*, 124 S.Ct. 2094 (2004)................................ 7

Hancock-Hazlett General Const. Co. v. Trane Co.,
     499 So.2d 1385 (Ala. 1986).......................................................................................... 15

Heindel v. Pfizer, Inc.,
     No. Civ. A 02-3348 2004 WL 1398024 (D.N.J. June 27, 2004).................................. 13, 14

Holmes v. Sec. Investor Prot. Corp.,
     503 U.S. 258 (1992) ..................................................................................................... 5

Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,
     162 F.3d 1290 (11th Cir. 1998) ................................................................................... 5, 6

Kaufman v. i-Stat Corp.,
     165 N.J. 94, 754 A.2d 1188 (2000) ............................................................................... 13

Langford v. Rite Aid of Ala., Inc.,
     231 F.3d 1308 (11th Cir. 2000) ................................................................................... 4, 7

Mills v. Polar Molecular Corp.,
     12 F.3d 1170 (2d Cir. 1993) ........................................................................................ 8, 9

Naporano Iron & Metal Co. v. Am. Crane Corp.,
     79 F.Supp.2d 494 (D.N.J. 2000) .................................................................................... 8

New Jersey Citizen Action v. Schering-Plough Corp.,
   367 N.J. Super. 8, 842 A.2d 174 (App. Div. 2003) ............................................... 13

O'Malley v. O'Neill,
   887 F.2d 1557 (11th Cir. 1989) ............................................... 5, 6, 7

Oliveira v. Amoco Oil Co.,
   201 Ill. 2d 134, 776 N.E.2d 151 (2002) ............................................... 14

Pelletier v. Zweifel,
   921 F.2d 1465 (11th Cir. 1991) ............................................... 5, 6

Perth Amboy Iron Works, Inc. v. American Home Assur. Co.,
   226 N.J. Super. 200, 543 A.2d 1020 (App. Div. 1988) ............................................... 12

Estate of Scott v. Scott,
   907 F. Supp. 1495 (M.D. Ala. 1995) ............................................... 7, 8, 9

Sikes v. Teleline, Inc.,
   281 F.3d 1350 (11th Cir. 2002) ............................................... 5, 7

Wash v. Hunt,
   202 So.2d 730, 281 Ala. 368 (Ala. 1967). ............................................... 15

Zeckman v. Direct Am. Marketers, Inc.,
   182 ILL.2d 359, 695 N.E.2d 853 (1998) ............................................... 14

## STATUTES

18 U.S.C. § 1962(c) ............................................... 2, 3, 5

18 U.S.C. § 1961(1) ............................................... 8

18 U.S.C. § 1964(c) ............................................... 5

815 ILCS § 505/1, *et seq.* ............................................... 11

Ala. Code § 8-19-1, *et seq.*, ............................................... 11

Ala. Code §§ 8-19-10(d-f) ............................................... 10, 12

Fed. R. Civ. P. 9(b) ............................................... 2, 4,
5, 8,
9, 10

Fed. R. Civ. P. 12(b)(6) ................................................................................................................2

N.J. Stat. Ann. § 56:8-1 *et seq.*; ..............................................................................................11

N.Y. Gen. Bus. Law §§ 349, 350 ....................................................................................4, 11, 12

CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Garve Ivey, Jr.
IVEY & RAGSDALE
P.O. Box 1349
Jasper, AL 35502-1349

I also hereby certify that I have mailed the foregoing by United States Postal Service with sufficient postage as First Class mail to the following non-CM/ECF participants:

Steve W. Berman
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Thomas M. Sobol
HAGENS BERMAN LLP
1 Main Street, 4th Floor
Cambridge, MA 02142

Jonathan B. Lowe
LOWE MOBLEY & LOWE
P.O. Box 576
Haleyville, AL 35575-0576

Jeffrey Kodroff
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

_____
OF COUNSEL

# Exhibit D



**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**
**www.hbsslaw.com**
ONE MAIN STREET • CAMBRIDGE, MA 02142
(617) 482-3700 • FAX (617) 482-3003

February 16, 2005

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Henry A. McKinnell, Ph.D.
Chief Executive Officer
Pfizer, Inc.
Pharmacia Corporation
G.D. Searle & Co.
235 East 42nd Street
New York, New York 10017-5755

> Re:    Chapter 93A Demand For Monetary and Injunctive Relief for Harm
> Resulting from Pfizer's Unlawful Conduct Concerning Celebrex®

Dear Mr. McKinnell:

We have been retained to represent Health Care for All and its membership and Judy Meredith in the above-referenced matter. This letter sets forth our demand pursuant to Massachusetts General Laws c. 93A and Massachusetts state law against Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co., (collectively "Pfizer") for injuries resulting from Pfizer's unfair and deceptive practices with respect to its marketing and sale of the prescription drug Celebrex®. We make this demand on behalf of our client(s) in their individual capacities and as representatives of a proposed class of persons and entities in Massachusetts who purchased Celebrex® (i.e., paid some or all of the purchase price) other than for resale. This letter shall constitute demand on behalf of the individuals and the proposed class. *Baldassari v. Public Fin. Trust,* 369 Mass. 33 (1975). *See also* M.G.L. c. 93A § 9(2) (authorizing plaintiffs to bring M.G.L. c. 93A action on behalf of themselves and "numerous other persons similarly situated").

