UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH CARE FOR ALL, WISCONSIN CITIZEN ACTION, UNITED SENIOR ACTION OF INDIANA, JUDITH C. MEREDITH, MICHELLE MADOFF, ROSE LOHMAN and CAVALIER HOMES, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PFIZER INC., PHARMACIA CORP., and G.D. SEARLE & CO.,<br><br>Defendant. | Civil Action No. 05-10707-DPW |

**NOTICE OF SUBMISSIONS TO THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION REGARDING MOTIONS FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

Presently pending before the Judicial Panel on Multidistrict Litigation (the "Panel") are multiple motions for transfer and consolidation pursuant to 28 U.S.C. § 1407. These motions encompass at least 33 lawsuits throughout the country, including this action. On July 28, 2005, the Panel heard oral argument on these motions. Attached hereto as Exhibits 1-11 are true and correct copies of plaintiffs' submissions to the Panel, along with copies of submissions by other persons and entities represented by plaintiffs' counsel herein, which request transfer and consolidation of these proceedings in the District of Massachusetts.

1682.15 0028 MTN.DOC

DATED:  July 29, 2005

HAGENS BERMAN SOBOL SHAPIRO LLP


By: /s/ Thomas M. Sobol
     Thomas M. Sobol
One Main Street, Fourth Floor
Cambridge, MA  02142
(617) 482-3700
tom@hbsslaw.com

Steve W. Berman
Erin K. Flory
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292
steve@hbsslaw.com
erin@hbsslaw.com

Garve Ivey, Jr.
Barry A. Ragsdale
William Adair, Jr.
IVEY & RAGSDALE
P.O. Box 1349
315 West 19th Street
Jasper, AL 35502-1349
(205) 221-4644
garve@iveyragsdale.com

Jonathan B. Lowe
LOWE MOBLEY & LOWE
P.O. Box 576
Haleyville, AL 35575-0576
(205) 486-5296

Jeffrey Kodroff
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
(215) 496-0300

*Attorneys for Plaintiffs and the Proposed Class*

## Index to Exhibits

1.  Plaintiffs' Memorandum Of Law In Support Of Its Motions For Transfer And Consolidation Of Related Actions To The District Of Massachusetts Pursuant To 28 U.S.C. § 1407

2.  Celebrex Marketing And Pricing Litigation Plaintiffs' Response To Motion To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

3.  Celebrex Marketing And Pricing Litigation Plaintiffs' Consolidated Response To Motion To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

4.  Celebrex Marketing And Pricing Litigation Plaintiffs' Consolidated Reply To Responses To Motion To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

5.  Swan Plaintiffs' Joinder In The Celebrex Marketing And Pricing Plaintiffs' Consolidated Response To Motions To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

6.  Dorothy Greaves's Joinder In The Celebrex Marketing And Pricing Plaintiffs' Consolidated Response To Motions To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

7.  Swan Plaintiffs' Joinder In The Celebrex Marketing And Pricing Plaintiffs' Consolidated Reply To Responses To Motions To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

8.  Aurora Balloveras's Joinder In The Celebrex Marketing And Pricing Plaintiffs' Consolidated Reply To Responses To Motions To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

9.  Plaintiff Ronnie L. Hatcher's Response To Motion To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

10. Plaintiff Ronnie L. Hatcher's Consolidated Response To Motions To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

11. Plaintiff Ronnie L. Hatcher's Consolidated Reply To Responses To Motions To Transfer And Consolidate Pursuant To 28 U.S.C. § 1407

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Notice of Submissions to the Judicial Panel on Multidistrict Litigation Regarding Motions for Transfer and Consolidation Pursuant to 28 U.S.C. Section 1407 was served on July 29, 2005 by regular US mail.

By: /s/ Thomas M. Sobol
     Thomas M. Sobol
     Hagens Berman Sobol Shapiro LLP
     One Main Street, 4th Floor
     Cambridge, MA 02142
     Telephone: 617-482-3700
     Facsimile: 617-482-3003

1

⁴/₁₂

RECEIVED
CLERK'S OFFICE

2005 APR 25  A 11: 25

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE CELEBREX MARKETING AND PRICING LITIGATION | No. MDL DOCKET NO. |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS TO THE DISTRICT OF MASSACHUSETTS PURSUANT TO 28 U.S.C. § 1407

Plaintiffs Health Care for All, Wisconsin Citizen Action, United Senior Action of Indiana, Judith C. Meredith, Michelle Madoff, Rose Lohman, and Cavalier Homes, Inc., ("Plaintiffs") submit this memorandum of law in support of their motion for transfer and consolidation of related actions to the District of Massachusetts pursuant to 28 U.S.C. § 1407.

### I.    FACTS

**A.    Background**

Celebrex® is a pain medicine marketed by Defendants[1] that belongs to a class of drugs known as COX-2 inhibitors. Defendants promoted Celebrex® as an alternative to older non-steroidal anti-inflammatory drugs ("NSAIDs"), such as ibuprofen and naproxen, that could provide pain relief without the adverse gastrointestinal side effects sometimes encountered with

---

[1] The *Health Care for All, et al.* complaint names Pfizer, Inc., Pharmacia Corp. and G.D. Searle & Co. as defendants (the "Defendants").

- 1 -

other NSAIDs. Defendants promoted Celebrex® as offering all the benefits of less expensive NSAIDs with none of the drawbacks, and thereby turning Celebrex® into a blockbuster drug with billions of dollars in yearly sales.

As part of the unlawful scheme set forth in the complaint, Defendants embarked on a significant marketing campaign directed to both doctors and consumers. Promotional materials, as well as sponsored studies and planted articles, gave the impression that Celebrex® was a "breakthrough" drug far superior to older and much less expensive NSAIDs. Defendants' marketing and promotion of Celebrex® was part of a scheme to create the impression of, and demand for, Celebrex® as a wide-ranging pain reliever, particularly for the treatment of arthritis pain. The scheme was accomplished by unlawful means including, but not limited to, (i) suppressing data showing cardiovascular risks associated with the use of Celebrex®, (ii) manipulating data to give the appearance of superiority over other NSAIDs when such superiority did not exist, (iii) directing false promotional materials to doctors and consumers, and (iv) using reprinted articles from prestigious medical journals that falsely claimed Celebrex® was proven to be safer than other NSAIDs.

Defendants' advertising efforts included blitzing doctors' offices with literature and oral presentations designed to convince both doctors and consumers that Celebrex® was a superior drug for treatment of osteoarthritis, acute, and chronic pain. Defendants aggressively promoted Celebrex® as an improvement over other NSAIDs, like naproxen and ibuprofen, claiming it had a lower risk of gastrointestinal ulcers and bleeding. Defendants did not promote or provide any balanced presentation as to Celebrex® having an unacceptably high risk of other side effects, such as heart attacks, strokes, unstable angina, cardiac clotting and hypertension.

Defendants' advertising and packaging materials for Celebrex® were uniformly fraudulent and misleading because they failed to adequately warn consumers that Celebrex® poses known risks of heart attacks, strokes, unstable angina, cardiac clotting and hypertension. As a result of Defendants' scheme, they were able to sell Celebrex® at a premium price over

- 2 -

older NSAIDs and have it become a standard treatment option as opposed to less expensive NSAIDs.

**B.**    **The Celebrex® Marketing and Pricing Class Actions**

Following these events, several class-action complaints were filed alleging a conspiracy to portray Celebrex® as a drug possessing superior qualities to other NSAIDs and alleging a scheme to create consumer demand for Celebrex® based on deceptive statements about Celebrex®'s safety and efficacy in order to obtain premium pricing for the drug. These cases are:

- *Health Care for All, Wisconsin Citizen Action et al. v. Pfizer, et al.*, No. 05-10707 RCL (D. Mass.);

- *Greaves v. Pfizer, Inc., et al.*, No. 05-CV-647 (D. Ariz.);

- *Balloveras v. Pfizer, Inc.*, No. 05-20429 (S.D. Fla.);

- *Swan, et al. v. Pfizer, et al.*, No. 05-00834 EDL (N.D. Cal.).

These marketing and pricing class actions seek to recover damages on behalf of all persons (excluding those who assert personal-injury claims) who paid part or all of the purchase price for Celebrex® either on their own behalf or on behalf of someone else who ingested the drug. (Submitted herewith is a Schedule of Actions Involved Pursuant to 28 U.S.C. § 1407 that lists the actions to be transferred and consolidated.)

Plaintiffs seek to have the latter three marketing and pricing class actions listed above transferred to the District of Massachusetts for centralization with the *Health Care for All, et al.* class action already pending in that jurisdiction. Transfer and consolidation is appropriate because these cases involve common factual questions, transfer will further the convenience of the parties and the witnesses, and transfer will promote the just and efficient conduct of these actions. The District of Massachusetts is the appropriate place for transfer and consolidation because the district has the resources and judicial expertise to properly conduct this case; defendant Pharmacia Corp. maintains its principal place of business nearby in New Jersey; defendant Pfizer, Inc., maintains its principal place of business nearby in New York; relevant

- 3 -

witnesses and documents are located in the region; and the District of Massachusetts is centrally

located to all parties.

**C.    Other Celebrex® Litigation**

In addition, there are three individual lawsuits involving Celebrex® filed against Pfizer,

Inc., one of the defendants in the marketing and pricing class actions. These lawsuits assert

claims for personal injuries arising from the three plaintiffs' actual ingestion of Celebrex®:

- *Ward v. Pfizer, Inc.*, No 04-3469 (E.D. La.);

- *Creel v. Pfizer, Inc.*, No. 04-3470 (E.D. La.);

- *Bridges v. Pfizer, Inc.*, No. 05-1353 (E.D. La.).

Because of the material differences between these three cases and Celebrex® marketing

and pricing class actions, Plaintiffs do not include them in this motion to transfer.

## II.    ARGUMENT

**A.    Transfer and Consolidation of All Celebrex® Marketing and Pricing Class Actions for Coordinated Pretrial Proceedings is Appropriate**

28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases

for coordinated pretrial proceedings upon a determination that (i) they "involv[e] one or more

common questions of fact," (ii) transfer will further "the convenience of the parties and

witnesses," and (iii) transfer "will promote the just and efficient conduct of the actions." The

requirements for transfer under Section 1407 are clearly satisfied here. The four related

Celebrex® marketing and pricing class actions are characterized almost entirely by common

questions of fact. In addition, transfer and consolidation will promote convenience for the

parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the

potential for inconsistent rulings, including determinations on class certification.

### 1.    The Related Actions Involve Common Questions of Fact

The first requirement of § 1407 – that the actions to be transferred involve common

questions of fact – is satisfied. The factual issues to be determined in each of the actions

- 4 -

proposed for transfer and coordination arise from the same course of conduct and, hence, are identical. *See In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004); *In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1371 (J.P.M.L. 2004).

Among the numerous common questions of law and fact at issue in the related actions are:

      a.     whether Defendants engaged in a fraudulent and/or deceptive scheme to portray Celebrex® as a drug having qualities superior to other NSAIDs;

      b.     whether Defendants engaged in a scheme to create consumer demand for Celebrex® based on deceptive statements about its safety and efficacy;

      c.     whether Celebrex® was over prescribed as a result of this scheme;

      d.     whether the price of Celebrex® was inflated as a result of the scheme;

      e.     whether Defendants formed an enterprise for the purposes of carrying out the scheme;

      f.     whether Defendants used the U.S. mails and wires to facilitate the scheme;

      g.     whether Defendants' conduct violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68;

      h.     whether Defendants are liable for damages under state consumer-protection statutes;

      i.     whether Defendants made material misrepresentations or material omissions about the cardiovascular risks associated with using Celebrex® and the effectiveness of Celebrex®; and

      j.     whether members of the Class are entitled to damages based on their payments for Celebrex®, and, if so, the nature and amount of such damages.

The factual issues to be determined in all of the marketing and pricing class actions are nearly identical, making transfer to a single forum highly appropriate. *See, e.g., Neurontin*, 342

- 5 -

F. Supp. 2d at 1351. In *Neurontin*, for example, the Panel ruled that there were common issues

warranting transfer and consolidation where "[a]ll actions [we]re purported class actions

involving allegations that common defendants have engaged in the illegal promotion and sale of

the drug Neurontin for 'off-label' use." *Id.*; *see also In re Ephedra Prods. Liab. Litig.*, 314 F.

Supp. 2d 1373, 1375 (J.P.M.L. 2004) ("[c]ommon factual questions arise because these actions

focus on alleged side effects of ephedra-containing products, and whether defendants knew of

these side effects and either concealed, misrepresented or failed to warn of them"); *In re*

*Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004) (common questions

existed where "[a]ll actions can thus be expected to share factual and legal questions with respect

to the '275 patent concerning patent validity and related questions such as double patenting,

prosecution laches, and inequitable conduct").

### 2. Consolidating the Class Actions Will Further the Convenience of the Parties and the Witnesses

Consolidating the class actions will meet the second requirement for consolidation under

Section 1407 because it will serve the convenience of the parties and witnesses. It is expected

that counsel for plaintiffs in all actions will seek documents from the same Defendants on such

issues as, *inter alia*: (a) Defendants' portrayal of Celebrex® as a drug having qualities superior

to other NSAIDs; (b) Defendants' efforts to create consumer demand for Celebrex®; and

(c) Defendants' representations and/or omissions concerning the risks associated with using

Celebrex®, including but not limited to the risks of adverse cardiovascular events. Issues such as

these will be central in all of the class actions.

Because the marketing and pricing actions arise from a common core of factual

allegations, there is a strong likelihood of duplicative discovery demands and redundant

depositions. Consolidation will enable a single judge to establish a pretrial program that will

minimize the inconvenience to the witnesses and expenses to the parties. These savings are

precisely the types of savings that this Panel has traditionally used to justify the consolidation of

-6-

actions in different jurisdictions. *See, e.g., Neurontin*, 342 F. Supp. 2d at 1351; *Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1385.

**3.    Transfer and Consolidation Will Promote the Just and Efficient Conduct of the Related Actions**

Finally, transferring and consolidating these class actions is appropriate because coordinating the pretrial proceedings will promote the just and efficient conduct of the actions. In light of the nearly identical factual allegations, and especially given that discovery has not yet begun in any action, transfer under § 1407 will avoid duplicative discovery and save judicial time and resources. *See Neurontin*, 342 F. Supp. 2d at 1351; *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004); *Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d at 1375; *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975); *see also In re European Rail Pass Antitrust Litig.*, 2001 U.S. Dist. Lexis 1417, at *3 (J.P.M.L. Feb. 7, 2001) (ordering cases transferred to a single district to "eliminate duplicative discovery").

The plaintiffs in each action will seek to depose many of the same individuals from the three defendant corporations and request production of a substantially similar set of documents. Failing to consolidate these actions will therefore result in duplicative discovery efforts, requiring witnesses to appear for multiple depositions and Defendants to produce several sets of the same documents. The consolidation and coordination of these actions would avoid this inconvenience and needless waste of resources. *See In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 209 F. Supp. 2d 1385, 1386 (J.P.M.L. 2002). Moreover, the corresponding savings in time and expense would confer benefits upon both the plaintiffs and Defendants. *See In re Cygnus Telcoms. Tech., LLC Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001); *see also In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (consolidation and coordination is appropriate to "conserve the resources of the parties, their

- 7 -

counsel and the judiciary"); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978).

Where, as here, consolidation and coordination will avoid duplicative discovery and potentially conflicting pretrial rulings, transfer for pretrial purposes is warranted to promote the interests of judicial economy and efficiency.

**B.    The District of Massachusetts Is The Proper Forum for Coordinated Pretrial Proceedings**

**1.    The District of Massachusetts Has the Resources and Judicial Expertise to Properly Conduct This Case**

In selecting the most appropriate transferee forum for multidistrict litigation, the Panel considers the speed and efficiency with which alternative districts manage their respective caseloads. *See In re Preferential Drug Prods. Pricing Antitrust*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977) (transferring cases based in part upon transferee court's low median time between filing and disposition in civil actions); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (faster docket cited as reason for selecting transferee court). Here, this factor favors transferring the actions to the District of Massachusetts. For example, according to the Federal Court Management Statistics, in 2004 the median time span from filing to disposition for civil cases filed in the District of Massachusetts was only 9.4 months, with only 215 civil cases – 5.7 percent of its civil docket – older than 3 years. Ex. 1 (attached hereto). This Panel has previously transferred to the District of Massachusetts complex, multi-party litigation partly in recognition that it is well resourced to handle such litigation. See, for example, *In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d at 1385; *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378, 1381 (J.P.M.L. 2002); *In re Pharmatrak, Inc., Privacy Litig.*, 2001 U.S. Dist. Lexis 5228, at *3 (J.P.M.L. Apr. 18, 2001).[2]

---

[2] The Panel has long held this view of the District of Massachusetts. *See, e.g., In re Kauffman Mut. Fund Actions*, 337 F. Supp. 1337, 1340 (J.P.M.L. 1972) ("[t]he deciding factor in our estimation is the more current docket in the District of Massachusetts").

- 8 -

In contrast, docket congestion appears to be greater in other districts. For example, the District of Arizona (where *Greaves* now resides) averages 10.4 months from filing to disposition for civil cases. Ex. 2 (attached hereto). The percentages of civil cases over three years old are higher for the Southern District of New York – 11.6% – and for the Northern District of California – 6.9%. *See* Exs. 3 & 4 (attached hereto). And though the median filing-to-disposition time in the Eastern District of Louisiana is comparable to the District of Massachusetts, its percentage of civil cases over three years old is higher (6.9 percent) and rising rapidly.[3]

Additionally, the expertise of a particular court in the areas of law and procedure governing the litigation is an important factor. *See, e.g., In re Asbestos Prods. Liab. Litig. (No. VI),* 771 F. Supp. 415, 422-23 (D.D.C. 1991). The District of Massachusetts has extensive experience in managing consolidated multi-district litigation. *See, e.g., In re Neurontin Mktg. & Sales Practices Litig.,* 342 F. Supp. 2d 1350 (J.P.M.L. 2004) (transferring action to District of Massachusetts); *In re Columbia Univ. Patent Litig.,* 313 F. Supp. 2d 1383 (J.P.M.L. 2004) (same); *In re Carbon Black Antitrust Litig.,* 277 F. Supp. 2d 1380 (J.P.M.L. 2003) (same); *In re Pharm. Indus. Average Wholesale Price Litig.,* 237 F. Supp. 2d 1377 (J.P.M.L. 2002) (same); *In re Shell Oil Prods. Co. Dealer Franchise Litig.,* 206 F. Supp. 2d 1373 (J.P.M.L. 2002) (same); *In Re Immunex Corp. Average Wholesale Price Litig.,* 201 F. Supp. 2d 1378 (J.P.M.L. 2002) (same); *In re Lupron Mktg. & Sales Practices Litig.,* 180 F. Supp. 2d 1376 (J.P.M.L. 2001) (same); *In re Pharmatrak, Inc., Privacy Litig.,* 2001 U.S. Dist. Lexis 5228 (J.P.M.L. Apr. 18, 2001) (same).[4]    Indeed, the Panel has specifically recognized that the District of Massachusetts

---

[3] In the previous five years, that percentage ranged from .6 to 1.6. But the percentage doubled from 2002 to 2003 before rocketing to 6.9% in 2004. *See* Ex. 5 (attached hereto).

[4] *See also In re Air Crash near Edgartown,* 269 F. Supp. 2d 1370 (J.P.M.L. 2003) (same); *In re Xcelera.com Inc.,* 2000 U.S. Dist. Lexis 18557 (J.P.M.L. Dec. 18, 2000) (same); *In re Citigroup, Inc. Capital Accumulation Plan Litig.,* 2000 U.S. Dist. Lexis 12561 (J.P.M.L. Aug. 29, 2000) (same); *In re Nabumetone Patent Litig.,* 1998 U.S. Dist. Lexis 13735 (J.P.M.L. Sept. 2, 1998) (same); *In re Summit Tech. Sec. Litig.,* 1997 U.S. Dist. Lexis 15778 (J.P.M.L. Oct. 9, 1997) (same); *In re Computervision Corp. Sec. Litig.,* 814 F. Supp. 85 (J.P.M.L. 1993) (same).

is equipped with the resources necessary to manage substantial consolidated multi-district litigation. *See, e.g., Columbia Univ. Patent Litig.*, 313 F. Supp. 2d at 1385; *Carbon Black Antitrust Litig.*, 277 F. Supp. 2d at 1381; *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d at 1381; *In re Pharmatrak, Inc., Privacy Litig.*, 2001 U.S. Dist. Lexis 5228, at *3. The Panel has also regularly transferred to the District of Massachusetts multi-district litigation that, like the present cases, challenge overpricing conduct by major pharmaceutical corporations. See, for example, *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d at 1381; *In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377 (J.P.M.L. 2002) (related case); *In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d at 1351; *In re Lupron Mktg. & Sales Practices Litig.*, 180 F. Supp. 2d at 1377 (fraudulent marketing, sales and billing scheme). The District thus has an established track record of managing this type of complex litigation.