Non-steroidal anti-inflammatory drugs ("NSAIDs") have been widely used to treat arthritis and acute and chronic pain for nearly 40 years. Although they relieve symptoms in certain patients, such relief comes at the expense of important adverse effects, most notably upper gastrointestinal toxicity. Use of NSAIDs leads to admission to hospital for ulcer complications (bleeding and perforation) in around 1% of users annually and results in thousands of deaths every year.

The emergence of NSAIDs that selectively inhibit the cyclo-oxygenase 2 ("COX-2") isoform, which is inducible and expressed at sites of inflammation, while sparing COX-1,

Pfizer, Inc.
Pharmacia Corporation
G.D. Searle & Co.
February 16, 2005
Page 2

associated with gastroprotection, was an apparent pharmacological breakthrough promising real hope of a better future for NSAIDs. Celebrex® was one of the new COX-2 inhibitors. Knowing that Celebrex® had the potential to be a new blockbuster drug with yearly sales in the billions of dollars, Pfizer embarked on a massive marketing campaign directed to both doctors and consumers. Television, print and other promotional materials gave the impression that Celebrex® was a "breakthrough" drug far superior to older and less expensive NSAIDs.

Pfizer's marketing and promotion of Celebrex® was part of a scheme to create the impression and demand for Celebrex® as a wide ranging pain reliever that would enhance consumers' abilities to live a normal life or engage in activities such as running, playing a guitar, swimming, walking, taking exercise classes and a host of similar activities that many who suffer from chronic pain have difficulty performing. As a result of Pfizer's scheme, it was able to sell Celebrex® at a premium price over NSAIDs and to have it become a standard treatment option as opposed to NSAIDs.

In furtherance of this scheme, in violation of M.G.L. c. 93A, Pfizer:

- suppressed clinical data showing the cardiovascular risks associated with the use of Celebrex®;

- manipulated clinical data in an effort to show statistical significance of fewer upper GI events than those using NSAIDs when in fact the complete clinical data failed to demonstrate a statistically significant lower rate of GI complications and, in fact, use of Celebrex® for more than six months *increased* the risk of GI complications;

- manipulated clinical data to give the appearance of superiority over NSAIDs when such superiority did not exist;

- directed false promotional materials to Massachusetts consumers; and

- used reprinted articles from prestigious medical journals that falsely claimed Celebrex® was proven to be safer than NSAIDs.

M.G.L. c. 93A § 2(a) prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The acts and practices complained of herein are unfair and deceptive under M.G.L. c. 93A.

The regulations issued by the Massachusetts Attorney General pursuant to M.G.L. c. 93A separately and specifically make unlawful Pfizer's conduct. 940 CMR § 3.02 states:

Pfizer, Inc.
Pharmacia Corporation
G.D. Searle & Co.
February 16, 2005
Page 3

> No statement or illustration shall be used in any advertising which creates a false impression of the . . . quality, make . . . or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised product to another.

In addition, 940 CMR § 3.04 states:

> No claim or representation shall be made by any means which has the capacity or tendency or effect of deceiving buyers or prospective buyers as to the value or the past, present, common or usual price of a product, or as to any reduction in price of a product, or any savings relating to a product.

Pfizer's conduct also constitutes fraud under Massachusetts state law because Pfizer, through its words and conduct, knowingly and intentionally made materially false and misleading representations concerning, among other things, the relative effectiveness of Celebrex®.

We hereby demand that Pfizer pay damages for the harm caused by its unlawful conduct. Damages shall be calculated, pursuant to M.G.L. c. 93A § 9(3), as the greater of (a) $25 per sale of Celebrex® in Massachusetts, or (b) the product of the number of units of Celebrex® sold in Massachusetts and the difference between the amount paid by Massachusetts purchasers for Celebrex® and the amount they would have paid had those purchasers paid for NSAIDs such as aspirin and ibuprofen. To calculate this amount, we would require that Pfizer produce detailed transaction data for the relevant period, including invoice, rebate, chargeback, and off-invoice discount data, the details of which production, including confidentiality protection, can be determined at a later date. We would require, in furtherance of this process, that during the period in which actual damages are being calculated, Pfizer pay into escrow an amount equal to $25 per Celebrex® sale in Massachusetts during the relevant period, to be applied against the ultimate damages amount.

We also demand that Pfizer cease and desist from all unlawful conduct.

Pfizer, Inc.
Pharmacia Corporation
G.D. Searle & Co.
February 16, 2005
Page 4


     M.G.L. c. 93A provides for an award of treble damages, attorneys' fees, and costs if this matter proceeds to litigation.  Accordingly, we invite you to consider seriously the demand set forth herein and to provide your written response, if any, within the period set forth in M.G.L. c. 93A.


     Very truly yours,

Wanda L. Garcia (HW)

Wanda L. Garcia


cc:    Jeffrey B. Kindler
       General Counsel to Pfizer

       (By First Class Mail)