Moreover, the litigation already pending in the District of Massachusetts, *Health Care for All, et al.*, essentially is already a consolidated lawsuit. The seven plaintiffs in that lawsuit are located in five different states. Plaintiffs Health Care for All and Judith C. Meredith reside (or have their principal place of business) in the Commonwealth of Massachusetts (Schedule of Actions, Ex. B at ¶¶ 12, 15); Wisconsin Citizen Action is a consumer-health advocacy organization located, of course, in Wisconsin (*id.* at ¶ 13); Plaintiff United Senior Action of Indiana is a consumer-health advocacy organization located in Indiana (*id.* at ¶ 14); Plaintiff Michelle Madoff is a resident of the State of Arizona (*id.* at ¶ 16); Plaintiff Rose Lohman is a resident of the State of Wisconsin; Plaintiff Cavalier Homes, Inc., has its principal place of business in Alabama (*id.* at ¶ 18). Cavalier Homes originally filed its own complaint in the State of Alabama but subsequently joined the present action; its original complaint has been dismissed.

- 10 -

## 2. The District of Massachusetts Is a Convenient Forum for the Parties and Witnesses

The convenience of the parties and witnesses is an important factor in determining to which district related actions should be transferred. 28 U.S.C. § 1407(a) (related actions may be transferred to a district for coordinated proceedings upon a determination that the transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"). In deciding whether a particular forum is convenient, the Panel frequently considers the location of the parties documents and potential witnesses relative to that district. *See In re Cigarette Antitrust Litig.*, 2000 U.S. Dist. Lexis 8209, at *4 (J.P.M.L. June 7, 2000). The District of Massachusetts is centrally located and readily accessible, making it convenient for the parties and witnesses and thus a preferable forum for this litigation. Indeed, two of the defendants, Pharmacia Corp. and Pfizer, Inc., are located in close proximity to the district (New Jersey and New York, respectively) and, in light of Boston's major airports and high-speed trains that serve as a transportation hub for the region, parties traveling by air or rail will have easy access to the district court.

These factors clearly support transfer to the District of Massachusetts.

## C. The Southern District of Florida Offers an Alternative Forum for Coordinated Pretrial Proceedings

As an alternative, Plaintiffs would also support transfer to the Southern District of Florida at Miami. As demonstrated by its caseload statistics (Ex. 6 attached hereto), that District appears to have a well-managed docket capable of ensuring expeditious resolution of this multi-party litigation. The District, while possessing the resources necessary to oversee a complex multi-party action such as this, is under-utilized as a transferee court for centralized proceedings. As this Panel recognized in *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d at 1380, this alone can be reason to transfer multidistrict actions to such districts for centralization:

- 11 -

centralization in this district permits the Panel to effect the Section 1407 assignment to a major metropolitan court that (i) is not currently overtaxed with other multidistrict dockets, and (ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.

### III.    CONCLUSION

Consolidation is necessary to avoid duplication and wasted efforts.  Transfer to the District of Massachusetts is appropriate because one of the four cases was filed there; the District of Massachusetts has the resources and judicial expertise to promptly and efficiently conduct this case; and the District of Massachusetts is centrally located to all the parties.  Accordingly, Plaintiffs respectfully request that the Panel order that the *Greaves*, *Balloveras* and the *Swan* actions (as well as any cases that may be subsequently filed asserting related or similar claims) be transferred to the District of Massachusetts for consolidated and coordinated pretrial proceedings.

DATED:  April 22, 2005

HAGENS BERMAN SOBOL SHAPIRO LLP


By_____
     Steve W. Berman
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292
steve@hbsslaw.com

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, Fourth Floor
Cambridge, MA  02142
(617) 482-3700
tom@hbsslaw.com

- 12 -

Garve Ivey, Jr.
Barry A. Ragsdale
William Adair, Jr.
IVEY & RAGSDALE
P.O. Box 1349
315 West 19th Street
Jasper, AL 35502-1349
(205) 221-4644
garve@iveyragsdale.com

Jonathan B. Lowe
LOWE MOBLEY & LOWE
P.O. Box 576
Haleyville, AL 35575-0576
(205) 486-5296

Jeffrey Kodroff
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

*Attorneys for Plaintiffs Health Care for All,*
*Wisconsin Citizen Action, United Senior Action*
*of Indiana, Judith C. Meredith, Michelle*
*Madoff, Rose Lohman and Cavalier Homes, Inc.*

- 13 -

# EXHIBIT 1

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **MASSACHUSETTS** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | | 3,819 | 3,720 | 3,765 | 3,276 | 3,651 | 3,770 | U.S. | Circuit |
| | Terminations | | 3,683 | 3,513 | 3,565 | 3,470 | 3,501 | 3,842 | | |
| | Pending | | 4,496 | 4,416 | 4,300 | 4,126 | 4,275 | 4,117 | | |
| | % Change in Total Filings | Over Last Year | 2.7 | | | | | | 38 | 2 |
| | | Over Earlier Years | | 1.4 | 16.6 | 4.6 | 1.3 | | 64 | 3 |
| | Number of Judgeships | | 13 | 13 | 13 | 13 | 13 | 13 | | |
| | Vacant Judgeship Months** | | 8.0 | 7.0 | .0 | .0 | .0 | .0 | | |
| **ACTIONS PER JUDGESHIP** | FILINGS | Total | 294 | 285 | 289 | 252 | 281 | 290 | 83 | 2 |
| | | Civil | 255 | 246 | 243 | 222 | 249 | 258 | 74 | 2 |
| | | Criminal Felony | 27 | 31 | 38 | 30 | 32 | 32 | 93 | 5 |
| | | Supervised Release Hearings** | 12 | 8 | 8 | - | - | - | 72 | 2 |
| | Pending Cases | | 346 | 340 | 331 | 317 | 329 | 317 | 65 | 1 |
| | Weighted Filings** | | 349 | 344 | 354 | 322 | 364 | 347 | 74 | 1 |
| | Terminations | | 283 | 270 | 274 | 267 | 269 | 296 | 85 | 3 |
| | Trials Completed | | 17 | 15 | 15 | 12 | 13 | 14 | 58 | 2 |
| **MEDIAN TIMES (months)** | From Filing to Disposition | Criminal Felony | 14.9 | 14.3 | 13.4 | 13.2 | 12.6 | 12.4 | 94 | 5 |
| | | Civil** | 9.4 | 10.7 | 11.5 | 10.2 | 10.2 | 10.9 | 42 | 3 |
| | From Filing to Trial** (Civil Only) | | 31.7 | 28.5 | 25.5 | 23.8 | 26.4 | 23.0 | 75 | 4 |
| **OTHER** | Civil Cases Over 3 Years Old** | Number | 215 | 198 | 229 | 275 | 260 | 160 | | |
| | | Percentage | 5.7 | 5.4 | 6.3 | 7.7 | 7.0 | 4.4 | 68 | 4 |
| | Average Number of Felony Defendants Filed Per Case | | 1.5 | 1.4 | 1.6 | 1.6 | 1.5 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 47.60 | 49.14 | 46.26 | 51.51 | 44.40 | 41.94 | | |
| | | Percent Not Selected or Challenged | 27.5 | 33.4 | 23.2 | 26.2 | 14.8 | 15.2 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3312 | 97 | 24 | 424 | 43 | 34 | 269 | 503 | | 581 | 223 | 492 | 10 | 612 |
| Criminal* | 351 | 29 | 8 | 46 | - | 22 | 96 | ** | | 4 | 91 | - | 14 | 41 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.

\*\* See "Explanation of Selected Terms."

# EXHIBIT 2

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| ARIZONA | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | | |
| OVERALL CASELOAD STATISTICS | | Filings* | 8,810 | 8,412 | 7,588 | 6,304 | 6,121 | 5,842 | U.S. | Circuit |
| | | Terminations | 8,132 | 8,439 | 7,076 | 5,815 | 5,976 | 5,709 | | |
| | | Pending | 6,262 | 5,637 | 5,734 | 5,295 | 4,855 | 4,781 | | |
| | % Change in Total Filings | Over Last Year | | 4.7 | | | | | 25 | 5 |
| | | Over Earlier Years | | | 16.1 | 39.8 | 43.9 | 50.8 | 7 | 2 |
| | Number of Judgeships | | 13 | 13 | 12 | 12 | 11 | 8 | | |
| | Vacant Judgeship Months** | | 4.4 | .5 | 15.3 | 37.0 | 47.1 | 1.6 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 678 | 647 | 632 | 525 | 556 | 730 | 9 | 3 |
| | | Civil | 272 | 256 | 280 | 270 | 297 | 384 | 72 | 8 |
| | | Criminal Felony | 309 | 294 | 283 | 255 | 259 | 346 | 3 | 1 |
| | | Supervised Release Hearings** | 97 | 97 | 69 | - | - | - | 3 | 2 |
| | Pending Cases | | 482 | 434 | 478 | 441 | 441 | 598 | 26 | 6 |
| | Weighted Filings** | | 615 | 585 | 613 | 536 | 579 | 808 | 11 | 3 |
| | Terminations | | 626 | 649 | 590 | 485 | 543 | 714 | 8 | 2 |
| | Trials Completed | | 18 | 15 | 16 | 19 | 22 | 30 | 53 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 5.2 | 4.8 | 4.9 | 4.3 | 3.9 | 4.1 | 8 | 2 |
| | | Civil** | 10.4 | 10.0 | 10.7 | 10.8 | 10.7 | 11.3 | 61 | 10 |
| | From Filing to Trial** (Civil Only) | | 30.7 | 34.0 | 37.8 | 36.7 | 34.0 | 32.0 | 73 | 11 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 202 | 196 | 237 | 249 | 241 | 213 | 65 | 8 |
| | | Percentage | 5.5 | 5.7 | 6.6 | 7.0 | 7.0 | 6.2 | | |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.2 | 1.3 | 1.2 | 1.3 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 51.19 | 60.58 | 52.55 | 68.12 | 62.12 | 54.66 | | |
| | | Percent Not Selected or Challenged | 34.6 | 41.1 | 42.7 | 45.1 | 47.3 | 40.4 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3530 | 114 | 17 | 1264 | 88 | 11 | 130 | 349 | 238 | 197 | 636 | 6 | 480 |
| Criminal* | 4007 | 2404 | 7 | 220 | 23 | 92 | 792 | ** | 7 | 79 | 169 | 15 | 199 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# EXHIBIT 3

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **NEW YORK SOUTHERN** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | | Filings* | 12,422 | 12,321 | 13,937 | 12,783 | 11,564 | 15,106 | U.S. | Circuit |
| | | Terminations | 11,471 | 10,780 | 12,618 | 11,247 | 14,638 | 11,350 | | |
| | | Pending | 17,638 | 17,275 | 16,198 | 15,818 | 14,275 | 17,626 | | |
| | % Change in Total Filings | Over Last Year | | .8 | | | | | 52 | 3 |
| | | Over Earlier Years | | | -10.9 | -2.8 | 7.4 | -17.8 | 87 | 5 |
| Number of Judgeships | | | 28 | 28 | 28 | 28 | 28 | 28 | | |
| Vacant Judgeship Months** | | | 8.8 | 33.3 | 15.8 | .0 | 22.1 | 38.0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 444 | 441 | 498 | 457 | 413 | 540 | 54 | 3 |
| | | Civil | 388 | 381 | 441 | 420 | 371 | 492 | 37 | 3 |
| | | Criminal Felony | 44 | 47 | 48 | 37 | 42 | 48 | 80 | 5 |
| | | Supervised Release Hearings** | 12 | 13 | 9 | - | - | - | 72 | 5 |
| | Pending Cases | | 630 | 617 | 579 | 565 | 510 | 630 | 11 | 3 |
| | Weighted Filings** | | 527 | 513 | 539 | 560 | 521 | 489 | 35 | 3 |
| | Terminations | | 410 | 385 | 451 | 402 | 523 | 405 | 57 | 3 |
| | Trials Completed | | 16 | 17 | 15 | 15 | 18 | 21 | 63 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 11.9 | 11.8 | 13.3 | 12.3 | 13.5 | 12.0 | 88 | 5 |
| | | Civil** | 8.1 | 8.4 | 8.3 | 7.2 | 5.2 | 9.0 | 23 | 2 |
| | From Filing to Trial** (Civil Only) | | 26.8 | 22.6 | 23.0 | 24.4 | 22.0 | 24.8 | 62 | 1 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 1,656 | 1,312 | 1,230 | 1,585 | 1,098 | 990 | | |
| | | Percentage | 11.6 | 9.2 | 9.2 | 12.1 | 9.5 | 6.6 | 83 | 4 |
| | Average Number of Felony Defendants Filed Per Case | | 1.7 | 1.5 | 1.5 | 1.6 | 1.7 | 1.5 | | |
| | Jurors | Avg. Present for Jury Selection | 88.01 | 82.96 | 83.28 | 73.12 | 60.55 | 52.58 | | |
| | | Percent Not Selected or Challenged | 53.1 | 54.8 | 61.9 | 53.2 | 54.0 | 47.4 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 10859 | 220 | 23 | 1251 | 68 | 44 | 919 | 1744 | 2340 | 808 | 1643 | 109 | 1690 |
| Criminal* | 1204 | 135 | 14 | 172 | 15 | 66 | 348 | ** | 18 | 330 | 4 | 9 | 93 |

\*   Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# EXHIBIT 4

Judicial Caseload Profile Report

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA NORTHERN** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 6,727 | 6,919 | 7,887 | 6,841 | 6,601 | 7,466 | U.S. | Circuit |
| | Terminations | | 6,471 | 7,094 | 6,675 | 6,069 | 6,381 | 6,947 | | |
| | Pending | | 7,267 | 7,567 | 7,958 | 6,928 | 6,202 | 5,960 | | |
| | % Change in Total Filings | Over Last Year | -2.8 | | | | | | 64 | 11 |
| | | Over Earlier Years | | -14.7 | -1.7 | 1.9 | -9.9 | | 80 | 12 |
| | Number of Judgeships | | 14 | 14 | 14 | 14 | 14 | 14 | | |
| | Vacant Judgeship Months** | | .0 | 3.1 | 12.0 | 3.0 | 9.2 | 11.1 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 480 | 494 | 563 | 489 | 472 | 533 | 43 | 8 |
| | | Civil | 413 | 424 | 510 | 439 | 415 | 486 | 30 | 5 |
| | | Criminal Felony | 44 | 47 | 42 | 50 | 57 | 47 | 80 | 15 |
| | | Supervised Release Hearings** | 23 | 23 | 11 | - | - | - | 35 | 12 |
| | Pending Cases | | 519 | 541 | 568 | 495 | 443 | 426 | 21 | 4 |
| | Weighted Filings** | | 581 | 631 | 598 | 610 | 594 | 585 | 18 | 6 |
| | Terminations | | 462 | 507 | 477 | 434 | 456 | 496 | 45 | 8 |
| | Trials Completed | | 10 | 11 | 11 | 11 | 13 | 14 | 90 | 14 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 11.1 | 11.7 | 11.8 | 10.1 | 8.6 | 8.6 | 83 | 14 |
| | | Civil** | 8.2 | 10.6 | 9.5 | 9.1 | 8.1 | 9.9 | 24 | 6 |
| | From Filing to Trial** (Civil Only) | | 22.5 | 30.3 | 23.5 | 22.7 | 25.5 | 24.7 | 46 | 5 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 430 | 377 | 475 | 335 | 273 | 287 | 76 | 10 |
| | | Percentage | 6.9 | 5.7 | 6.7 | 5.6 | 5.1 | 5.4 | | |
| | Average Number of Felony Defendants Filed Per Case | | 1.4 | 1.5 | 1.4 | 1.5 | 1.3 | 1.4 | | |
| | Jurors | Avg. Present for Jury Selection | 61.19 | 65.00 | 66.42 | 60.46 | 50.49 | 48.21 | | |
| | | Percent Not Selected or Challenged | 48.9 | 40.9 | 47.2 | 42.2 | 38.6 | 33.6 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 5785 | 194 | 86 | 1517 | 84 | 92 | 525 | 551 | 423 | 436 | 961 | 48 | 868 |
| Criminal* | 608 | 156 | 5 | 81 | 6 | 28 | 99 | ** | 19 | 112 | 5 | 25 | 72 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

# EXHIBIT 5

Judicial Caseload Profile Report

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **LOUISIANA EASTERN** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | | 3,783 | 3,990 | 4,187 | 3,933 | 4,054 | 4,211 | U.S. | Circuit |
| | Terminations | | 3,584 | 3,883 | 3,834 | 4,028 | 4,133 | 4,337 | | |
| | Pending | | 3,526 | 3,324 | 3,213 | 2,855 | 2,935 | 3,012 | | |
| | % Change in Total Filings | Over Last Year | | -5.2 | | | | | 71 | 5 |
| | | Over Earlier Years | | | -9.7 | -3.8 | -6.7 | -10.2 | 81 | 8 |
| | Number of Judgeships | | 12 | 12 | 12 | 12 | 12 | 12 | | |
| | Vacant Judgeship Months** | | .0 | .0 | 12.1 | 14.7 | .0 | .4 | | |
| **ACTIONS PER JUDGESHIP** | FILINGS | Total | 316 | 332 | 348 | 328 | 338 | 351 | 80 | 9 |
| | | Civil | 283 | 297 | 315 | 304 | 313 | 326 | 67 | 8 |
| | | Criminal Felony | 25 | 27 | 26 | 24 | 25 | 25 | 94 | 9 |
| | | Supervised Release Hearings** | 8 | 8 | 7 | - | - | - | 89 | 8 |
| | Pending Cases | | 294 | 277 | 268 | 238 | 245 | 251 | 79 | 9 |
| | Weighted Filings** | | 314 | 320 | 339 | 306 | 322 | 340 | 83 | 9 |
| | Terminations | | 299 | 324 | 320 | 336 | 344 | 361 | 79 | 9 |
| | Trials Completed | | 12 | 13 | 12 | 13 | 17 | 17 | 80 | 9 |
| **MEDIAN TIMES (months)** | From Filing to Disposition | Criminal Felony | 6.8 | 7.2 | 7.2 | 7.7 | 8.1 | 7.2 | 27 | 4 |
| | | Civil** | 9.3 | 9.8 | 8.7 | 9.7 | 9.4 | 9.5 | 38 | 5 |
| | From Filing to Trial** (Civil Only) | | 16.2 | 17.4 | 16.4 | 18.3 | 17.4 | 17.0 | 10 | 2 |
| **OTHER** | Civil Cases Over 3 Years Old** | Number | 225 | 40 | 21 | 16 | 30 | 45 | | |
| | | Percentage | 6.9 | 1.3 | .7 | .6 | 1.1 | 1.6 | 76 | 8 |
| | Average Number of Felony Defendants Filed Per Case | | 1.7 | 1.5 | 1.5 | 1.5 | 1.7 | 1.8 | | |
| | Jurors | Avg. Present for Jury Selection | 27.30 | 28.51 | 27.28 | 30.81 | 23.33 | 22.30 | | |
| | | Percent Not Selected or Challenged | 28.8 | 30.6 | 26.5 | 32.4 | 23.1 | 14.9 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3393 | 121 | 9 | 581 | 12 | 41 | 141 | 491 | 1259 | 48 | 444 | 4 | 242 |
| Criminal* | 299 | 22 | 7 | 73 | 2 | 10 | 94 | ** | 6 | 42 | 3 | 10 | 30 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

# EXHIBIT 6

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **FLORIDA SOUTHERN** | | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | | 8,479 | 9,058 | 9,490 | 10,790 | 9,875 | 8,424 | | |
| | Terminations | | | 8,904 | 9,370 | 9,797 | 10,170 | 8,635 | 8,671 | | |
| | Pending | | | 7,302 | 7,788 | 8,203 | 9,099 | 8,426 | 7,177 | | |
| | % Change in Total Filings | Over Last Year | | | -6.4 | | | | | 78 | 7 |
| | | Over Earlier Years | | | | -10.7 | -21.4 | -14.1 | .7 | 66 | 4 |
| | Number of Judgeships | | | 18 | 18 | 17 | 17 | 16 | 16 | | |
| | Vacant Judgeship Months** | | | 7.5 | 12.8 | 29.5 | 21.5 | 10.1 | 13.5 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | | 470 | 503 | 559 | 635 | 617 | 527 | 47 | 5 |
| | | Civil | | 373 | 396 | 441 | 527 | 512 | 434 | 42 | 6 |
| | | Criminal Felony | | 79 | 90 | 103 | 108 | 105 | 93 | 36 | 2 |
| | | Supervised Release Hearings** | | 18 | 17 | 15 | - | - | - | 46 | 5 |
| | Pending Cases | | | 406 | 433 | 483 | 535 | 527 | 449 | 47 | 5 |
| | Weighted Filings** | | | 513 | 558 | 606 | 667 | 666 | 571 | 39 | 5 |
| | Terminations | | | 495 | 521 | 576 | 598 | 540 | 542 | 38 | 3 |
| | Trials Completed | | | 20 | 21 | 23 | 23 | 31 | 34 | 41 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | | 6.1 | 6.2 | 6.5 | 6.3 | 7.2 | 7.1 | 15 | 1 |
| | | Civil** | | 6.3 | 6.3 | 7.7 | 7.3 | 8.7 | 10.4 | 5 | 1 |
| | From Filing to Trial** (Civil Only) | | | 18.0 | 18.3 | 15.0 | 19.3 | 19.8 | 19.8 | 16 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | | 1,047 | 714 | 223 | 278 | 227 | 188 | | |
| | | Percentage | | 16.7 | 10.6 | 3.2 | 3.8 | 3.3 | 3.3 | 89 | 9 |
| | Average Number of Felony Defendants Filed Per Case | | | 1.7 | 1.6 | 1.5 | 1.5 | 1.6 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | | 42.54 | 44.00 | 42.51 | 45.57 | 43.59 | 43.10 | | |
| | | Percent Not Selected or Challenged | | 19.2 | 23.8 | 22.8 | 28.8 | 26.5 | 30.4 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6720 | 112 | 368 | 1230 | 104 | 70 | 1251 | 837 | 679 | 244 | 956 | 8 | 861 |
| Criminal* | 1413 | 234 | 18 | 105 | 10 | 36 | 505 | ** | 21 | 281 | 9 | 16 | 178 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

**2**

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX LITIGATION | No. MDL DOCKET NO. 1691 |

**CELEBREX MARKETING AND PRICING LITIGATION PLAINTIFFS' RESPONSE TO MOTION TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407**

The named plaintiffs in the class action, *Health Care for All, Wisconsin Citizen Action, United Senior Action of Indiana, Judith C. Meredith, Michelle Madoff, Rose Lohman* and *Cavalier Homes, Inc., v. Pfizer Inc., Pharmacia Corp.*, and *G.D. Searle & Co.* Civ. No. 05-10707 RCL (D. Mass.) (Woodlock, J.) (the "Celebrex Marketing-and-Pricing Plaintiffs") submit this response to the motion to transfer filed April 11, 2005, by counsel for plaintiffs Gloria Ward, Carol Aiola and Ronald J. Babin (the "PI Plaintiffs") in three physical-injury actions filed against defendant Pfizer, Inc., in the Eastern District of Louisiana.

The Celebrex Marketing-and-Pricing Plaintiffs allege claims based on fraudulent and misleading advertising and packaging materials for Celebrex by a group of three defendants, Pharmacia Corp., G.D. Searle & Co., and Pfizer, Inc., that allowed the defendants to sell Celebrex at a premium price over older, comparable drugs and have it become a new standard treatment option. Their marketing-and-pricing class action seeks to recover economic damages on behalf of all persons – except those who assert physical-injury claims – who paid all or part of

- 1 -

the purchase price for Celebrex either on their own or someone else's behalf. In addition, there are several more marketing and pricing class actions asserted against the same three defendants arising from the same misconduct involving Celebrex (the "Celebrex Marketing-and-Pricing Class Actions"). *See* Schedule of Actions submitted herewith.

The PI Plaintiffs' motion to transfer does not encompass any of the Celebrex Marketing-and-Pricing Class Actions. First, though the class actions were on file weeks or months before the PI Plaintiffs' filed their motion to transfer, the PI Plaintiffs did not list the class actions in the schedule of cases attached to their motion. The Panel's Rule 7.2(a)(ii) requires movants requesting action by the Panel under 28 U.S.C. § 1407 to submit a schedule identifying "each action involved" by name, venue, civil action and district-court judge. The PI Plaintiffs have done so in their appropriately titled "Schedule of Actions Involved Pursuant to 28 U.S.C. Sec. 1407." That schedule identifies 14 actions pending in six different federal court districts. All of those actions, like the PI Plaintiffs' own complaints, seek damages for heart attacks, strokes or other physical injuries stemming from actual ingestion of Bextra or Celebrex.[1]

Second, the PI Plaintiffs' motion to transfer and supporting memorandum are consistent with their Schedule of Actions. The Motion states that the PI Plaintiffs "pray that the Panel transfer and consolidate the case referenced in the attached Schedule of Actions Involved …." Motion at 2; Memorandum at 2. The Memorandum goes on to identify issues common to the 14 complaints listed in the Schedule of Actions, but no others. Memorandum at 4.

Accordingly, the PI Plaintiffs' motion to transfer does not encompass the Celebrex Marketing-and-Pricing Class Actions. For this reason, though the Celebrex Marketing-and-Pricing Plaintiffs would oppose any transfer of their actions for consolidation with the PI

---

[1] See, for example, Schedule of Actions Ex. 1 ¶¶ 7, 17, 20, 30, 33, 40, 44 (damages arising from heart attack triggered by ingesting Celebrex); Ex. 2 ¶¶ 8, 24, 34, 40, 45, 50 (same); Ex. 3 at p.1 & ¶¶ 7, 23, 35 (damages arising from heart attack triggered by ingesting Bextra and asserting class claims on behalf of Louisiana residents who "sustained injuries, including heart attack, stroke, blood clot related injuries and kidney damage"); Ex. 4 at p.1 & ¶¶ 7, 23, 35 (same); Ex. 5 at p.1 & ¶¶ 7, 23, 35  (same); Ex. 6 ¶¶ 7, 23, 33, 44, 49 (damages arising from heart attack triggered by ingesting Celebrex) ; Ex. 7 ¶¶ 7, 23, 34 (damages arising from numerous strokes triggered by ingesting Celebrex).

Jeffrey Kodroff
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
(215) 496-0300

*Attorneys for Plaintiffs Health Care for All,
Wisconsin Citizen Action, United Senior Action
of Indiana, Judith C. Meredith, Michelle
Madoff, Rose Lohman and Cavalier Homes, Inc.*

**3**

**BEFORE THE JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1691 |
| IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1693 |
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1699 |

**CELEBREX MARKETING AND PRICING PLAINTIFFS'
CONSOLIDATED RESPONSE TO MOTIONS TO
TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407**

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation and a notice dated May 13, 2005 from Michael J. Beck, Clerk of the Panel, plaintiffs Health Care for All, Wisconsin Citizen Action, United Senior Action of Indiana, Judith C. Meredith, Michelle Madoff, Rose Lohman, and Cavalier Homes, Inc. (the "Celebrex Marketing and Pricing Plaintiffs") hereby submit the following consolidated response to all pending motions for transfer and consolidation pursuant to 28 U.S.C. § 1407 in the above-referenced dockets.

## I.    INTRODUCTION

This proceeding poses the somewhat novel circumstance in which one company faces substantial legal claims simultaneously in multiple fora relating to two (similar, but different) pharmaceutical products.  If grouped into two separate "MDLs," each consolidated proceeding would present significant challenges to the parties and the transferee jurist – but complete separation might entail inefficiencies and perhaps inconsistent rulings due to overlapping discovery from the same units within the same drug company.  If grouped into a single, "super-MDL," significant efficiencies might be achieved – but the sheer size of the MDL, coupled with the multiplicity of separate issues affecting the different drugs (and different claims and different litigants, etc.), might cause it to become too burdensome or cumbersome and thereby be inefficient and slow in reaching justice for the parties.

This memorandum argues that judicial efficiency in the interests of justice are best served by taking the middle road:  the Panel should order the consolidation of the pending actions into two separate proceedings before two different jurists (one for Bextra, the other for Celebrex), but this panel ought *also* order coordination of discovery between the two proceedings, and since such coordination is best achieved within a single district, the Bextra MDL and the Celebrex MDL should be sent to the same district.

This memorandum also argues that the interests of justice and the efficient administration of the courts warrants transfer to the District of Massachusetts.  The District of Massachusetts has extensive experience managing consolidated multi-district litigation, an established track record of handling such litigation in an expeditious fashion, expertise in the area of consolidated multi-district litigation against major pharmaceutical companies, and a reasonable location for the parties and witnesses in this litigation (the defendants, Pharmacia Corp. and Pfizer, Inc., are centrally located in New Jersey and New York, respectively, and the research and development units are located in the Northeast Corridor).  Moreover, the District of Massachusetts has several judges who could accept one or both of these cases.  For example, Judge Young, who has substantial experience handling multidistrict litigation, does not currently have any such cases

and could conceivably take one or both of the consolidated actions. Judge Stearns, who is also experienced in handling multidistrict litigation, will soon be finishing up his only current multidistrict litigation case – *Lupron Marketing and Sales Practices Litigation*. Finally, Judge Woodlock, who also has only one multidistrict litigation case, is already the assigned Judge in *Health Care for All, et al. v. Pfizer, et al.*, No. 05-10707 RCL (D. Mass.), one of the Celebrex marketing and pricing class actions. For these and the other reasons set forth herein, the District of Massachusetts is the most appropriate forum for the consolidated Celebrex and Bextra lawsuits.

## II.    FACTS

### A.    Background

Celebrex belongs to a class of drugs known as COX-2 inhibitors. Defendants[1] launched Celebrex in early 1999 and promoted it as an alternative to older non-steroidal anti-inflammatory drugs ("NSAIDs"), such as ibuprofen and naproxen, which could provide pain relief without the adverse gastrointestinal side effects sometimes encountered with the older NSAIDs. Defendants promoted Celebrex as offering all of the benefits of less expensive NSAIDs with none of the drawbacks, thereby turning Celebrex into a blockbuster drug with billions of dollars in yearly sales. In reality, however, Celebrex has no proven superiority over other NSAIDs for most patients. As set forth in the complaint, defendants' marketing and promotion of Celebrex was merely part of an unlawful scheme to create demand for Celebrex by, among other things, manipulating and suppressing data showing that Celebrex had an unacceptably high risk of cardiovascular side effects such as heart attacks, strokes, unstable angina, cardiac clotting, and hypertension. Defendants aggressively promoted Celebrex claiming it had a lower risk of gastrointestinal ulcers and bleeding, allowing defendants to sell Celebrex at a premium price over other NSAIDs, but failed to adequately warn consumers about its other side effects.

---

[1]    The complaint names Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co. as defendants.

Defendants introduced Bextra, a second-generation COX-2 inhibitor, in late 2001. Like Celebrex, defendants promoted Bextra as an alternative to older NSAIDs that could provide pain relief without the adverse gastrointestinal side effects of traditional NSAIDs. Although Bextra also had an unacceptably high risk of cardiovascular and other side effects, defendants promoted Bextra as offering all of the benefits of less expensive NSAIDs with none of the drawbacks, thereby turning Bextra into a blockbuster drug as well.

Defendants' marketing and promotion of Bextra was part of an unlawful scheme to create demand for Bextra by, among other things, manipulating and suppressing data showing that Bextra had an unacceptably high risk of cardiovascular side effects such as heart attacks, strokes, unstable angina, cardiac clotting, and hypertension. Defendants aggressively promoted Bextra claiming it had a lower risk of gastrointestinal ulcers and bleeding, but failed to adequately warn consumers about its other side effects. As a result of their scheme, defendants were able to sell Bextra at a premium price over other NSAIDs and have it become a standard treatment option as opposed to less expensive NSAIDs.

**B.    The Celebrex Class Actions**

Following these events, the Celebrex Marketing and Pricing Plaintiffs filed the *Health Care for All, et al.* class action in the District of Massachusetts alleging a conspiracy to portray Celebrex as a drug possessing superior qualities to other NSAIDs and alleging a scheme to create consumer demand for Celebrex based on deceptive statements about Celebrex's safety and efficacy in order to obtain premium pricing for the drug. The Celebrex Marketing and Pricing Plaintiffs sought to recover damages on behalf of all persons (excluding those who assert personal injury claims) who paid part or all of the purchase price for Celebrex either on their own behalf or on behalf of someone else who ingested the drug. Several other class actions making similar allegations were also filed throughout the country. Accordingly, on April 25, 2005, the Celebrex Marketing and Pricing Plaintiffs moved to have all such class actions transferred to the District of Massachusetts for centralization with the *Health Care for All, et al.* class action. Although this motion did not request transfer and consolidation of the Celebrex

- 4 -

personal injury class actions, in light of the Panel's recent decision in *In re Neurontin Marketing and Sales Practices Litigation*, Docket No. 1629 (D. Mass. Apr. 19, 2005), the Celebrex Marketing and Pricing Plaintiffs believe that consolidation of such actions into the *Health Care for All, et al.* class action is now appropriate. In addition, given the similarities between the Celebrex and the Bextra litigation, the Bextra litigation should also be consolidated and transferred to the District of Massachusetts for separate but parallel proceedings.

## III.    LEGAL AUTHORITY

### A.    Transfer and Consolidation of The Celebrex Class Actions and the Bextra Class Actions for Coordinated Pretrial Proceedings is Appropriate

28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon a determination that (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the actions." The requirements for transferring the Celebrex litigation to the District of Massachusetts for consolidation with the *Health Care for All, et al.* class action are clearly met here. The Celebrex marketing and pricing class actions and personal injury class actions are characterized by a number of common questions of fact. Moreover, transfer and consolidation of all Celebrex litigation will promote convenience and efficiency for the parties by permitting the actions to proceed before a single transferee judge who can structure pretrial proceedings to suit all parties' discovery needs while eliminating duplicative discovery. For the same reasons, the requirements for transferring and consolidating all of the Bextra litigation are also met.

### 1.    The Actions Involve Common Questions of Fact

The factual issues in the Celebrex marketing and pricing class actions arise from the same course of conduct and, hence, are identical. *See In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004); *In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1371 (J.P.M.L. 2004). The same is true of the Bextra marketing and pricing class actions. Moreover, the Panel recently determined that the questions of fact at issue in the Neurontin

marketing and pricing class actions and the Neurontin personal injury class actions were sufficiently similar to warrant consolidation. *In re Neurontin Marketing and Sales Practices Litigation*, Docket No. 1629. The Celebrex marketing and pricing class actions and personal injury class actions are no different, nor are the Bextra marketing and pricing class actions and personal injury class actions. They each allege injuries and damages caused by misrepresentations concerning the safety and efficacy of either Celebrex or Bextra and, as such, present common questions of fact justifying transfer and consolidation.

      2.      **Consolidating the Class Actions Will Further the Convenience of the Parties and the Witnesses**

Consolidating the Celebrex personal injury class actions with the Celebrex marketing and pricing class actions will further the convenience of the parties and witnesses by streamlining discovery. Plaintiffs in each category of Celebrex litigation will likely seek the same discovery regarding defendants' testing protocol for Celebrex, defendants' knowledge of the risks posed by Celebrex, defendants' representations concerning the safety and efficacy of Celebrex, and other such matters. Separate litigation would result in duplicative discovery demands and redundant depositions. Consolidation will streamline pretrial procedures and minimize the inconvenience to the witnesses and expenses to the parties.

Consolidating the Bextra litigation in a parallel proceeding will further streamline these cases. Not only will it prevent defendants from having to defend in separate jurisdictions, it will also allow the parties to coordinate any overlapping discovery or other proceedings. As mentioned previously, however, while the Bextra litigation should be transferred to the same jurisdiction as the Celebrex litigation for parallel proceedings due to their similarities, their differences mandate separate consolidated actions. For instance, Celebrex and Bextra are similar in the following respects:

- They are both COX-2 inhibitors which reduce pain by selectively inhibiting the body's production of the COX-2 enzyme;

- They were both promoted as alternatives to older NSAIDs, providing all of the benefits of the older drugs but without the adverse gastrointestinal side effects sometimes encountered with older NSAIDs;

- They have similar, though not identical, side effects;

- Defendants manipulated and suppressed data regarding the side effects of each, thereby turning them into blockbuster drugs; and

- Neither drug has any proven superiority over other NSAIDs.

At the same time, however, they differ in the following respects:

- They have different chemical makeups;

- Celebrex is a first-generation COX-2 inhibitor, while Bextra is a second-generation COX-2 inhibitor;

- They were developed and launched more than two years apart;

- They have different absorption, distribution, and elimination rates; and

- Although their side effects are similar, studies have shown that Bextra increases patients' risk of heart attack and stroke by 50%, compared to 20% for Celebrex. In addition, life-threatening skin reactions, including Stevens-Johnson Syndrome and toxic epidermal necrolysis, are associated by Bextra.

Therefore, while coordinating the Celebrex litigation and the Bextra litigation will promote certain efficiencies with respect to each action, joining them into a single consolidated action would create tremendous confusion, causing the proceeding to become cumbersome and inefficient.

### 3.   Transfer and Consolidation Will Promote the Just and Efficient Conduct of the Related Actions

For the reasons set forth above, transferring and consolidating the Celebrex litigation and the Bextra litigation in parallel proceedings will promote the just and efficient conduct of the actions by minimizing duplicative discovery from plaintiffs with similar interests. Failing to consolidate the Celebrex and Bextra actions as proposed herein, or consolidating the four categories of litigation in any other form, will only result in duplicative discovery demands, redundant depositions, and other needless inefficiencies. For example, if the Panel consolidates the Celebrex and Bextra personal injury class actions in MDL-1691, defendants will have to answer discovery in that action regarding their representations and/or omissions concerning the risks associated with using both Celebrex and Bextra. Defendants will then be subject to similar, duplicative discovery requests from plaintiffs in the Celebrex and Bextra marketing and pricing

class actions. Witnesses will likewise be subject to duplicative depositions. On the other hand, if the Panel consolidates all of the class actions in MDL-1699 into one proceeding, plaintiffs in the different proceedings will become unnecessarily wrapped up in discovery and other issues that may not be relevant to their claims.

The only way to promote the just and efficient conduct of all actions is to consolidate the lawsuits in accordance with their common interests in discovery. In this case, that means consolidating the Celebrex personal injury actions with the Celebrex marketing and pricing actions, and the Bextra personal injury actions with the Bextra marketing and pricing actions. More specifically, the Panel should consolidate the actions in two proceedings and transfer those proceedings to the District of Massachusetts where they can proceed on parallel case schedules.

**B.     The District of Massachusetts Is The Proper Forum for Coordinated Pretrial Proceedings**

   **1.     The District of Massachusetts Has the Resources and Judicial Expertise to Properly Conduct This Case**

In selecting the most appropriate transferee forum for multidistrict litigation, the Panel considers the speed and efficiency with which alternative districts manage their respective caseloads. *See In re Preferential Drug Prods. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977) (transferring cases based in part upon transferee court's low median time between filing and disposition in civil actions); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (faster docket cited as reason for selecting transferee court). Here, this factor favors transferring the actions to the District of Massachusetts. For example, according to the Federal Court Management Statistics, in 2004 the median time span from filing to disposition for civil cases filed in the District of Massachusetts was only 9.4 months, with only 215 civil cases – 5.7 percent of its civil docket – older than 3 years. (Ex. 1 attached hereto.) This Panel has previously transferred to the District of Massachusetts complex, multi-party litigation partly in recognition that it is well-resourced to handle such litigation. *See, e.g., In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004); *In Re Immunex Corp.*

*Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378, 1381 (J.P.M.L. 2002); *In re Pharmatrak, Inc., Privacy Litig.*, 2001 U.S. Dist. Lexis 5228, at *3 (J.P.M.L. Apr. 18, 2001).[2]

Plaintiffs in *Alexander, et al. v. Pfizer, Inc.* and plaintiffs in *Gloria Ward v. Pfizer, Inc.* propose the Eastern District of Louisiana as a transferee forum, while plaintiffs in *Kaye, et al. v. Pfizer, Inc., et al.* propose the District of Connecticut. For the reasons set forth below, neither jurisdiction is appropriate.

Although the median filing-to-disposition time in the Eastern District of Louisiana is comparable to the District of Massachusetts, its percentage of civil cases over three years old is higher (6.9 percent) and rising rapidly. In the previous five years, that percentage ranged from .6 to 1.6, but the percentage doubled from 2002 to 2003 before rocketing to 6.9% in 2004. (Ex. 2 attached hereto.) In the District of Connecticut, the median filing-to-disposition time is 11.6 months, and its percentage of civil cases over three years old is 10.7 percent. These relevant statistics are set forth in the chart below:

| Transferee Jurisdiction | Median Time Span From Filing to Disposition of Civil Cases | Percent of Civil Docket Older Than 3 Years |
|---|---|---|
| District of Massachusetts | 9.4 months | 5.7% |
| Eastern District of Louisiana | 9.3 months | 6.9% |
| District of Connecticut | 11.6 months | 10.7% |

Thus, of the proposed transferee forums, the District of Massachusetts has the most efficient docket.

The expertise of a particular court in the areas of law and procedure governing the litigation is also an important factor. *See, e.g., In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 422-23 (D.D.C. 1991). The District of Massachusetts has extensive experience in

---

[2]  The Panel has long held this view of the District of Massachusetts. *See, e.g., In re Kauffman Mut. Fund Actions*, 337 F. Supp. 1337, 1340 (J.P.M.L. 1972) ("[t]he deciding factor in our estimation is the more current docket in the District of Massachusetts").

managing consolidated multi-district litigation. *See, e.g., In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d 1350 (J.P.M.L. 2004) (transferring action to District of Massachusetts); *In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383 (J.P.M.L. 2004) (same); *In re Carbon Black Antitrust Litig.*, 277 F. Supp. 2d 1380 (J.P.M.L. 2003) (same); *In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377 (J.P.M.L. 2002) (same); *In re Shell Oil Prods. Co. Dealer Franchise Litig.*, 206 F. Supp. 2d 1373 (J.P.M.L. 2002) (same); *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378 (J.P.M.L. 2002) (same); *In re Lupron Mktg. & Sales Practices Litig.*, 180 F. Supp. 2d 1376 (J.P.M.L. 2001) (same); *In re Pharmatrak, Inc., Privacy Litig.*, 2001 U.S. Dist. Lexis 5228 (J.P.M.L. Apr. 18, 2001) (same).[3]  Indeed, the Panel has specifically recognized that the District of Massachusetts is equipped with the resources necessary to manage substantial consolidated multi-district litigation. *See, e.g., Columbia Univ. Patent Litig.*, 313 F. Supp. 2d at 1385; *Carbon Black Antitrust Litig.*, 277 F. Supp. 2d at 1381; *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d at 1381; *In re Pharmatrak, Inc., Privacy Litig.*, 2001 U.S. Dist. Lexis 5228, at *3.  The Panel has also regularly transferred to the District of Massachusetts multi-district litigation that, like the present cases, challenges overpricing conduct by major pharmaceutical corporations. *See, e.g., In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d at 1381; *In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377 (J.P.M.L. 2002) (related case); *In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d at 1351; *In re Lupron Mktg. & Sales Practices Litig.*, 180 F. Supp. 2d at 1377 (fraudulent marketing, sales and billing scheme).  The following chart sets forth just a few of the multidistrict pharmaceutical marketing and pricing matters handled recently by the District of Massachusetts:

---

[3]  *See also In re Air Crash near Edgartown*, 269 F. Supp. 2d 1370 (J.P.M.L. 2003) (same); *In re Xcelera.com Inc.*, 2000 U.S. Dist. Lexis 18557 (J.P.M.L. Dec. 18, 2000) (same); *In re Citigroup, Inc. Capital Accumulation Plan Litig.*, 2000 U.S. Dist. Lexis 12561 (J.P.M.L. Aug. 29, 2000) (same); *In re Nabumetone Patent Litig.*, 1998 U.S. Dist. Lexis 13735 (J.P.M.L. Sept. 2, 1998) (same); *In re Summit Tech. Sec. Litig.*, 1997 U.S. Dist. Lexis 15778 (J.P.M.L. Oct. 9, 1997) (same); *In re Computervision Corp. Sec. Litig.*, 814 F. Supp. 85 (J.P.M.L. 1993) (same).

| Case Name | Description |
|---|---|
| *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, C.A. No. 97-10814-WGY, Young, J. | Defendant's hormone product designed to stimulate production of red blood cells infringed on the claims asserted by the patentee because, *inter alia*, the written description was adequate and the reverse doctrine of equivalents did not apply. |
| *Eon Labs., Inc. v. SmithKline Beecham Corp.*, C.A. No. 03-10506-WGY, Young, J. | Generic manufacturer of Relafen claimed that but for the original patent owner's wrongful filing of patent lawsuits, it could have entered the market for the generic product six months after the first generic applicant received tentative approval. |
| *In re Immunex Corp. Average Wholesale Price Litig.*, C.A. 01-12257-PBS, Saris, J. | Plaintiffs alleged that the companies unlawfully inflated the average wholesale price of Medicare-covered prescription drugs in order to increase sales to health care professionals. |
| *In re Lupron Mktg. & Sales Practices Litig.*, C.A. No. 01-10861-RGS, Stearns, J. | Plaintiffs alleged that the company jointly (with the corporation and defendant business) determined the price at which the medication would have been sold by the corporation, and was actively involved in various marketing schemes. |
| *In re Neurontin Mktg. & Sales Practices Litig.*, C.A. 04-10981-PBS, Saris, J. | This class action seeks to recover billions of dollars paid by Plaintiffs' to Defendants as a result of Defendants' alleged fraudulent scheme to market and sell the drug Neurontin for a variety of uses for which it is neither approved, nor medically efficacious. |
| *In re Pharm. Indus. Average Wholesale Price Litig.*, C.A. No. 01-12257-PBS, Saris, J. | In this massive proposed class action, Plaintiffs allege that forty-two pharmaceutical companies fraudulently overstate the published average wholesale prices of many of their prescription drugs, which results in inflated payments for such drugs by consumers and beneficiaries of the federal Medicare Part B program (through co-payments), private health and welfare plans, health insurers, self-insured employers and other end-payors for prescription drugs. |
| *In re Pharmatrak, Inc., Privacy Litig.*, Civil Action No. 00-11672-JLT, Tauro, J. | Plaintiffs, in this consolidated class action, sued Pharmatrak, Inc. and numerous pharmaceutical companies, alleging that they secretly intercepted and accessed Plaintiffs' personal information through the use of computer "cookies" and other devices, in violation of state and federal law. |
| *In re Relafen Antitrust Litig.*, C.A. No. 01-12239-WGY, Young, J. | This case is a consolidated action against SmithKline Beecham Corporation and GlaxoSmithKline PLC by multiple parties. The plaintiffs include SmithKline competitor Eon Labs; pharmaceutical wholesalers that purchased Relafen directly from SmithKline ("direct purchasers"); drugstores that indirectly purchased Relafen and the generic drug nabumetone for resale ("drugstore plaintiffs"); and parties that purchased nabumetone from sources other than SmithKline for purposes other than resale ("end payors") |

| | |
|---|---|
| *J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc.*; C.A. No. 98-12635-WGY, Young, J. | The action concerned a managed care pharmacy participation agreement under which plaintiff pharmacies were forced to operate if they were to provide any level of services to HMO clients. |
| *United States ex rel. Franklin v. Parke-Davis*, C.A. 96-11651-PBS, Saris, J. | In this *Qui tam* action, a former employee stated that promotion of the drug Neurontin resulted in federal reimbursement payments for drug prescriptions that were ineligible under Medicaid |
| *United States v. TAP Pharmaceuticals Products Inc*, C.A. No. 01-10354-WGY, Young, J. | A major pharmaceutical manufacturer that is a joint venture between Abbott Laboratories and Takeda Chemical Industries, Ltd., agreed on October 3, 2001 to pay $875 million to settle criminal charges and civil liabilities with regard to its pricing and marketing of the drug Lupron. |
| *United States v. Warner-Lambert Company LLC*, C.A. No. 04-10150-RGS, Stearns, J. | Warner-Lambert Company LLC settled criminal and civil claims related to the promotion and marketing of Neurontin (gabapentin) by its Parke-Davis Division. Warner-Lambert plead guilty to all of the allegations set out in a Criminal Information and to two felony violations of the Food, Drug, and Cosmetic Act. |

The District of Massachusetts thus has an established track record of managing this type of complex litigation, and particular expertise with regard to multidistrict pharmaceutical litigation. Although, as the *Alexander* plaintiffs point out, the District of Massachusetts currently has 11 MDL actions pending, whereas the Eastern District of Louisiana has only five, this merely illustrates the extensive resources of the District of Massachusetts as compared to the Eastern District of Louisiana.

The fact that there are at least three judges in the District of Massachusetts ready to accept one or both of these multidistrict litigations further supports transferring these cases to that jurisdiction. As stated previously, one experienced judge, Judge Young, currently has no multidistrict litigation cases. Two others, Judges Stearns and Judge Woodlock, have only one multidistrict litigation case each, and Judge Stearns will soon finish his only case.

Moreover, the litigation pending in the District of Massachusetts, *Health Care for All, et al.*, is already a consolidated lawsuit. The seven plaintiffs in that lawsuit are located in five different states. Plaintiffs Health Care for All and Judith C. Meredith reside (or have their principal place of business) in the Commonwealth of Massachusetts (*see* Exhibit B to the Schedule of Actions Involved Pursuant to 28 U.S.C. § 1407 filed by Plaintiffs Health Care for

All, *et al.* on April 25, 2005, ¶¶ 12, 15); Wisconsin Citizen Action is a consumer-health

advocacy organization located, of course, in Wisconsin (*id.* at ¶ 13); Plaintiff United Senior

Action of Indiana is a consumer-health advocacy organization located in Indiana (*id.* at ¶ 14);

Plaintiff Michelle Madoff is a resident of the State of Arizona (*id.* at ¶ 16); Plaintiff Rose

Lohman is a resident of the State of Wisconsin (*id.* at ¶ 17); and Plaintiff Cavalier Homes, Inc.

has its principal place of business in Alabama (*id.* at ¶ 18). Cavalier Homes originally filed its

own complaint in the State of Alabama but subsequently joined the present action; its original

complaint has been dismissed. Thus, consolidation of additional Celebrex actions into this

consolidated lawsuit would be appropriate.

### 2. The District of Massachusetts Is a Convenient Forum for the Parties and Witnesses

The convenience of the parties and witnesses is another important factor in determining

to which district related actions should be transferred. 28 U.S.C. § 1407(a) (related actions may

be transferred to a district for coordinated proceedings upon a determination that the transfer

"will be for the convenience of parties and witnesses and will promote the just and efficient

conduct of such actions"). In deciding whether a particular forum is convenient, the Panel

frequently considers the location of the parties, documents, and potential witnesses relative to

that district. *See In re Cigarette Antitrust Litig.*, 2000 U.S. Dist. Lexis 8209, at *4 (J.P.M.L. June

7, 2000). The District of Massachusetts is centrally located and readily accessible, making it

convenient for the parties and witnesses and thus a preferable forum for this litigation. Indeed,

two of the defendants, Pharmacia Corp. and Pfizer, Inc., are located in close proximity to the

district (New Jersey and New York, respectively) and, in light of Boston's major airports and

high-speed trains that serve as a transportation hub for the region, parties traveling by air or rail

will have easy access to the district court. By contrast, the Eastern District of Louisiana is

located extremely far away from both Pfizer, Inc. and Pharmacia Corp., and thus many of the

likely witnesses in these cases. Accordingly, transferring these actions to the Eastern District of

Louisiana would not only make the litigation extremely inconvenient for the majority of the

parties and the witnesses, it would unnecessarily increase the expense of the litigation by forcing the parties and the witnesses to engage in extensive travel. With regard to the District of Connecticut, although it is more centrally located, once again, the inefficiency of its docket makes it a poor forum for this litigation.

As the above illustrates, all relevant factors strongly support transfer of the Celebrex litigation and the Bextra litigation to the District of Massachusetts for separate but parallel proceedings.

## C.    The Southern District of Florida and the District of Delaware Offer Alternative Forums for Coordinated Pretrial Proceedings

### 1.    The Southern District of Florida is an Appropriate Transferee Forum

As an alternative, the Celebrex Marketing and Pricing Plaintiffs would also support transfer to the Southern District of Florida at Miami. As demonstrated by its caseload statistics (Ex. 3 attached hereto), that District appears to have a well-managed docket capable of ensuring expeditious resolution of this multi-party litigation. The Southern District of Florida, while possessing the resources necessary to oversee a complex multi-party action such as this, is under-utilized as a transferee court for centralized proceedings. As this Panel recognized in *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1380 (J.P.M.L. 2001), this alone can be reason to transfer multidistrict actions to such districts for centralization:

> centralization in this district permits the Panel to effect the Section 1407 assignment to a major metropolitan court that i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.

In addition to having a well-managed docket, there is already a Celebrex marketing and pricing class action filed in the Southern District of Florida, *Balloveras v. Pfizer, et al.*, No. 05-20429, before Judge Jordan, who does not currently have any MDL cases pending before him. Moreover, defendants have already filed an answer in that matter, and Judge Jordan has already entered an Order Setting Schedule, Requiring Mediation, and Referring Certain Motions to Magistrate Judge. Therefore, consolidating the Celebrex litigation with the *Balloveras* case in

the Southern District of Florida, before Judge Jordan, makes sense, as does transferring the Bextra litigation to the same jurisdiction for parallel proceedings.

### 2.    The District of Delaware is an Appropriate Transferee Forum

As a second alternative, the Celebrex Marketing and Pricing Plaintiffs would also support a transfer to the District of Delaware. As demonstrated by its caseload statistics (Ex. 3 attached hereto), only 3.4 percent of that district's civil docket is older than three years. This reflects an extremely efficient docket, well-suited to handle this litigation.

## IV.    CONCLUSION

Consolidation of the Celebrex litigation and the Bextra litigation is necessary to avoid duplication and wasted efforts. Transfer to the District of Massachusetts is appropriate because one of the cases was filed there, the District of Massachusetts has the resources and judicial expertise to promptly and efficiently conduct this case, and the District of Massachusetts is centrally located to all the parties. Accordingly, plaintiffs respectfully ask the Panel to consolidate all of the Celebrex litigation and all of the Bextra litigation in two separate lawsuits and to then transfer those lawsuits to the District of Massachusetts for parallel proceedings.

DATED this 1st day of June, 2005.

HAGENS BERMAN SOBOL SHAPIRO LLP


By _____
Steve W. Berman, WSBA #12536
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, Fourth Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
tom@hbsslaw.com

Garve Ivey, Jr.
Barry A. Ragsdale
William Adair, Jr.
IVEY & RAGSDALE
P.O. Box 1349
315 West 19th Street
Jasper, AL 35502-1349
Telephone: (205) 221-4644
garve@iveyragsdale.com

Jonathan B. Lowe
LOWE MOBLEY & LOWE
P.O. Box 576
Haleyville, AL 35575-0576
Telephone: (205) 486-5296

Jeffrey Kodroff
SPECTOR, ROSEMAN, & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

*Attorneys for Plaintiffs Health Care for All,
Wisconsin Citizen Action, United Senior Action
of Indiana, Judith C. Meredith, Michelle
Madoff, Rose Lohman and Cavalier Homes, Inc.*

**1**

Judicial Caseload Profile Report

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| MASSACHUSETTS | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 3,819 | 3,720 | 3,765 | 3,276 | 3,651 | 3,770 | U.S. | Circuit |
| | Terminations | | 3,683 | 3,513 | 3,565 | 3,470 | 3,501 | 3,842 | | |
| | Pending | | 4,496 | 4,416 | 4,300 | 4,126 | 4,275 | 4,117 | | |
| | % Change in Total Filings | Over Last Year | | 2.7 | | | | | 38 | 2 |
| | | Over Earlier Years | | | 1.4 | 16.6 | 4.6 | 1.3 | 64 | 3 |
| | Number of Judgeships | | 13 | 13 | 13 | 13 | 13 | 13 | | |
| | Vacant Judgeship Months** | | 8.0 | 7.0 | .0 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 294 | 285 | 289 | 252 | 281 | 290 | 83 | 2 |
| | | Civil | 255 | 246 | 243 | 222 | 249 | 258 | 74 | 2 |
| | | Criminal Felony | 27 | 31 | 38 | 30 | 32 | 32 | 93 | 5 |
| | | Supervised Release Hearings** | 12 | 8 | 8 | - | - | - | 72 | 2 |
| | Pending Cases | | 346 | 340 | 331 | 317 | 329 | 317 | 65 | 1 |
| | Weighted Filings** | | 349 | 344 | 354 | 322 | 364 | 347 | 74 | 1 |
| | Terminations | | 283 | 270 | 274 | 267 | 269 | 296 | 85 | 3 |
| | Trials Completed | | 17 | 15 | 15 | 12 | 13 | 14 | 58 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 14.9 | 14.3 | 13.4 | 13.2 | 12.6 | 12.4 | 94 | 5 |
| | | Civil** | 9.4 | 10.7 | 11.5 | 10.2 | 10.2 | 10.9 | 42 | 3 |
| | From Filing to Trial** (Civil Only) | | 31.7 | 28.5 | 25.5 | 23.8 | 26.4 | 23.0 | 75 | 4 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 215 | 198 | 229 | 275 | 260 | 160 | | |
| | | Percentage | 5.7 | 5.4 | 6.3 | 7.7 | 7.0 | 4.4 | 68 | 4 |
| | Average Number of Felony Defendants Filed Per Case | | 1.5 | 1.4 | 1.6 | 1.6 | 1.5 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 47.60 | 49.14 | 46.26 | 51.51 | 44.40 | 41.94 | | |
| | | Percent Not Selected or Challenged | 27.5 | 33.4 | 23.2 | 26.2 | 14.8 | 15.2 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3312 | 97 | 24 | 424 | 43 | 34 | 269 | 503 | 581 | 223 | 492 | 10 | 612 |
| Criminal* | 351 | 29 | 8 | 46 | - | 22 | 96 | ** | 4 | 91 | - | 14 | 41 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

**2**

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **LOUISIANA EASTERN** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 3,783 | 3,990 | 4,187 | 3,933 | 4,054 | 4,211 | U.S. | Circuit |
| | Terminations | | 3,584 | 3,883 | 3,834 | 4,028 | 4,133 | 4,337 | | |
| | Pending | | 3,526 | 3,324 | 3,213 | 2,855 | 2,935 | 3,012 | | |
| | % Change in Total Filings | Over Last Year | | -5.2 | | | | | 71 | 5 |
| | | Over Earlier Years | | | -9.7 | -3.8 | -6.7 | -10.2 | 81 | 8 |
| | Number of Judgeships | | 12 | 12 | 12 | 12 | 12 | 12 | | |
| | Vacant Judgeship Months** | | .0 | .0 | 12.1 | 14.7 | .0 | .4 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 316 | 332 | 348 | 328 | 338 | 351 | 80 | 9 |
| | | Civil | 283 | 297 | 315 | 304 | 313 | 326 | 67 | 8 |
| | | Criminal Felony | 25 | 27 | 26 | 24 | 25 | 25 | 94 | 9 |
| | | Supervised Release Hearings** | 8 | 8 | 7 | - | - | - | 89 | 8 |
| | Pending Cases | | 294 | 277 | 268 | 238 | 245 | 251 | 79 | 9 |
| | Weighted Filings** | | 314 | 320 | 339 | 306 | 322 | 340 | 83 | 9 |
| | Terminations | | 299 | 324 | 320 | 336 | 344 | 361 | 79 | 9 |
| | Trials Completed | | 12 | 13 | 12 | 13 | 17 | 17 | 80 | 9 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 6.8 | 7.2 | 7.2 | 7.7 | 8.1 | 7.2 | 27 | 4 |
| | | Civil** | 9.3 | 9.8 | 8.7 | 9.7 | 9.4 | 9.5 | 38 | 5 |
| | From Filing to Trial** (Civil Only) | | 16.2 | 17.4 | 16.4 | 18.3 | 17.4 | 17.0 | 10 | 2 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 225 | 40 | 21 | 16 | 30 | 45 | | |
| | | Percentage | 6.9 | 1.3 | .7 | .6 | 1.1 | 1.6 | 76 | 8 |
| | Average Number of Felony Defendants Filed Per Case | | 1.7 | 1.5 | 1.5 | 1.5 | 1.7 | 1.8 | | |
| | Jurors | Avg. Present for Jury Selection | 27.30 | 28.51 | 27.28 | 30.81 | 23.33 | 22.30 | | |
| | | Percent Not Selected or Challenged | 28.8 | 30.6 | 26.5 | 32.4 | 23.1 | 14.9 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3393 | 121 | 9 | 581 | 12 | 41 | 141 | 491 | 1259 | 48 | 444 | 4 | 242 |
| Criminal* | 299 | 22 | 7 | 73 | 2 | 10 | 94 | ** | 6 | 42 | 3 | 10 | 30 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# 3

Judicial Caseload Profile Report                                           Page 1 of 1

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **FLORIDA SOUTHERN** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 8,479 | 9,058 | 9,490 | 10,790 | 9,875 | 8,424 | U.S. | Circuit |
| | Terminations | | 8,904 | 9,370 | 9,797 | 10,170 | 8,635 | 8,671 | | |
| | Pending | | 7,302 | 7,788 | 8,203 | 9,099 | 8,426 | 7,177 | | |
| | % Change in Total Filings | Over Last Year | | -6.4 | | | | | 78 | 7 |
| | | Over Earlier Years | | | -10.7 | -21.4 | -14.1 | .7 | 66 | 4 |
| Number of Judgeships | | | 18 | 18 | 17 | 17 | 16 | 16 | | |
| Vacant Judgeship Months** | | | 7.5 | 12.8 | 29.5 | 21.5 | 10.1 | 13.5 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 470 | 503 | 559 | 635 | 617 | 527 | 47 | 5 |
| | | Civil | 373 | 396 | 441 | 527 | 512 | 434 | 42 | 6 |
| | | Criminal Felony | 79 | 90 | 103 | 108 | 105 | 93 | 36 | 2 |
| | | Supervised Release Hearings** | 18 | 17 | 15 | - | - | - | 46 | 5 |
| | Pending Cases | | 406 | 433 | 483 | 535 | 527 | 449 | 47 | 5 |
| | Weighted Filings** | | 513 | 558 | 606 | 667 | 666 | 571 | 39 | 5 |
| | Terminations | | 495 | 521 | 576 | 598 | 540 | 542 | 38 | 3 |
| | Trials Completed | | 20 | 21 | 23 | 23 | 31 | 34 | 41 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 6.1 | 6.2 | 6.5 | 6.3 | 7.2 | 7.1 | 15 | 1 |
| | | Civil** | 6.3 | 6.3 | 7.7 | 7.3 | 8.7 | 10.4 | 5 | 1 |
| | From Filing to Trial** (Civil Only) | | 18.0 | 18.3 | 15.0 | 19.3 | 19.8 | 19.8 | 16 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 1,047 | 714 | 223 | 278 | 227 | 188 | | |
| | | Percentage | 16.7 | 10.6 | 3.2 | 3.8 | 3.3 | 3.3 | 89 | 9 |
| | Average Number of Felony Defendants Filed Per Case | | 1.7 | 1.6 | 1.5 | 1.5 | 1.6 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 42.54 | 44.00 | 42.51 | 45.57 | 43.59 | 43.10 | | |
| | | Percent Not Selected or Challenged | 19.2 | 23.8 | 22.8 | 28.8 | 26.5 | 30.4 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6720 | 112 | 368 | 1230 | 104 | 70 | 1251 | 837 | 679 | 244 | 956 | 8 | 861 |
| Criminal* | 1413 | 234 | 18 | 105 | 10 | 36 | 505 | ** | 21 | 281 | 9 | 16 | 178 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# 4

## BEFORE THE JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1691 |
| IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1693 |
| IN RE CELEBREX MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1694 |
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1699 |

## CELEBREX MARKETING AND PRICING PLAINTIFFS' CONSOLIDATED REPLY TO RESPONSES TO MOTIONS TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, plaintiffs Health Care for All, Wisconsin Citizen Action, United Senior Action of Indiana, Judith C. Meredith, Michelle Madoff, Rose Lohman, and Cavalier Homes, Inc. (the "Celebrex Marketing and Pricing Plaintiffs") hereby submit the following reply to all responses to the motions for transfer and consolidation pursuant to 28 U.S.C. § 1407 in the above-referenced dockets.

mischaracterizes the differences between securities-related actions and the actions herein. As discussed more fully below, the distinctions between such actions justify, indeed compel their separation.

Finally, the District of Massachusetts stands out as the most appropriate jurisdiction for the consolidated proceedings. The District of Massachusetts has extensive experience managing consolidated multi-district litigation against major pharmaceutical companies, an efficient docket, a central location, and several judges who could accept the proceedings. In addition, Boston's major airports and high speed trains, which serve as a transportation hub for the region, make it easily accessible by air and by rail, and Boston has numerous hotels and other accommodations for travelers. Therefore, the Panel should grant the Celebrex Marketing and Pricing Plaintiffs' motion for consolidation, consolidate the Celebrex litigation and the Bextra litigation into separate proceedings, and transfer both proceedings to the District of Massachusetts.

## II.    LEGAL AUTHORITY

### A.    The Celebrex Litigation and Bextra Litigation Should Be Consolidated Into Two Separate Proceedings

Consolidation and transfer is only appropriate if it would further the convenience of the parties and promote the just and efficient conduct of the actions. 28 U.S.C. § 1407. In this case, consolidating Celebrex litigation and Bextra litigation into the same proceeding would do neither. Celebrex and Bextra are different drugs with different chemical makeups and side effects, as illustrated by the fact that Celebrex is still on the market while Bextra was withdrawn due to an unfavorable risk/benefit profile. Defendants concede that continued sales of Celebrex may affect discovery in the Celebrex litigation, and this may cause delays or other unique circumstances with respect to the Celebrex litigants' claims. Although Celebrex and Bextra were manufactured and sold by the same defendants and they share a number of other similarities, discovery regarding the two drugs will likely differ. Therefore, consolidating the Celebrex litigation and the Bextra litigation into the same proceeding could unnecessarily involve litigants

in matters that are unrelated to their claims, or subject them to delay while such matters are resolved.

By contrast, consolidating the Celebrex litigation into one proceeding and the Bextra litigation into another will allow the parties to resolve their unique issues separately, without disrupting or delaying the other proceeding. Moreover, transferring the two proceedings to the same district will promote the just and efficient conduct of the actions by minimizing duplicative discovery on similar issues. In other words, consolidating these actions in the form proposed by the Celebrex Marketing and Pricing Plaintiffs will allow them to proceed in a coordinated fashion where they share similar interests, without forcing them to become involved in or delayed by unrelated issues.

Defendants' suggestion that the personal injury actions merit individual treatment is incorrect, and contrary to the prior decisions of the Panel. In both *In re Vioxx Prods. Liab. Litig.*, Docket No. 1657 (J.P.M.L. Feb. 16, 2005) and *In re Neurontin Mktg. & Sales Practices Litig.*, Docket No. 1629 (J.P.M.L. Apr. 19, 2005), the Panel consolidated personal injury actions with marketing and pricing actions. Although causation may differ in some personal injury cases, the similarities between the majority of the cases herein far outweigh any differences that might exist. Moreover, the transferee court can implement procedures to deal with any causation issues that arise. This is certainly preferable to instituting hundreds of virtually identical lawsuits throughout the country, wasting judicial resources, and forcing witnesses to submit to duplicative document requests and depositions.

Ultimately, given the facts and circumstances of the actions herein, creating two consolidated proceedings, one for Celebrex and one for Bextra, is the most logical and efficient way to proceed with these cases. Any other form of consolidation will unnecessarily delay certain litigants' claims and promote duplicative discovery.

**B.    These Proceedings Should Not Be Consolidated With the Securities-Related Proceedings**

Securities cases are inherently and substantially different from these proceedings in a number of material respects. First, in this instance, the securities cases were brought on behalf of Pfizer, Inc.'s investors, who are interested in maximizing profits. The Celebrex and Bextra marketing and pricing actions, however, are brought on behalf of individuals who paid an unlawful price for the drugs, and who seek to extract unfairly gained profits from defendants. Accordingly, the relief sought by the marketing and pricing plaintiffs is precisely opposite that sought by the securities plaintiffs.

Second, because securities claims are subjected to a heightened pleading standard, securities cases proceed on a vastly different civil schedule than most cases. Most notably, the Private Securities Litigation Reform Act ("PSLRA") provides for an automatic stay of discovery in federal securities actions where a defendant files a motion to dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(B). By its terms, however, the PSLRA mandatory discovery stay applies only to federal securities cases. *Id.* Even a derivative action that stems from the same conduct as a federal securities action is not subject to the discovery stay, despite the fact that the plaintiffs in such an action might be seeking the same discovery that the securities plaintiffs are precluded from obtaining. *See In re Gilead Scis. Sec. Litig.*, No. C 03-4999 MJJ, 2004 U.S. Dist. LEXIS 27309 (N.D. Cal. Nov. 18, 2004). Although courts have the authority to stay discovery in such instances, they will not do so absent evidence of collusion between the securities plaintiffs and the plaintiffs seeking discovery, or some other evidence that the securities plaintiffs are attempting to circumvent the PSLRA discovery stay. *Id.*

In the present case, contrary to what defendants might argue, there is no evidence that would lead a judge to stay discovery in the marketing and pricing actions. And, not surprisingly, none of the cases cited by defendants support the proposition that marketing and pricing actions and related RICO actions should be consolidated, or even coordinated, with securities actions. Instead, three of defendants' cases involved requests to consolidate and centralize securities,

multi-district litigation cases. Two others, Judge Stearns and Judge Woodlock, are currently presiding over one multi-district litigation proceeding each, and Judge Stearns will soon finish his single proceeding. Finally, with a median filing-to-disposition time of just 9.4 months, and just 5.7% of its civil docket older than three years, the District of Massachusetts has one of the most efficient dockets of any proposed transferee forum. These three factors tip the scales in favor of transferring these consolidated proceedings to the District of Massachusetts. No other proposed transferee forum has an equivalent balance of experience, resources, and docket efficiency.

Although other proposed forums, such as the Southern District of New York, have resources and transportation facilities similar to those in the District of Massachusetts, 11.6% of the cases in the Southern District of New York are more than three years old, reflecting an overloaded and inefficient docket. The Southern District of New York is also an inappropriate forum due to the pending securities, ERISA, and derivative litigation consolidated therein. Since those actions must remain separate from the present actions, and coordination of discovery would be improper, transferring these proceedings to an entirely separate district makes sense.

The District of New Jersey, on the other hand, has a similarly efficient docket, but lacks the resources and expertise found in the District of Massachusetts, which has been recognized by the Panel as being well-resourced to handle complex, multi-district litigation. *See, e.g., In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004); *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378, 1381 (J.P.M.L. 2002); *In re Pharmatrak, Inc., Privacy Litig.*, Docket No. 1400, 2001 U.S. Dist. Lexis 5228, at *3 (J.P.M.L. Apr. 18, 2001).[1]

Alternatively, the Southern District of Florida and the District of Delaware would also be appropriate fora for these proceedings. In addition to having a well-managed docket and the

---

[1]  The Panel has long held this view of the District of Massachusetts. *See, e.g., In re Kauffman Mut. Fund Actions*, 337 F. Supp. 1337, 1340 (J.P.M.L. 1972) ("[t]he deciding factor in our estimation is the more current docket in the District of Massachusetts").

resources to handle this litigation, there is already a Celebrex marketing and pricing class action filed in the Southern District of Florida, *Balloveras v. Pfizer, Inc., et al.*, No 05-20429, before Judge Jordan, and this case has advanced as far or further than any other Celebrex marketing and pricing case in the country. Not only have the defendants answered the complaint, but Judge Jordan has entered an Order Setting Schedule, Requiring Mediation, and Referring Certain Motions to Magistrate Judge, and the parties are now ready to begin discovery. Therefore, consolidating the Celebrex litigation with the *Balloveras* case in the Southern District of Florida makes sense, and because the Bextra litigation should be coordinated with the Celebrex litigation, it too could be consolidated in that district.

With regard to the District of Delaware, it also has the resources to handle this litigation, and one of the most efficient dockets of any proposed transferee jurisdiction. Only 3.4% of that district's docket is older than three years, which means that the litigants herein would be likely to achieve an efficient resolution of their claims in the District of Delaware.[2]

### III.    CONCLUSION

For all of the foregoing reasons, the Panel should grant the Celebrex Marketing and Pricing Plaintiffs' motion for consolidation, consolidate the Celebrex litigation and the Bextra litigation into separate proceedings, and transfer both proceedings to the District of Massachusetts.

DATED this 8th day of June, 2005.

---

[2] The Northern District of California, where another Celebrex marketing and pricing action was filed, *Julie Swan, et al. v. Pfizer, Inc., et al.*, No. 05-00834, would also serve as a better forum than either the Southern District of New York or the District of New Jersey. Only 6.9% of the cases in the Northern District of California are more than three years old, compared to a relatively high 11.6% for the Southern District of New York. Moreover, the Northern District of California lacks the harsh weather that is common in New York and New Jersey.

HAGENS BERMAN SOBOL SHAPIRO LLP


By _____
Steve W. Berman, WSBA #12536
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, Fourth Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
tom@hbsslaw.com

Garve Ivey, Jr.
Barry A. Ragsdale
William Adair, Jr.
IVEY & RAGSDALE
P.O. Box 1349
315 West 19th Street
Jasper, AL 35502-1349
Telephone: (205) 221-4644
garve@iveyragsdale.com

Jonathan B. Lowe
LOWE MOBLEY & LOWE
P.O. Box 576
Haleyville, AL 35575-0576
Telephone: (205) 486-5296

Jeffrey Kodroff
SPECTOR, ROSEMAN, & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

*Attorneys for Plaintiffs Health Care for All,
Wisconsin Citizen Action, United Senior Action
of Indiana, Judith C. Meredith, Michelle
Madoff, Rose Lohman and Cavalier Homes, Inc.*

# 5

**BEFORE THE JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1691 |
| IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1693 |
| IN RE CELEBREX MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1694 |
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1699 |

**SWAN PLAINTIFFS' JOINDER IN THE CELEBREX MARKETING AND PRICING PLAINTIFFS' CONSOLIDATED RESPONSE TO MOTIONS TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407**

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation and a notice dated May 13, 2005 from Michael J. Beck, Clerk of the Panel, plaintiffs Julie Swan, Beatrice Howard, Sarah Hare, Georgia Katsanos, and the California Public Interest Research Group, Inc. (the "Swan Plaintiffs") hereby join in the Celebrex Marketing and Pricing Plaintiffs' Consolidated Response to Motions to Transfer and Consolidate Pursuant to 28 U.S.C. § 1407.

Like the Celebrex Marketing and Pricing Plaintiffs, the Swan Plaintiffs assert claims based on fraudulent and misleading advertising and packaging materials for Celebrex by Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co.  The Swan Plaintiffs allege that defendants'

1682.15 0010 MTN.DOC

unlawful scheme allowed them to sell Celebrex at a premium price over older, comparable drugs and have it become a new standard treatment option.

For the reasons set forth in the Celebrex Plaintiffs' consolidated response, the Swan Plaintiffs also believe that the Celebrex litigation and the Bextra litigation should be consolidated into two separate proceedings and transferred to the same district so that discovery and other matters can be coordinated. The Swan Plaintiffs further believe that the District of Massachusetts is the most suitable forum for such litigation due to its extensive experience in handling consolidated multi-district litigation, its expertise in the area of consolidated multi-district litigation against major pharmaceutical companies, and its central location to the parties and witnesses in this litigation (the defendants, Pharmacia Corp. and Pfizer, Inc., are centrally located in New Jersey and New York, respectively, and the research and development units are located in the Northeast Corridor).

Alternatively, the Swan Plaintiffs support transferring the litigation to the Southern District of Florida, where a Celebrex marketing and pricing class action pending before Judge Jordan, *Balloveras v. Pfizer, et al.*, No. 05-20429, has already been assigned a case schedule, or the District of Delaware, which is also centrally located to the parties and witnesses in these actions and which has an exceptionally efficient docket.

The Swan Plaintiffs otherwise join in all other aspects of the Celebrex Marketing and Pricing Plaintiffs' Consolidated Response to Motions to Transfer and Consolidate Pursuant to 28 U.S.C. §1407.

DATED this 1st day of June, 2005.

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____

Steve W. Berman
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292

ELAINE T. BYSZEWSKI
HAGENS BERMAN SOBOL SHAPIRO LLP
700 South Flower Street, Suite 2940
Los Angeles, CA  90017-4101
Telephone:  (213) 330-7150

THOMAS M. SOBOL
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone:  (617) 482-3700

Attorneys for Swan Plaintiffs

**6**

# BEFORE THE JUDICIAL PANEL

# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1691 |
| IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1693 |
| IN RE CELEBREX MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1694 |
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1699 |

## SWAN PLAINTIFFS' JOINDER IN THE CELEBREX MARKETING AND PRICING PLAINTIFFS' CONSOLIDATED REPLY TO RESPONSES TO MOTIONS TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict

Litigation, plaintiffs Julie Swan, Beatrice Howard, Sarah Hare, Georgia Katsanos, and the

California Public Interest Research Group, Inc. (the "Swan Plaintiffs") hereby join in the

Celebrex Marketing and Pricing Plaintiffs' Consolidated Reply to Responses to Motions to

Transfer and Consolidate Pursuant to 28 U.S.C. § 1407.

Like the Celebrex Marketing and Pricing Plaintiffs, the Swan Plaintiffs assert claims

based on fraudulent and misleading advertising and packaging materials for Celebrex by Pfizer,

Inc., Pharmacia Corp., and G.D. Searle & Co. The Swan Plaintiffs allege that defendants'

unlawful scheme allowed them to sell Celebrex at a premium price over older, comparable drugs and have it become a new standard treatment option.

For the reasons set forth in the Celebrex Plaintiffs' consolidated reply, the Swan Plaintiffs believe that the Celebrex litigation and the Bextra litigation should be consolidated into two separate proceedings within the same jurisdiction, but before two different jurists. This approach recognizes the differences between the Celebrex actions and the Bextra actions and allows the parties to resolve their unique issues (such as the continued evolution of Celebrex evidence, which affects only the Celebrex litigants) without disrupting or delaying the other proceeding, while at the same time protecting defendants and witnesses from unnecessarily duplicative discovery by facilitating coordination between the two proceedings on similar issues.

The Swan Plaintiffs further believe that the District of Massachusetts stands out as the most appropriate forum for these proceedings. The District of Massachusetts has extensive experience managing consolidated multi-district litigation against major pharmaceutical companies, an efficient docket, a central location, and several judges who could accept the proceedings. In addition, Boston's major airports and high speed trains, which serve as a transportation hub for the region, make it easily accessible by air and by rail, and Boston has numerous hotels and other accommodations for travelers. Therefore, the Panel should consolidate the Celebrex litigation and the Bextra litigation into separate proceedings and transfer both proceedings to the District of Massachusetts.

Alternatively, the Swan Plaintiffs support transferring the litigation to the Southern District of Florida, where a Celebrex marketing and pricing class action pending before Judge Jordan, *Balloveras v. Pfizer, et al.*, No. 05-20429, has already been assigned a case schedule and

discovery is ready to proceed, or the District of Delaware, which is also centrally located to the parties and witnesses in these actions and which has an exceptionally efficient docket.[1]

The Swan Plaintiffs otherwise join in all other aspects of the Celebrex Marketing and Pricing Plaintiffs' Consolidated Reply to Responses to Motions to Transfer and Consolidate Pursuant to 28 U.S.C. § 1407.

DATED this 8th day of June, 2005.

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____

Steve W. Berman
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

ELAINE T. BYSZEWSKI
HAGENS BERMAN SOBOL SHAPIRO LLP
700 South Flower Street, Suite 2940
Los Angeles, CA 90017-4101
Telephone: (213) 330-7150
Elaine@hbsslaw.com

THOMAS M. SOBOL
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
tom@hbsslaw.com

Attorneys for Swan Plaintiffs

---

[1] The Northern District of California, where the Swan Plaintiffs filed their complaint, is also more suitable than other proposed fora, such as the Southern District of New York or the District of New Jersey. Only 6.9% of the cases in the Northern District of California are more than three years old, compared to a relatively high 11.6% for the Southern District of New York. Moreover, the Northern District of California lacks the harsh weather that is common in New York and New Jersey.

7

**BEFORE THE JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1691 |
| IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1693 |
| IN RE CELEBREX MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1694 |
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1699 |

**AURORA BALLOVERAS'S JOINDER IN THE CELEBREX MARKETING AND PRICING PLAINTIFFS' CONSOLIDATED REPLY TO RESPONSES TO MOTIONS TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407**

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Aurora Balloveras hereby joins in the Celebrex Marketing and Pricing Plaintiffs' Consolidated Reply to Responses to Motions to Transfer and Consolidate Pursuant to 28 U.S.C. § 1407.

Like the Celebrex Marketing and Pricing Plaintiffs, Mr. Balloveras asserts claims based on fraudulent and misleading advertising and packaging materials for Celebrex by Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co. Mr. Balloveras alleges that defendants' unlawful scheme allowed them to sell Celebrex at a premium price over older, comparable drugs and have it become a new standard treatment option.

For the reasons set forth in the Celebrex Plaintiffs' consolidated reply, Mr. Balloveras believes that the Celebrex litigation and the Bextra litigation should be consolidated into two separate proceedings within the same jurisdiction, but before two different jurists. This approach recognizes the differences between the Celebrex actions and the Bextra actions and allows the parties to resolve their unique issues (such as the continued evolution of Celebrex evidence, which affects only the Celebrex litigants) without disrupting or delaying the other proceeding, while at the same time protecting defendants and witnesses from unnecessarily duplicative discovery by facilitating coordination between the two proceedings on similar issues.

Mr. Balloveras further believes that the District of Massachusetts stands out as the most appropriate forum for these proceedings. The District of Massachusetts has extensive experience managing consolidated multi-district litigation against major pharmaceutical companies, an efficient docket, a central location, and several judges who could accept the proceedings. In addition, Boston's major airports and high speed trains, which serve as a transportation hub for the region, make it easily accessible by air and by rail, and Boston has numerous hotels and other accommodations for travelers. Therefore, the Panel should consolidate the Celebrex litigation and the Bextra litigation into separate proceedings and transfer both proceedings to the District of Massachusetts.

Alternatively, Mr. Balloveras supports transferring the litigation to the Southern District of Florida, where his own action, *Balloveras v. Pfizer, et al.*, No. 05-20429, is currently pending before Judge Jordan. The Southern District of Florida is a particularly suitable forum because the litigation there has advanced as far, or further, than any similar litigation in the country. The defendants have already answered the complaint, and Judge Jordan has entered an Order Setting Schedule, Requiring Mediation, and Referring Certain Motions to Magistrate Judge. Accordingly, the parties in this action are ready to begin discovery, making this the ideal time to consolidate the other litigation into the *Balloveras* action. The Southern District of Florida is also an appropriate forum given its ample transportation facilities and other accommodations for

travelers, and the warm climate, diverse culture, and multiple visitor attractions in and around the area will certainly make any necessary travel less burdensome.

The District of Delaware would also serve as an appropriate forum for this litigation. Not only is it centrally located to the parties and witnesses in these actions, but it has an exceptionally efficient docket, which means the litigants would be likely to achieve an efficient resolution of their claims in that district.[1]

Mr. Balloveras otherwise joins in all other aspects of the Celebrex Marketing and Pricing Plaintiffs' Consolidated Reply to Responses to Motions to Transfer and Consolidate Pursuant to 28 U.S.C. § 1407.

DATED this 8th day of June, 2005.

HAGENS BERMAN SOBOL SHAPIRO LLP

By_____
    Steve W. Berman
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone:  (206) 623-7292

    THOMAS M. SOBOL
    HAGENS BERMAN SOBOL SHAPIRO LLP
    One Main Street, 4th Floor
    Cambridge, MA  02142
    Telephone:  (617) 482-3700

    Attorneys for Balloveras Plaintiffs

---

[1] The Northern District of California, where another Celebrex marketing and pricing action was filed, *Julie Swan, et al. v. Pfizer, Inc., et al.*, No. 05-00834, is also more suitable than other proposed fora, such as the Southern District of New York or the District of New Jersey. Only 6.9% of the cases in the Northern District of California are more than three years old, compared to a relatively high 11.6% for the Southern District of New York. Moreover, the Northern District of California lacks the harsh weather that is common in New York and New Jersey.

**8**

## BEFORE THE JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1691 |
| IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1693 |
| IN RE CELEBREX MARKETING AND SALES PRACTICE LITIGATION | MDL DOCKET NO. 1694 |
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1699 |

## DOROTHY GREAVES'S JOINDER IN THE CELEBREX MARKETING AND PRICING PLAINTIFFS' CONSOLIDATED RESPONSE TO MOTIONS TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation and a notice dated May 13, 2005 from Michael J. Beck, Clerk of the Panel, plaintiff Dorothy Greaves hereby joins in the Celebrex Marketing and Pricing Plaintiffs' Consolidated Response to Motions to Transfer and Consolidate Pursuant to 28 U.S.C. § 1407.

Like the Celebrex Marketing and Pricing Plaintiffs, Ms. Greaves asserts claims based on fraudulent and misleading advertising and packaging materials for Celebrex by Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co. Ms. Greaves alleges that defendants' unlawful scheme

allowed them to sell Celebrex at a premium price over older, comparable drugs and have it become a new standard treatment option.

For the reasons set forth in the Celebrex Plaintiffs' consolidated response, Ms. Greaves also believes that the Celebrex litigation and the Bextra litigation should be consolidated into two separate proceedings and transferred to the same district so that discovery and other matters can be coordinated. Ms. Greaves further believes that the District of Massachusetts is the most suitable forum for such litigation due to its extensive experience in handling consolidated multi-district litigation, its expertise in the area of consolidated multi-district litigation against major pharmaceutical companies, and its central location to the parties and witnesses in this litigation (the defendants, Pharmacia Corp. and Pfizer, Inc., are centrally located in New Jersey and New York, respectively, and the research and development units are located in the Northeast Corridor).

Alternatively, Ms. Greaves supports transferring the litigation to the Southern District of Florida, where a Celebrex marketing and pricing class action pending before Judge Jordan, *Balloveras v. Pfizer, et al.*, No. 05-20429, has already been assigned a case schedule, or the District of Delaware, which is also centrally located to the parties and witnesses in these actions and which has an exceptionally efficient docket.

Ms. Greaves otherwise joins in all other aspects of the Celebrex Marketing and Pricing Plaintiffs' Consolidated Response to Motions to Transfer and Consolidate Pursuant to 28 U.S.C. §1407.

DATED this 1st day of June, 2005.

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____

Steve W. Berman, WSBA #12536
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert B. Carey
Stephanie L. Bozzo
HAGENS BERMAN PLLC
2425 East Camelback Road, Suite 650
Phoenix, AZ  85016
(602) 840-5900

Attorneys for Plaintiff Dorothy Greaves

**9**

RECEIVED
CLERK'S OFFICE

2005 MAY -2 A II: 26

~ ~ L PANEL ON
~~LTIDISTRICT
LITIGATION

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX LITIGATION | No. MDL DOCKET NO. 1691 |

## PLAINTIFF RONNIE L. HATCHER'S RESPONSE TO MOTION TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407

Ronnie L. Hatcher, the named plaintiff in the class action, *Ronnie L. Hatcher v. Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co.*, No. 05-Civ.-00208 (filed April 8, 2005), submits this response to the motion to transfer filed April 11, 2005, by counsel for plaintiffs Gloria Ward, Carol Aiola and Ronald J. Babin (the "PI Plaintiffs") in three physical-injury actions filed against defendant Pfizer, Inc., in the Eastern District of Louisiana.

As do several other plaintiffs, Mr. Hatcher asserts claims based on fraudulent and misleading advertising and packaging materials for Bextra by a group of three defendants, Pharmacia Corp., G.D. Searle & Co., and Pfizer, Inc. See Schedule of Actions submitted herewith. Mr. Hatcher joins in the response submitted by the Celebrex Marketing-and-Pricing Plaintiffs on April 29, 2005. He adds that for the same reasons expressed therein, his and other Bextra marketing-and-pricing class actions are also not included within the PI Plaintiffs' motion to transfer and he thus submits no opposing argument. Mr. Hatcher will be responding to a



- 1 -

motion to transfer filed by a plaintiff in one of the Bextra marketing-and-pricing class actions.

*See In re Bextra Marketing Litigation*, MDL Docket No. 1693.  If, in reply on the present motion

to transfer, the PI Plaintiffs take the position that their motion includes the Bextra marketing-

and-pricing class actions, he requests an opportunity to respond.

DATED:  April 29, 2005

Hagens Berman Sobol Shapiro LLP

By
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

Thomas M. Sobol
David S. Nalven
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, Fourth Floor
Cambridge, MA  02142
(617) 482-3700

*Attorneys for Plaintiff Ronnie L. Hatcher and
the Proposed Class*

- 2 -

1839.10 0001 MTN.DOC

# 10

## BEFORE THE JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1691 |
| IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1693 |
| IN RE CELEBREX MARKETING AND SALES PRACTICE LITIGATION | MDL DOCKET NO. 1694 |
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1699 |

## PLAINTIFF RONNIE L. HATCHER'S CONSOLIDATED RESPONSE TO MOTIONS TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation and a notice dated May 13, 2005 from Michael J. Beck, Clerk of the Panel, plaintiff Ronnie L. Hatcher hereby submits the following consolidated response to all pending motions for transfer and consolidation pursuant to 28 U.S.C. § 1407 in the above-referenced dockets.

## I.     INTRODUCTION

This proceeding poses the somewhat novel circumstance in which one company faces substantial legal claims simultaneously in multiple fora relating to two (similar, but different)

pharmaceutical products. If grouped into two separate "MDLs," each consolidated proceeding would present significant challenges to the parties and the transferee jurist – but complete separation might entail inefficiencies and perhaps inconsistent rulings due to overlapping discovery from the same units within the same drug company. If grouped into a single, "super-MDL," significant efficiencies might be achieved – but the sheer size of the MDL, coupled with the multiplicity of separate issues affecting the different drugs (and different claims and different litigants, etc.), might cause it to become too burdensome or cumbersome and thereby be inefficient and slow in reaching justice for the parties.

This memorandum argues that judicial efficiency in the interests of justice are best served by taking the middle road: the Panel should order the consolidation of the pending actions into two separate proceedings before two different jurists (one for Bextra, the other for Celebrex), but this panel ought *also* order coordination of discovery between the two proceedings, and since such coordination is best achieved within a single district, the Bextra MDL and the Celebrex MDL should be sent to the same district.

This memorandum also argues that the interests of justice and the efficient administration of the courts warrants transfer to the District of Massachusetts. The District of Massachusetts has extensive experience managing consolidated multi-district litigation, an established track record of handling such litigation in an expeditious fashion, expertise in the area of consolidated multi-district litigation against major pharmaceutical companies, and a reasonable location for the parties and witnesses in this litigation (the defendants, Pharmacia Corp. and Pfizer, Inc., are centrally located in New Jersey and New York, respectively, and the research and development units are located in the Northeast Corridor). Moreover, the District of Massachusetts has several judges who could accept one or both of these cases. For example, Judge Young, who has substantial experience handling multidistrict litigation, does not currently have any such cases and could conceivably take one or both of the consolidated actions. Judge Stearns, who is also experienced in handling multidistrict litigation, will soon be finishing up his only current

multidistrict litigation case – *Lupron Marketing and Sales Practices Litigation.* Finally, Judge Woodlock, who also has only one multidistrict litigation case, is already the assigned Judge in *Health Care for All, et al. v. Pfizer, et al.*, No. 05-10707 RCL (D. Mass.), one of the Celebrex marketing and pricing class actions. For these and the other reasons set forth herein, the District of Massachusetts is the most appropriate forum for the consolidated Celebrex and Bextra lawsuits.

## II.    FACTS

### A.    Background

Bextra is a second-generation COX-2 inhibitor. Defendants[1] launched Bextra in late 2001, more than two years after introducing Celebrex to the market in early 1999, and promoted it as an alternative to older non-steroidal anti-inflammatory drugs ("NSAIDs"), such as ibuprofen and naproxen, that could provide pain relief without the adverse gastrointestinal side effects sometimes encountered with the older NSAIDs. As they did with Celebrex, defendants promoted Bextra as offering all of the benefits of less expensive NSAIDs with none of the drawbacks, thereby turning Bextra into a blockbuster drug with billions of dollars in yearly sales. In reality, however, Bextra has no proven superiority over other NSAIDs for most patients. As set forth in the complaint, defendants' marketing and promotion of Bextra was merely part of an unlawful scheme to create demand for Bextra by, among other things, manipulating and suppressing data showing that Bextra had an unacceptably high risk of cardiovascular side effects such as heart attacks, strokes, unstable angina, cardiac clotting, and hypertension. Defendants aggressively promoted Bextra claiming it had a lower risk of gastrointestinal ulcers and bleeding, but failed to adequately warn consumers about its other side effects. As a result of their scheme, defendants were able to sell Bextra at a premium price over other NSAIDs and have it become a standard treatment option as opposed to less expensive NSAIDs.

---

[1] The complaint names Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co. as defendants.

**B.     The Bextra Class Actions**

Following these events, Mr. Hatcher filed a class action in the District of Delaware alleging a conspiracy to portray Bextra as a drug possessing superior qualities to other NSAIDs and alleging a scheme to create consumer demand for Bextra based on deceptive statements about Bextra's safety and efficacy in order to obtain premium pricing for the drug.  Mr. Hatcher sought to recover damages on behalf of all persons (excluding those who assert personal injury claims) who paid part or all of the purchase price for Bextra either on their own behalf or on behalf of someone else who ingested the drug.

A similar class action was filed by ASEA/AFSCME Local 52 Health Benefits ("ASEA/AFSCME") in the Southern District of New York, and ASEA/AFSCME subsequently moved to consolidate these two actions in that jurisdiction.  Although ASEA/AFSCME's motion did not request transfer and consolidation of the Bextra personal injury class actions, in light of the Panel's recent decision in *In re Neurontin Marketing and Sales Practices Litigation*, Docket No. 1629 (D. Mass. Apr. 19, 2005) (Ex. 1 attached hereto), consolidation of such actions is appropriate and preferable because it permits the actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to duplicative discovery demands.  Accordingly, all of the Bextra litigation should be transferred into a single action. Instead of the Southern District of New York, however, the consolidated Bextra litigation should be transferred to the District of Massachusetts, along with the consolidated Celebrex litigation, where such matters may proceed in separate but parallel proceedings.

### III.     LEGAL AUTHORITY

**A.     Transfer and Consolidation of The Bextra Class Actions and the Celebrex Class Actions for Coordinated Pretrial Proceedings is Appropriate**

28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon a determination that (i) they "involv[e] one or more

common questions of fact," (ii) transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the actions." The requirements for transferring the Bextra litigation to the District of Massachusetts are clearly met here. The Bextra marketing and pricing class actions and personal injury class actions are characterized by a number of common questions of fact. Moreover, transfer and consolidation of all Bextra litigation will promote convenience and efficiency for the parties by permitting the actions to proceed before a single transferee judge who can structure pretrial proceedings to suit all parties' discovery needs while eliminating duplicative discovery. For the same reasons, the requirements for transferring and consolidating all of the Celebrex litigation are also met.

### 1.    The Actions Involve Common Questions of Fact

The factual issues in the Bextra marketing and pricing class actions arise from the same course of conduct and, hence, are identical. *See In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004); *In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1371 (J.P.M.L. 2004). The same is true of the Celebrex marketing and pricing class actions. Moreover, the Panel recently determined that the questions of fact at issue in the Neurontin marketing and pricing class actions and the Neurontin personal injury class actions were sufficiently similar to warrant consolidation. *In re Neurontin Marketing and Sales Practices Litigation*, Docket No. 1629. The Bextra marketing and pricing class actions and personal injury class actions are no different, nor are the Celebrex marketing and pricing class actions and personal injury class actions. They each allege injuries and damages caused by misrepresentations concerning the safety and efficacy of either Bextra or Celebrex and, as such, present common questions of fact justifying transfer and consolidation.

### 2.    Consolidating the Class Actions Will Further the Convenience of the Parties and the Witnesses

Consolidating the Bextra personal injury class actions with the Bextra marketing and pricing class actions will further the convenience of the parties and witnesses by streamlining

discovery. Plaintiffs in each category of Bextra litigation will likely seek the same discovery regarding defendants' testing protocol for Bextra, defendants' knowledge of the risks posed by Bextra, defendants' representations concerning the safety and efficacy of Bextra, and other such matters. Separate litigation would result in duplicative discovery demands and redundant depositions. Consolidation will streamline pretrial procedures and minimize the inconvenience to the witnesses and expenses to the parties.

Consolidating the Celebrex litigation in a parallel proceeding will further streamline these cases. Not only will it prevent defendants from having to defend in separate jurisdictions, it will also allow the parties to coordinate any overlapping discovery or other proceedings. As mentioned previously, however, while the Celebrex litigation should be transferred to the same jurisdiction as the Bextra litigation for parallel proceedings due to their similarities, their differences mandate separate consolidated actions. For instance, Celebrex and Bextra are similar in the following respects:

- They are both COX-2 inhibitors which reduce pain by selectively inhibiting the body's production of the COX-2 enzyme;

- They were both promoted as alternatives to older NSAIDs, providing all of the benefits of the older drugs but without the adverse gastrointestinal side effects sometimes encountered with older NSAIDs;

- They have similar, though not identical, side effects;

- Defendants manipulated and suppressed data regarding the side effects of each, thereby turning them into blockbuster drugs; and

- Neither drug has any proven superiority over other NSAIDs.

At the same time, however, they differ in the following respects:

- They have different chemical makeups;

- Celebrex is a first-generation COX-2 inhibitor, while Bextra is a second-generation COX-2 inhibitor;

- They were developed and launched more than two years apart;

- They have different absorption, distribution, and elimination rates; and

- Although their side effects are similar, studies have shown that Bextra increases patients' risk of heart attack and stroke by 50%, compared to 20% for Celebrex. In addition, life-threatening skin reactions, including Stevens-Johnson Syndrome and toxic epidermal necrolysis, are associated by Bextra.

Therefore, while coordinating the Bextra litigation and the Celebrex litigation will promote certain efficiencies with respect to each action, joining them into a single consolidated action would create tremendous confusion, causing the proceeding to become cumbersome and inefficient.

### 3.    Transfer and Consolidation Will Promote the Just and Efficient Conduct of the Related Actions

For the reasons set forth above, transferring and consolidating the Bextra litigation and the Celebrex litigation in parallel proceedings will promote the just and efficient conduct of the actions by minimizing duplicative discovery from plaintiffs with similar interests. Failing to consolidate the Bextra and Celebrex actions as proposed herein, or consolidating the four categories of litigation in any other form, will only result in duplicative discovery demands, redundant depositions, and other needless inefficiencies. For example, if the Panel consolidates the Bextra and Celebrex personal injury class actions in MDL-1691, defendants will have to answer discovery in that action regarding their representations and/or omissions concerning the risks associated with using both Bextra and Celebrex. Defendants will then be subject to similar, duplicative discovery requests from plaintiffs in the Bextra and Celebrex marketing and pricing class actions. Witnesses will likewise be subject to duplicative depositions. On the other hand, if the Panel consolidates all of the class actions in MDL-1699 in one proceeding, plaintiffs in the different proceedings will become unnecessarily wrapped up in discovery and other issues that may not be relevant to their claims.

The only way to promote the just and efficient conduct of all actions is to consolidate the lawsuits in accordance with their common interests in discovery. In this case, that means consolidating the Bextra personal injury actions with the Bextra marketing and pricing actions, and the Celebrex personal injury actions with the Celebrex marketing and pricing actions. More

specifically, the Panel should consolidate the actions in two proceedings and transfer those proceedings to the District of Massachusetts where they can proceed on parallel case schedules.

**B.    The District of Massachusetts Is The Proper Forum for Coordinated Pretrial Proceedings**

    **1.    The District of Massachusetts Has the Resources and Judicial Expertise to Properly Conduct This Case**

In selecting the most appropriate transferee forum for multidistrict litigation, the Panel considers the speed and efficiency with which alternative districts manage their respective caseloads. *See In re Preferential Drug Prods. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977) (transferring cases based in part upon transferee court's low median time between filing and disposition in civil actions); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (faster docket cited as reason for selecting transferee court). Here, this factor favors transferring the actions to the District of Massachusetts. For example, according to the Federal Court Management Statistics, in 2004 the median time span from filing to disposition for civil cases filed in the District of Massachusetts was only 9.4 months, with only 215 civil cases – 5.7 percent of its civil docket – older than 3 years. (Ex. 2 attached hereto.) This Panel has previously transferred to the District of Massachusetts complex, multi-party litigation partly in recognition that it is well-resourced to handle such litigation. *See, e.g., In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 383, 1385 (J.P.M.L. 2004); *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378, 1381 (J.P.M.L. 2002); *In re Pharmatrak, Inc., Privacy Litig.*, 2001 U.S. Dist. Lexis 5228, at *3 (J.P.M.L. Apr. 18, 2001).[2]

Plaintiffs in *Alexander, et al. v. Pfizer, Inc.* and plaintiffs in *Gloria Ward v. Pfizer, Inc.* propose the Eastern District of Louisiana as a transferee forum, while plaintiffs in *Kaye, et al. v. Pfizer, Inc., et al.* propose the District of Connecticut. As stated previously, ASEA/AFSCME

---

[2] The Panel has long held this view of the District of Massachusetts. *See, e.g., In re Kauffman Mut. Fund Actions*, 337 F. Supp. 1337, 1340 (J.P.M.L. 1972) ("[t]he deciding factor in our estimation is the more current docket in the District of Massachusetts").

proposes the Southern District of New York. For the reasons set forth below, none of these jurisdictions is appropriate.

Although the median filing-to-disposition time in the Eastern District of Louisiana is comparable to the District of Massachusetts, its percentage of civil cases over three years old is higher (6.9 percent) and rising rapidly. In the previous five years, that percentage ranged from .6 to 1.6, but the percentage doubled from 2002 to 2003 before rocketing to 6.9% in 2004. (Ex. 3 attached hereto.) The median filing-to-disposition time in the Southern District of New York is also comparable to the District of Massachusetts. Its percentage of cases over three years old, however, is 11.6 percent, indicating that the Southern District of New York does not dispose of cases nearly as efficiently as the District of Massachusetts. In the District of Connecticut, the median filing-to-disposition time is 11.6 months, and its percentage of civil cases over three years old is 10.7 percent. These relevant statistics are set forth in the chart below:

| Transferee Jurisdiction | Median Time Span From Filing to Disposition of Civil Cases | Percent of Civil Docket Older Than 3 Years |
|---|---|---|
| District of Massachusetts | 9.4 months | 5.7% |
| Eastern District of Louisiana | 9.3 months | 6.9% |
| District of Connecticut | 11.6 months | 10.7% |
| Southern District of New York | 8.1 months | 11.6% |

Thus, of the proposed transferee forums, the District of Massachusetts has the most efficient docket.

The expertise of a particular court in the areas of law and procedure governing the litigation is also an important factor. *See, e.g., In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 422-23 (D.D.C. 1991). The District of Massachusetts has extensive experience in

managing consolidated multi-district litigation. *See, e.g., In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d 1350 (J.P.M.L. 2004) (transferring action to District of Massachusetts); *In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383 (J.P.M.L. 2004) (same); *In re Carbon Black Antitrust Litig.*, 277 F. Supp. 2d 1380 (J.P.M.L. 2003) (same); *In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377 (J.P.M.L. 2002) (same); *In re Shell Oil Prods. Co. Dealer Franchise Litig.*, 206 F. Supp. 2d 1373 (J.P.M.L. 2002) (same); *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378 (J.P.M.L. 2002) (same); *In re Lupron Mktg. & Sales Practices Litig.*, 180 F. Supp. 2d 1376 (J.P.M.L. 2001) (same); *In re Pharmatrak, Inc., Privacy Litig.*, 2001 U.S. Dist. Lexis 5228 (J.P.M.L. Apr. 18, 2001) (same).[3] Indeed, the Panel has specifically recognized that the District of Massachusetts is equipped with the resources necessary to manage substantial consolidated multi-district litigation. *See, e.g., Columbia Univ. Patent Litig.*, 313 F. Supp. 2d at 1385; *Carbon Black Antitrust Litig.*, 277 F. Supp. 2d at 1381; *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d at 1381; *In re Pharmatrak, Inc., Privacy Litig.*, 2001 U.S. Dist. Lexis 5228, at *3. The Panel has also regularly transferred to the District of Massachusetts multi-district litigation that, like the present cases, challenges overpricing conduct by major pharmaceutical corporations. *See, e.g., In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d at 1381; *In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377 (J.P.M.L. 2002) (related case); *In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d at 1351; *In re Lupron Mktg. & Sales Practices Litig.*, 180 F. Supp. 2d at 1377 (fraudulent marketing, sales and billing scheme). The following chart sets forth just a few of the multidistrict pharmaceutical marketing and pricing matters handled recently by the District of Massachusetts:

---

[3] *See also In re Air Crash near Edgartown*, 269 F. Supp. 2d 1370 (J.P.M.L. 2003) (same); *In re Xcelera.com Inc.*, 2000 U.S. Dist. Lexis 18557 (J.P.M.L. Dec. 18, 2000) (same); *In re Citigroup, Inc. Capital Accumulation Plan Litig.*, 2000 U.S. Dist. Lexis 12561 (J.P.M.L. Aug. 29, 2000) (same); *In re Nabumetone Patent Litig.*, 1998 U.S. Dist. Lexis 13735 (J.P.M.L. Sept. 2, 1998) (same); *In re Summit Tech. Sec. Litig.*, 1997 U.S. Dist. Lexis 15778 (J.P.M.L. Oct. 9, 1997) (same); *In re Computervision Corp. Sec. Litig.*, 814 F. Supp. 85 (J.P.M.L. 1993) (same).

| Case Name | Description |
|---|---|
| *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, C.A. No. 97-10814-WGY, Young, J. | Defendant's hormone product designed to stimulate production of red blood cells infringed on the claims asserted by the patentee because, *inter alia*, the written description was adequate and the reverse doctrine of equivalents did not apply. |
| *Eon Labs., Inc. v. SmithKline Beecham Corp.*, C.A. No. 03-10506-WGY, Young, J. | Generic manufacturer of Relafen claimed that but for the original patent owner's wrongful filing of patent lawsuits, it could have entered the market for the generic product six months after the first generic applicant received tentative approval. |
| *In re Immunex Corp. Average Wholesale Price Litig.*, C.A. 01-12257-PBS, Saris, J. | Plaintiffs alleged that the companies unlawfully inflated the average wholesale price of Medicare-covered prescription drugs in order to increase sales to health care professionals. |
| *In re Lupron Mktg. & Sales Practices Litig.*, C.A. No. 01-10861-RGS, Stearns, J. | Plaintiffs alleged that the company jointly (with the corporation and defendant business) determined the price at which the medication would have been sold by the corporation, and was actively involved in various marketing schemes. |
| *In re Neurontin Mktg. & Sales Practices Litig.*, C.A. 04-10981-PBS, Saris, J. | This class action seeks to recover billions of dollars paid by Plaintiffs' to Defendants as a result of Defendants' alleged fraudulent scheme to market and sell the drug Neurontin for a variety of uses for which it is neither approved, nor medically efficacious. |
| *In re Pharm. Indus. Average Wholesale Price Litig.*, C.A. No. 01-12257-PBS, Saris, J. | In this massive proposed class action, Plaintiffs allege that forty-two pharmaceutical companies fraudulently overstate the published average wholesale prices of many of their prescription drugs, which results in inflated payments for such drugs by consumers and beneficiaries of the federal Medicare Part B program (through co-payments), private health and welfare plans, health insurers, self-insured employers and other end-payors for prescription drugs. |
| *In re Pharmatrak, Inc., Privacy Litig.*, Civil Action No. 00-11672-JLT, Tauro, J. | Plaintiffs, in this consolidated class action, sued Pharmatrak, Inc. and numerous pharmaceutical companies, alleging that they secretly intercepted and accessed Plaintiffs' personal information through the use of computer "cookies" and other devices, in violation of state and federal law. |

| | |
|---|---|
| *In re Relafen Antitrust Litig.*, C.A. No. 01-12239-WGY, Young, J. | This case is a consolidated action against SmithKline Beecham Corporation and GlaxoSmithKline PLC by multiple parties. The plaintiffs include SmithKline competitor Eon Labs; pharmaceutical wholesalers that purchased Relafen directly from SmithKline ("direct purchasers"); drugstores that indirectly purchased Relafen and the generic drug nabumetone for resale ("drugstore plaintiffs"); and parties that purchased nabumetone from sources other than SmithKline for purposes other than resale ("end payors") |
| *J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc.*; C.A. No. 98-12635-WGY, Young, J. | The action concerned a managed care pharmacy participation agreement under which plaintiff pharmacies were forced to operate if they were to provide any level of services to HMO clients. |
| *United States ex rel. Franklin v. Parke-Davis*, C.A. 96-11651-PBS, Saris, J. | In this *Qui tam* action, a former employee stated that promotion of the drug Neurontin resulted in federal reimbursement payments for drug prescriptions that were ineligible under Medicaid |
| *United States v. TAP Pharmaceuticals Products Inc*, C.A. No. 01-10354-WGY, Young, J. | A major pharmaceutical manufacturer that is a joint venture between Abbott Laboratories and Takeda Chemical Industries, Ltd., agreed on October 3, 2001 to pay $875 million to settle criminal charges and civil liabilities with regard to its pricing and marketing of the drug Lupron. |
| *United States v. Warner-Lambert Company LLC*, C.A. No. 04-10150-RGS, Stearns, J. | Warner-Lambert Company LLC settled criminal and civil claims related to the promotion and marketing of Neurontin (gabapentin) by its Parke-Davis Division. Warner-Lambert plead guilty to all of the allegations set out in a Criminal Information and two felony violations of the Food, Drug, and Cosmetic Act. |

The District of Massachusetts thus has an established track record of managing this type of complex litigation, and particular expertise with regard to multidistrict pharmaceutical litigation. Although, as the *Alexander* plaintiffs point out, the District of Massachusetts currently has 11 MDL actions pending, whereas the Eastern District of Louisiana has only five, this merely illustrates the extensive resources of the District of Massachusetts as compared to the Eastern District of Louisiana.

The fact that there are at least three judges in the District of Massachusetts ready to accept one or both of these multidistrict litigations further supports transferring these cases to that jurisdiction. As stated previously, one experienced judge, Judge Young, currently has no

multidistrict litigation cases. Two others, Judges Stearns and Judge Woodlock, have only one multidistrict litigation case each, and Judge Stearns will soon finish his only case.

### 2.    The District of Massachusetts Is a Convenient Forum for the Parties and Witnesses

The convenience of the parties and witnesses is another important factor in determining to which district related actions should be transferred. 28 U.S.C. § 1407(a) (related actions may be transferred to a district for coordinated proceedings upon a determination that the transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"). In deciding whether a particular forum is convenient, the Panel frequently considers the location of the parties, documents, and potential witnesses relative to that district. *See In re Cigarette Antitrust Litig.*, 2000 U.S. Dist. Lexis 8209, at *4 (J.P.M.L. June 7, 2000). The District of Massachusetts is centrally located and readily accessible, making it convenient for the parties and witnesses and thus a preferable forum for this litigation. Indeed, two of the defendants, Pharmacia Corp. and Pfizer, Inc., are located in close proximity to the district (New Jersey and New York, respectively) and, in light of Boston's major airports and high-speed trains that serve as a transportation hub for the region, parties traveling by air or rail will have easy access to the district court. By contrast, the Eastern District of Louisiana is located extremely far away from both Pfizer, Inc. and Pharmacia Corp., and thus many of the likely witnesses in these cases. Accordingly, transferring these actions to the Eastern District of Louisiana would not only make the litigation extremely inconvenient for the majority of the parties and the witnesses, it would unnecessarily increase the expense of the litigation by forcing the parties and the witnesses to engage in extensive travel. Although both the Southern District of New York and the District of Connecticut are also centrally located, the inefficiency of their dockets, particularly their high percentage of cases over three years old, make them poor forums for this litigation.

As the above illustrates, all relevant factors strongly support transfer of the Bextra litigation and the Celebrex litigation to the District of Massachusetts for separate but parallel proceedings.

**C.    The Southern District of Florida and the District of Delaware Offer Alternative Forums for Coordinated Pretrial Proceedings**

**1.    The Southern District of Florida is an Appropriate Transferee Forum**

As an alternative, Mr. Hatcher would also support transfer to the Southern District of Florida at Miami. As demonstrated by its caseload statistics (Ex. 4 attached hereto), that District appears to have a well-managed docket capable of ensuring expeditious resolution of this multi-party litigation. The Southern District of Florida, while possessing the resources necessary to oversee a complex multi-party action such as this, is under-utilized as a transferee court for centralized proceedings. As this Panel recognized in *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1380 (J.P.M.L. 2001), this alone can be reason to transfer multidistrict actions to such districts for centralization:

> centralization in this district permits the Panel to effect the Section 1407 assignment to a major metropolitan court that i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.

**2.    The District of Delaware is an Appropriate Transferee Forum**

As a second alternative, the Celebrex Marketing and Pricing Plaintiffs would also support a transfer to the District of Delaware. As demonstrated by its caseload statistics (Ex. 5 attached hereto), only 3.4 percent of that district's civil docket is older than three years. This reflects an extremely efficient docket, well-suited to handle this litigation.

## IV.    CONCLUSION

Consolidation of the Bextra litigation and the Celebrex litigation is necessary to avoid duplication and wasted efforts. Transfer to the District of Massachusetts is appropriate because one of the cases was filed there, the District of Massachusetts has the resources and judicial

expertise to promptly and efficiently conduct this case, and the District of Massachusetts is centrally located to all the parties. Accordingly, Mr. Hatcher respectfully asks the Panel to consolidate all Bextra litigation and all Celebrex litigation in two separate lawsuits and to then transfer those lawsuits to the District of Massachusetts for parallel proceedings.

DATED this 1st day of June, 2005.

HAGENS BERMAN SOBOL SHAPIRO LLP

By_____
   Thomas M. Sobol
David S. Nalven
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, Fourth Floor
Cambridge, MA 02142
(617) 482-3700

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

*Attorneys for Plaintiff Ronnie L. Hatcher and the Proposed Class*

**1**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 9 2005

FILED
CLERK'S OFFICE

## DOCKET NO. 1629

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

# IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION

*Mary Cooper, et al. v. Pfizer, Inc.*, N.D. Mississippi, C.A. No. 2:04-255
*Leroy Anderson, et al. v. Pfizer, Inc., et al.*, N.D. Mississippi, C.A. No. 4:04-275
*Linda Barker v. Pfizer, Inc., et al.*, E.D. Texas, C.A. No. 2:04-309

# BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL

## TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in two Northern District of Mississippi actions and in one Eastern District of Texas action. Plaintiffs move to vacate the Panel's order conditionally transferring the actions to the District of Massachusetts for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge Patti B. Saris. Defendants Pfizer Inc. (Pfizer) and three Pfizer affiliates support transfer of the two Mississippi actions and agree with plaintiff in the Texas action that the Texas action need not be transferred.

On the basis of the papers filed and hearing session held, the Panel finds that these three actions involve common questions of fact with actions in this litigation previously transferred to the District of Massachusetts, and that transfer of the actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel is persuaded that transfer of the actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. The Panel held that the District of Massachusetts was a proper Section 1407 forum for actions sharing factual questions arising out of allegations that common defendants had engaged in the illegal promotion and sale of the drug Neurontin for "off-label" use. *See In re Neurontin Marketing and Sales Practices Litigation*, 342 F.Supp.2d 1350 (J.P.M.L. 2004).

Plaintiffs argue that their actions should not be transferred because the actions do not share sufficient questions of fact with the previously centralized MDL-1629 actions. They stress that theirs are actions brought to recover for personal injuries, not economic injuries (as was the case with the originally centralized actions in this litigation). Responding defendants do not appear to view the presence of personal injury allegations to be an impediment to transfer, because they support transfer

-2-

of the two Mississippi actions. They would exclude the Texas action from transfer, however, because of the nature of the personal injuries alleged (bone fractures), and because the Texas action is brought by a single plaintiff (as opposed to the multiple plaintiffs joined in the two Mississippi actions). We point out that transfer under Section 1407 does not require a complete identity or even majority of common factual or legal issues as a prerequisite to transfer. Here the complaints in all three actions contain allegations that defendants improperly engaged in a scheme or plan to promote the off-label use of Neurontin, and that this conduct contributed to the personal injuries they sustained as a result of ingestion of the drug. Transfer under Section 1407 will thus permit these actions to proceed before a single transferee judge who i) is already familiar with the off-label promotion allegations raised in previously centralized MDL-1629 actions brought on behalf of persons seeking to recover for Neurontin purchases made for unapproved purposes, and ii) can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that will occur or has already occurred in other MDL-1629 actions. The transferee court remains free, of course, to formulate a pretrial program that allows discovery with respect to any non-common issues in these (or any additional MDL-1629) personal injury actions to proceed concurrently with remaining discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the District of Massachusetts and, with the consent of that court, assigned to the Honorable Patti B. Saris for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

IT IS FURTHER ORDERED that MDL-1629 is renamed as follows: MDL-1629 – *In re Neurontin Marketing, Sales Practices and Products Liability Litigation.*

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

2

Judicial Caseload Profile Report

Page 1 of 1

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **MASSACHUSETTS** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | | Filings* | 3,819 | 3,720 | 3,765 | 3,276 | 3,651 | 3,770 | U.S. | Circuit |
| | | Terminations | 3,683 | 3,513 | 3,565 | 3,470 | 3,501 | 3,842 | | |
| | | Pending | 4,496 | 4,416 | 4,300 | 4,126 | 4,275 | 4,117 | | |
| | % Change in Total Filings | Over Last Year | | 2.7 | | | | | 38 | 2 |
| | | Over Earlier Years | | | 1.4 | 16.6 | 4.6 | 1.3 | 64 | 3 |
| | Number of Judgeships | | 13 | 13 | 13 | 13 | 13 | 13 | | |
| | Vacant Judgeship Months** | | 8.0 | 7.0 | .0 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 294 | 285 | 289 | 252 | 281 | 290 | 83 | 2 |
| | | Civil | 255 | 246 | 243 | 222 | 249 | 258 | 74 | 2 |
| | | Criminal Felony | 27 | 31 | 38 | 30 | 32 | 32 | 93 | 5 |
| | | Supervised Release Hearings** | 12 | 8 | 8 | - | - | - | 72 | 2 |
| | Pending Cases | | 346 | 340 | 331 | 317 | 329 | 317 | 65 | 1 |
| | Weighted Filings** | | 349 | 344 | 354 | 322 | 364 | 347 | 74 | 1 |
| | Terminations | | 283 | 270 | 274 | 267 | 269 | 296 | 85 | 3 |
| | Trials Completed | | 17 | 15 | 15 | 12 | 13 | 14 | 58 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 14.9 | 14.3 | 13.4 | 13.2 | 12.6 | 12.4 | 94 | 5 |
| | | Civil** | 9.4 | 10.7 | 11.5 | 10.2 | 10.2 | 10.9 | 42 | 3 |
| | From Filing to Trial** (Civil Only) | | 31.7 | 28.5 | 25.5 | 23.8 | 26.4 | 23.0 | 75 | 4 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 215 | 198 | 229 | 275 | 260 | 160 | | |
| | | Percentage | 5.7 | 5.4 | 6.3 | 7.7 | 7.0 | 4.4 | 68 | 4 |
| | Average Number of Felony Defendants Filed Per Case | | 1.5 | 1.4 | 1.6 | 1.6 | 1.5 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 47.60 | 49.14 | 46.26 | 51.51 | 44.40 | 41.94 | | |
| | | Percent Not Selected or Challenged | 27.5 | 33.4 | 23.2 | 26.2 | 14.8 | 15.2 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3312 | 97 | 24 | 424 | 43 | 34 | 269 | 503 | 581 | 223 | 492 | 10 | 612 |
| Criminal* | 351 | 29 | 8 | 46 | - | 22 | 96 | ** | 4 | 91 | - | 14 | 41 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.

\*\* See "Explanation of Selected Terms."

**3**

Judicial Caseload Profile Report

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **LOUISIANA EASTERN** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 3,783 | 3,990 | 4,187 | 3,933 | 4,054 | 4,211 | U.S. | Circuit |
| | Terminations | | 3,584 | 3,883 | 3,834 | 4,028 | 4,133 | 4,337 | | |
| | Pending | | 3,526 | 3,324 | 3,213 | 2,855 | 2,935 | 3,012 | | |
| | % Change in Total Filings | Over Last Year | | -5.2 | | | | | 71 | 5 |
| | | Over Earlier Years | | | -9.7 | -3.8 | -6.7 | -10.2 | 81 | 8 |
| | Number of Judgeships | | 12 | 12 | 12 | 12 | 12 | 12 | | |
| | Vacant Judgeship Months** | | .0 | .0 | 12.1 | 14.7 | .0 | .4 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 316 | 332 | 348 | 328 | 338 | 351 | 80 | 9 |
| | | Civil | 283 | 297 | 315 | 304 | 313 | 326 | 67 | 8 |
| | | Criminal Felony | 25 | 27 | 26 | 24 | 25 | 25 | 94 | 9 |
| | | Supervised Release Hearings** | 8 | 8 | 7 | - | - | - | 89 | 8 |
| | Pending Cases | | 294 | 277 | 268 | 238 | 245 | 251 | 79 | 9 |
| | Weighted Filings** | | 314 | 320 | 339 | 306 | 322 | 340 | 83 | 9 |
| | Terminations | | 299 | 324 | 320 | 336 | 344 | 361 | 79 | 9 |
| | Trials Completed | | 12 | 13 | 12 | 13 | 17 | 17 | 80 | 9 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 6.8 | 7.2 | 7.2 | 7.7 | 8.1 | 7.2 | 27 | 4 |
| | | Civil** | 9.3 | 9.8 | 8.7 | 9.7 | 9.4 | 9.5 | 38 | 5 |
| | From Filing to Trial** (Civil Only) | | 16.2 | 17.4 | 16.4 | 18.3 | 17.4 | 17.0 | 10 | 2 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 225 | 40 | 21 | 16 | 30 | 45 | | |
| | | Percentage | 6.9 | 1.3 | .7 | .6 | 1.1 | 1.6 | 76 | 8 |
| | Average Number of Felony Defendants Filed Per Case | | 1.7 | 1.5 | 1.5 | 1.5 | 1.7 | 1.8 | | |
| | Jurors | Avg. Present for Jury Selection | 27.30 | 28.51 | 27.28 | 30.81 | 23.33 | 22.30 | | |
| | | Percent Not Selected or Challenged | 28.8 | 30.6 | 26.5 | 32.4 | 23.1 | 14.9 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3393 | 121 | 9 | 581 | 12 | 41 | 141 | 491 | 1259 | 48 | 444 | 4 | 242 |
| Criminal* | 299 | 22 | 7 | 73 | 2 | 10 | 94 | ** | 6 | 42 | 3 | 10 | 30 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

**4**

Judicial Caseload Profile Report

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **FLORIDA SOUTHERN** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 8,479 | 9,058 | 9,490 | 10,790 | 9,875 | 8,424 | U.S. | Circuit |
| | Terminations | | 8,904 | 9,370 | 9,797 | 10,170 | 8,635 | 8,671 | | |
| | Pending | | 7,302 | 7,788 | 8,203 | 9,099 | 8,426 | 7,177 | | |
| | % Change in Total Filings | Over Last Year | | -6.4 | | | | | 78 | 7 |
| | | Over Earlier Years | | | -10.7 | -21.4 | -14.1 | .7 | 66 | 4 |
| | Number of Judgeships | | 18 | 18 | 17 | 17 | 16 | 16 | | |
| | Vacant Judgeship Months** | | 7.5 | 12.8 | 29.5 | 21.5 | 10.1 | 13.5 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 470 | 503 | 559 | 635 | 617 | 527 | 47 | 5 |
| | | Civil | 373 | 396 | 441 | 527 | 512 | 434 | 42 | 6 |
| | | Criminal Felony | 79 | 90 | 103 | 108 | 105 | 93 | 36 | 2 |
| | | Supervised Release Hearings** | 18 | 17 | 15 | - | - | - | 46 | 5 |
| | Pending Cases | | 406 | 433 | 483 | 535 | 527 | 449 | 47 | 5 |
| | Weighted Filings** | | 513 | 558 | 606 | 667 | 666 | 571 | 39 | 5 |
| | Terminations | | 495 | 521 | 576 | 598 | 540 | 542 | 38 | 3 |
| | Trials Completed | | 20 | 21 | 23 | 23 | 31 | 34 | 41 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 6.1 | 6.2 | 6.5 | 6.3 | 7.2 | 7.1 | 15 | 1 |
| | | Civil** | 6.3 | 6.3 | 7.7 | 7.3 | 8.7 | 10.4 | 5 | 1 |
| | From Filing to Trial** (Civil Only) | | 18.0 | 18.3 | 15.0 | 19.3 | 19.8 | 19.8 | 16 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 1,047 | 714 | 223 | 278 | 227 | 188 | | |
| | | Percentage | 16.7 | 10.6 | 3.2 | 3.8 | 3.3 | 3.3 | 89 | 9 |
| | Average Number of Felony Defendants Filed Per Case | | 1.7 | 1.6 | 1.5 | 1.5 | 1.6 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 42.54 | 44.00 | 42.51 | 45.57 | 43.59 | 43.10 | | |
| | | Percent Not Selected or Challenged | 19.2 | 23.8 | 22.8 | 28.8 | 26.5 | 30.4 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6720 | 112 | 368 | 1230 | 104 | 70 | 1251 | 837 | 679 | 244 | 956 | 8 | 861 |
| Criminal* | 1413 | 234 | 18 | 105 | 10 | 36 | 505 | ** | 21 | 281 | 9 | 16 | 178 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

# 5

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **DELAWARE** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,797 | 1,362 | 2,028 | 1,004 | 1,303 | 1,033 | | |
| | Terminations | | 1,516 | 1,507 | 1,478 | 1,020 | 955 | 861 | | |
| | Pending | | 2,085 | 1,836 | 1,999 | 1,477 | 1,502 | 1,154 | | |
| | % Change in Total Filings | Over Last Year | | 31.9 | | | | | 5 | 2 |
| | | Over Earlier Years | | | -11.4 | 79.0 | 37.9 | 74.0 | 4 | 2 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | .0 | 1.9 | 3.1 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 449 | 340 | 507 | 251 | 326 | 258 | 52 | 3 |
| | | Civil | 414 | 306 | 462 | 233 | 307 | 240 | 29 | 3 |
| | | Criminal Felony | 29 | 25 | 38 | 18 | 19 | 18 | 91 | 6 |
| | | Supervised Release Hearings** | 6 | 9 | 7 | - | - | - | 90 | 4 |
| | Pending Cases | | 521 | 459 | 500 | 369 | 376 | 289 | 20 | 2 |
| | Weighted Filings** | | 534 | 424 | 516 | 379 | 389 | 320 | 31 | 1 |
| | Terminations | | 379 | 377 | 370 | 255 | 239 | 215 | 64 | 4 |
| | Trials Completed | | 19 | 23 | 18 | 16 | 19 | 13 | 47 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.1 | 8.3 | 9.8 | 8.0 | 6.6 | 6.0 | 68 | 2 |
| | | Civil** | 14.0 | 11.2 | 8.2 | 12.6 | 10.9 | 11.5 | 93 | 5 |
| | From Filing to Trial** (Civil Only) | | 26.0 | 24.0 | 22.5 | 21.0 | 24.0 | 19.7 | 58 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 65 | 66 | 99 | 77 | 70 | 38 | | |
| | | Percentage | 3.4 | 3.9 | 5.4 | 5.5 | 4.9 | 3.5 | 43 | 3 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.3 | 1.1 | 1.3 | 1.2 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 38.50 | 34.98 | 33.84 | 32.68 | 35.75 | 30.23 | | |
| | | Percent Not Selected or Challenged | 20.9 | 24.0 | 24.4 | 19.9 | 28.5 | 15.1 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1655 | 20 | 1 | 238 | 10 | 5 | 28 | 72 | 56 | 198 | 135 | 2 | 890 |
| Criminal* | 115 | 9 | 5 | 40 | - | 4 | 24 | ** | 2 | 19 | - | 6 | 6 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# 11

**BEFORE THE JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

---

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1691 |
| IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1693 |
| IN RE CELEBREX MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 1694 |
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1699 |

---

**PLAINTIFF RONNIE L. HATCHER'S CONSOLIDATED REPLY TO RESPONSES TO MOTIONS TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407**

Pursuant to Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, plaintiff Ronnie L. Hatcher hereby submits the following reply to all responses to the motions for transfer and consolidation pursuant to 28 U.S.C. § 1407 in the above-referenced dockets.[1]

---

[1] Although Mr. Hatcher is not a moving party, he submits this reply to address issues and requests for certain relief raised by defendants and other parties for the first time in their response briefs.

# I.    INTRODUCTION

Consolidating Celebrex litigation and Bextra litigation into a single proceeding before the same judge will not, as defendants and others suggest, promote the just and efficient conduct of these actions. Instead, it will create a complicated and burdensome proceeding marked with inefficiencies caused by differences between the two drugs, the evidence relevant to each, the proposed classes, and proof of their respective claims. Although the two drugs are similar in many respects, they are also different in several respects, and they were sold to different classes of people. Defendants themselves concede that "because Celebrex is still on the market, the evidence and discovery regarding Celebrex could continue to develop and evolve." (Def. Pfizer, Inc.'s Resp. to Mots. to Transfer and Consol. Pursuant to 28 U.S.C. § 1407, p. 14.) Thus, while consolidation in some form is proper, combining the litigation as defendants and others have proposed may confuse the issues and delay resolution of each class' claims. Instead, justice and efficiency are best served by consolidating the Celebrex litigation and the Bextra litigation into two separate proceedings within the same jurisdiction, but before two different jurists. Doing so recognizes the differences between the Celebrex actions and the Bextra actions and allows the parties to resolve their unique issues (such as the continued evolution of Celebrex evidence, which affects only the Celebrex litigants) without disrupting or delaying the other proceeding, while at the same time protecting defendants and witnesses from unnecessarily duplicative discovery by facilitating coordination between the two proceedings on similar issues.

Litigating the personal injury actions (or any other actions) separately, as defendants suggest, would be inefficient. The simultaneous commencement of hundreds of lawsuits throughout the country would waste judicial resources, promote duplicative discovery, and unnecessarily inconvenience numerous witnesses. Further consolidation or coordination of these proceedings with any other proceedings would also produce unnecessary delay. Defendants' suggestion that the marketing and pricing actions should be consolidated with the securities, ERISA, and derivative actions currently pending in the Southern District of New York grossly mischaracterizes the differences between securities-related actions and the actions herein. As

in matters that are unrelated to their claims, or subject them to delay while such matters are resolved.

By contrast, consolidating the Celebrex litigation into one proceeding and the Bextra litigation into another will allow the parties to resolve their unique issues separately, without disrupting or delaying the other proceeding. Moreover, transferring the two proceedings to the same district will promote the just and efficient conduct of the actions by minimizing duplicative discovery on similar issues. In other words, consolidating these actions in the form proposed herein will allow them to proceed in a coordinated fashion where they share similar interests, without forcing them to become involved in or delayed by unrelated issues.

Defendants' suggestion that the personal injury actions merit individual treatment is incorrect, and contrary to the prior decisions of the Panel. In both *In re Vioxx Prods. Liab. Litig.*, Docket No. 1657 (J.P.M.L. Feb. 16, 2005) and *In re Neurontin Mktg. & Sales Practices Litig.*, Docket No. 1629 (J.P.M.L. Apr. 19, 2005), the Panel consolidated personal injury actions with marketing and pricing actions. Although causation may differ in some personal injury cases, the similarities between the majority of the cases herein far outweigh any differences that might exist. Moreover, the transferee court can implement procedures to deal with any causation issues that arise. This is certainly preferable to instituting hundreds of virtually identical lawsuits throughout the country, wasting judicial resources, and forcing witnesses to submit to duplicative document requests and depositions.

Ultimately, given the facts and circumstances of the actions herein, creating two consolidated proceedings, one for Celebrex and one for Bextra, is the most logical and efficient way to proceed with these cases. Any other form of consolidation will unnecessarily delay certain litigants' claims and promote duplicative discovery.

**B.    These Proceedings Should Not Be Consolidated With the Securities-Related Proceedings**

Securities cases are inherently and substantially different from these proceedings in a number of material respects. First, in this instance, the securities cases were brought on behalf of

Pfizer, Inc.'s investors, who are interested in maximizing profits. The Celebrex and Bextra marketing and pricing actions, however, are brought on behalf of individuals who paid an unlawful price for the drugs, and who seek to extract unfairly gained profits from defendants. Accordingly, the relief sought by the marketing and pricing plaintiffs is precisely opposite that sought by the securities plaintiffs.

Second, because securities claims are subjected to a heightened pleading standard, securities cases proceed on a vastly different civil schedule than most cases. Most notably, the Private Securities Litigation Reform Act ("PSLRA") provides for an automatic stay of discovery in federal securities actions where a defendant files a motion to dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(B). By its terms, however, the PSLRA mandatory discovery stay applies only to federal securities cases. *Id.* Even a derivative action that stems from the same conduct as a federal securities action is not subject to the discovery stay, despite the fact that the plaintiffs in such an action might be seeking the same discovery that the securities plaintiffs are precluded from obtaining. *See In re Gilead Scis. Sec. Litig.*, No. C 03-4999 MJJ, 2004 U.S. Dist. Lexis 27309 (N.D. Cal. Nov. 18, 2004). Although courts have the authority to stay discovery in such instances, they will not do so absent evidence of collusion between the securities plaintiffs and the plaintiffs seeking discovery, or some other evidence that the securities plaintiffs are attempting to circumvent the PSLRA discovery stay. *Id.*

In the present case, contrary to what defendants might argue, there is no evidence that would lead a judge to stay discovery in the marketing and pricing actions. And, not surprisingly, none of the cases cited by defendants support the proposition that marketing and pricing actions and related RICO actions should be consolidated, or even coordinated, with securities actions. Instead, three of defendants' cases involved requests to consolidate and centralize securities, ERISA, and/or derivative claims, and in each case the Panel found that consolidation was particularly appropriate due to overlapping classes and class certification requests. *See, e.g., In re Enron Corp. Secs., Derivative & ERISA Litig.*, 196 F. Supp. 2d, 1375, 1376 (J.P.M.L. 2002); *In re Elec. Data Sys. Corp. Sec. & "ERISA" Litig.*, 254 F. Supp. 2d 1375, 1376 (J.P.M.L. 2003);

*In re Food Fair Sec. Litig.*, 465 F. Supp. 1301, 1305 (J.P.M.L. 1979). In the present situation, it is beyond dispute that the marketing and pricing actions encompass an entirely different class than the securities actions. In another case, where the Panel had consolidated securities, ERISA, and derivative litigation, a district court imposed a limited stay of discovery in the ERISA litigation. *In re AOL Time Warner, Inc.*, MDL Docket No. 1500, 02 Civ. 8853, 2003 U.S. Dist. LEXIS 16895 (S.D.N.Y. Sept. 26, 2003). Once again, however, that case did not involve marketing and pricing actions. Thus, any comparison between those cases and the actions herein is misguided.

Ultimately, defendants point to no legitimate connection between the marketing and pricing actions, which encompass classes of individuals who suffered damages as a result of purchasing Celebrex or Bextra, and the pending securities actions, which encompass classes of individuals who suffered damages as a result of their transactions in defendants' securities. This is because none exists. Therefore, there is no justification for consolidating the Celebrex litigation and the Bextra litigation with the securities cases. It would also be improper to coordinate these cases, as doing so would unnecessarily delay discovery for the Celebrex and Bextra plaintiffs by rendering them subject to the PSLRA mandatory discovery stay. For these reasons, the actions should remain separate.

## C.    The District of Massachusetts Stands Out as the Most Appropriate Transferee Forum

Among all of the proposed transferee forums, the District of Massachusetts stands out as the most experienced with respect to managing multi-district litigation against major pharmaceutical companies. Moreover, the District of Massachusetts has three judges ready to accept these consolidated proceedings. One experienced judge, Judge Young, currently has no multi-district litigation cases. Two others, Judge Stearns and Judge Woodlock, are currently presiding over one multi-district litigation proceeding each, and Judge Stearns will soon finish his single proceeding. With a median filing-to-disposition time of just 9.4 months, and just 5.7% of its civil docket older than three years, the District of Massachusetts also has one of the most

efficient dockets of any proposed transferee forum. Finally, the vast majority of the plaintiffs who have filed marketing and pricing actions against defendants regarding Bextra support transferring these proceedings to the District of Massachusetts.[2] These factors tip the scales in favor of transferring these consolidated proceedings to the District of Massachusetts. No other proposed transferee forum has an equivalent balance of experience, resources, and docket efficiency.

Although other proposed forums, such as the Southern District of New York, have resources and transportation facilities similar to those in the District of Massachusetts, 11.6% of the cases in the Southern District of New York are more than three years old, reflecting an overloaded and inefficient docket. The Southern District of New York is also an inappropriate forum due to the pending securities, ERISA, and derivative litigation consolidated therein. Since those actions must remain separate from the present actions, and coordination of discovery would be improper, transferring these proceedings to an entirely separate district makes sense.

The District of New Jersey, on the other hand, has a similarly efficient docket, but lacks the resources and expertise found in the District of Massachusetts, which has been recognized by the Panel as being well-resourced to handle complex, multi-district litigation. *See, e.g., In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004); *In Re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378, 1381 (J.P.M.L. 2002); *In re Pharmatrak,*

---

[2] Plaintiffs in *Steamfitters' Industry Welfare Fund and Metal Trades Brand Welfare Fund v. Pfizer, Inc., et al.*, No. 05-3814 (S.D.N.Y.), plaintiffs in *Linda A. Watters, Commissioner, Offices of Financial and Insurance Services for the State of Michigan in Her Capacity as Rehabilitator of the Wellness Plan and in Her Capacity as Liquidator of Michigan Health, Inc., Formerly Known as Omnicare Health Plan, Inc., Frankenmuth Financial Group, Inc. v. Pfizer, Inc., et al.*, No. 2:05CV71434 (E.D. Mich.), and plaintiffs in *Sheet Metal Workers' International Association Local No. 28 of Metropolitan New York and Long Island v. Pfizer, Inc., et al.*, No. 05-4125 (S.D.N.Y.) all support transferring these proceedings, in the consolidated form proposed herein, to the District of Massachusetts. Alternatively, these plaintiffs support transferring the proceedings to either the Southern District of Florida or the District of Delaware.

*Inc., Privacy Litig.*, Docket No. 1400, 2001 U.S. Dist. Lexis 5228, at *3 (J.P.M.L. Apr. 18, 2001).[3]

Alternatively, the Southern District of Florida and the District of Delaware would also be appropriate fora for these proceedings. In addition to having a well-managed docket and the resources to handle this litigation, there is already a Celebrex marketing and pricing class action filed in the Southern District of Florida, *Balloveras v. Pfizer, Inc., et al.*, No 05-20429, before Judge Jordan, and this case has advanced as far or further than any other Celebrex marketing and pricing case in the country. Not only have the defendants answered the complaint, but Judge Jordan has entered an Order Setting Schedule, Requiring Mediation, and Referring Certain Motions to Magistrate Judge, and the parties are now ready to begin discovery. Therefore, consolidating the Celebrex litigation with the *Balloveras* case in the Southern District of Florida makes sense, and because the Bextra litigation should be coordinated with the Celebrex litigation, it too could be consolidated in that district.

With regard to the District of Delaware, it also has the resources to handle this litigation, and one of the most efficient dockets of any proposed transferee jurisdiction. Only 3.4% of that district's docket is older than three years, which means that the litigants herein would be likely to achieve an efficient resolution of their claims in the District of Delaware.[4]

### III.    CONCLUSION

For all of the foregoing reasons, the Panel should grant consolidate the Celebrex litigation and the Bextra litigation into separate proceedings, and transfer both proceedings to the District of Massachusetts.

---

[3] The Panel has long held this view of the District of Massachusetts. *See, e.g., In re Kauffman Mut. Fund Actions,* 337 F. Supp. 1337, 1340 (J.P.M.L. 1972) ("[t]he deciding factor in our estimation is the more current docket in the District of Massachusetts").

[4] The Northern District of California, where another Celebrex marketing and pricing action was filed, *Julie Swan, et al. v. Pfizer, Inc., et al.*, No. 05-00834, would also serve as a better forum than either the Southern District of New York or the District of New Jersey. Only 6.9% of the cases in the Northern District of California are more than three years old, compared to a relatively high 11.6% for the Southern District of New York. Moreover, the Northern District of California lacks the harsh weather that is common in New York and New Jersey.

DATED this 8th day of June, 2005.

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____
Thomas M. Sobol
One Main Street, Fourth Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
tom@hbsslaw.com

Steve W. Berman, WSBA #12536
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Attorneys for Plaintiff Ronnie L. Hatcher and
The Proposed Class*